UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
F I L E D

FEB 1 1 2025

ARTHUR JOHNSTON
BY_____ DEPUTY

| | |
|---|---|
| HON. ADAM DUVALL DAVIS, SR., ( U.S. NAVY VETERAN)<br><br><br>   Plaintiff,<br><br>v.<br><br>HON. WILLIAM TISDALE, in his individual and official capacities;<br><br>CITY OF BILOXI, MISSISSIPPI;,<br><br>HON. CHANCELLOR CARTER BISE, in his individual and official capacities, and other unnamed defendants,<br><br>   Defendants. | Case No. 1:25cv39 LG-BWR<br>**Jury Trial Demanded**<br>COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, UNLAWFUL JUDICIAL ACTIONS, AND MUNICIPAL LIABILITY UNDER 42 U.S.C. §§ 1983 AND 1985(3) |

1

## I. PRELIMINARY STATEMENT

1. Plaintiff, Adam Duvall Davis, Sr., brings this action pursuant to 42 U.S.C. § 1983 to redress egregious violations of his constitutional rights committed by state actors operating under color of law. Specifically, this case arises from the unlawful and arbitrary dissolution of a valid Domestic Abuse Protection Order (DAPO)—an order explicitly issued to safeguard Plaintiff and his minor children from documented harassment, abuse, and threats by individuals who posed an imminent danger to their safety.

2. The events giving rise to this action began when Plaintiff, after enduring escalating abuse and harassment from his ex-wife, Ami Tsumanuma Davis, and her boyfriend, Vaughn Gill, sought and was granted a Domestic Abuse Protection Order (DAPO) by the Biloxi Municipal Court, presided over by Judge William Tisdale. The DAPO was issued pursuant to Miss. Code Ann. § 93-21-15, which mandates protective measures to prevent continued domestic abuse. The order explicitly prohibited Ami and Vaughn from initiating contact with or being in proximity to Plaintiff and his minor children, ensuring their legal protection against further harassment and potential harm.

3. Despite these legally binding safeguards, Judge William Tisdale unilaterally and unlawfully dissolved the DAPO following ex-parte communications with Judge Carter Bise, a Chancery Court judge. **This action was taken without providing Plaintiff with notice, an opportunity to be heard, or any legally sufficient justification—**a direct and egregious violation of Plaintiff's procedural due process rights under the Fourteenth Amendment to the U.S. Constitution. The Supreme Court has long held that a person cannot be deprived of a legally recognized protection order without due process, as established in Mathews v. Eldridge, 424 U.S. 319 (1976), and reaffirmed in Goss v. Lopez, 419 U.S. 565 (1975), which holds that even temporary deprivations of liberty require notice and a fair hearing.

4. Additionally, Miss. Code Ann. § 93-21-15(2) explicitly states that a protection order may not be modified or dismissed without a hearing where both parties have the opportunity to present evidence. By violating both federal due process protections and clear statutory mandates, the Defendants acted outside the bounds of their judicial authority, resulting in direct and foreseeable harm to Plaintiff and his children.

5. The unlawful dissolution of the DAPO directly led to a foreseeable chain of events that placed Plaintiff and his children in imminent danger. On January 29, 2024, while standing outside the courthouse, Plaintiff and his children were approached and confronted by Ami Tsumanuma Davis and Vaughn Gill, despite the fact that the DAPO had previously barred them from initiating contact. Without provocation, Vaughn escalated the situation, issuing verbal threats and engaging in physical aggression, leaving Plaintiff with no alternative but to act in self-defense to protect himself and his children.

6. Had the DAPO remained in effect, this confrontation would not have occurred, as Ami and Vaughn would have been legally prohibited from approaching Plaintiff or his children. Judge Tisdale's unilateral and unjustified dissolution of the DAPO created a direct and foreseeable risk, violating Plaintiff's substantive due process rights under the Fourteenth Amendment, as articulated in County of Sacramento v. Lewis, 523 U.S. 833 (1998), and DeShaney v. Winnebago County, 489 U.S. 189 (1989). Under the state-created danger doctrine, a state actor who removes legal protections and affirmatively

2

places an individual at risk of harm is liable for constitutional violations (*Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998); Doe v. S.C. Dep't of Soc. Servs., 597 F.3d 163 (4th Cir. 2010)*).

7. Additionally, Miss. Code Ann. § 93-21-15(2) explicitly states that a protective order may not be modified or dismissed without a hearing where both parties have the opportunity to present evidence. By failing to hold a hearing and dissolving the DAPO arbitrarily, Judge Tisdale and Judge Bise violated state law, stripping Plaintiff of the legal protection granted to him under Mississippi's domestic violence statutes. The judges' misconduct directly prevented law enforcement from enforcing the protective order, violating Miss. Code Ann. § 93-21-21, which mandates strict enforcement of protective orders to prevent harm to domestic violence victims.

8. As a direct result of the court's reckless and unlawful actions, Plaintiff, despite acting in lawful self-defense, was wrongfully subjected to criminal charges, further compounding the physical, emotional, and financial harm inflicted upon him and his children. The constitutional and statutory violations committed by Defendants reflect not just individual misconduct but a systemic failure by the courts to uphold the rule of law and protect victims of domestic abuse (*Village of Willowbrook v. Olech, 528 U.S. 562 (2000); Engquist v. Oregon Dep't of Agriculture, 553 U.S. 591 (2008)*).

9. In addition to violating Plaintiff's procedural due process rights, Defendants' actions also constituted a substantive due process violation under the Fourteenth Amendment, as established in County of Sacramento v. Lewis, 523 U.S. 833 (1998). The state-created danger doctrine holds that government officials violate substantive due process when they affirmatively act to place an individual in foreseeable harm. Here, Defendants' unlawful dissolution of the DAPO removed a legal protection that had been put in place to prevent harassment, threats, and physical violence, thereby placing Plaintiff and his children in direct and foreseeable danger.

10. Furthermore, Defendants violated Plaintiff's right to equal protection under the law, as outlined in Village of Willowbrook v. Olech, 528 U.S. 562 (2000). Judicial bias and systemic discrimination against male victims of domestic violence have been well-documented in Mississippi courts, and Plaintiff was denied the same due process protections that were routinely provided to female petitioners.

11. By failing to provide Plaintiff with the same procedural safeguards, Defendants engaged in unconstitutional discriminatory decision-making, reinforcing systemic gender bias in the judicial system.

12. Moreover, the Detroit Police Department (DPD) documented critical events on April 2, 2023, when officers responded to reports from Plaintiff's children expressing fear of their mother, Ami Tsumanuma Davis, due to allegations of physical and sexual abuse. This official police report serves as direct corroboration of the ongoing danger faced by Plaintiff's children, reinforcing the claim that Ami and her partner, Vaughn Gill, pose a continuing threat to their safety.

13. The failure of judicial and law enforcement systems to intervene despite documented evidence of abuse constitutes a clear violation of due process and equal protection under the Fourteenth Amendment. Under 42 U.S.C. § 1983, state actors—including courts, child protective services, and law enforcement officials—can be held liable when their inaction or direct decisions exacerbate the risk of harm to vulnerable individuals (*DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189 (1989)*). In

*DeShaney*, the Supreme Court acknowledged that while the state is not always required to protect individuals from private harm, it violates due process when it knowingly places individuals in danger by removing legal protections. Here, Judge Tisdale's dissolution of the DAPO, coupled with law enforcement's failure to act on the police report, created the very conditions that placed Plaintiff's children in ongoing danger.

14. Additionally, Vaughn Gill's actions to hinder the service of process and issue verbal threats against a process server further illustrate the pattern of intimidation and obstruction designed to prevent Plaintiff from accessing legal remedies (**See Exhibit A - AFFIDAVIT FROM PS Ty Bailey**). Interference with the lawful service of process is a criminal act under both federal and state law, as established in 18 U.S.C. § 1501 (Obstruction of Process) and Miss. Code Ann. § 97-9-55 (Obstruction of Public Justice) and Michigan Compiled Laws § 750.122 . By threatening a legal process server, Vaughn Gill not only committed an offense but also demonstrated an ongoing intent to interfere with judicial proceedings and obstruct Plaintiff's ability to seek protection for his children.

15. The cumulative failures of the judicial and law enforcement systems to protect Plaintiff's children—despite overwhelming evidence of danger—underscore systemic negligence and misconduct. This pattern of judicial inaction and law enforcement indifference reinforces Plaintiff's claims under § 1983 and the Fourteenth Amendment, as well as the state-created danger doctrine, which holds that government entities may be held accountable when their actions (or deliberate inactions) place individuals at greater risk of harm (*Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998); Doe v. South Carolina Dep't of Soc. Servs., 597 F.3d 163 (4th Cir. 2010)*).

16. As a direct and foreseeable consequence of Defendants' unconstitutional actions, Plaintiff has endured severe emotional distress, financial hardship, and reputational damage. The unlawful dissolution of the DAPO, coupled with Defendants' deliberate failure to protect Plaintiff and his children, has subjected them to ongoing threats, intimidation, and physical altercations, resulting in lasting trauma and legal burdens.

17. The repeated exposure to violence and instability has deeply traumatized Plaintiff's children, disrupting their sense of safety and emotional well-being. Psychological distress, behavioral changes, and academic struggles have emerged as direct consequences of Defendants' reckless disregard for their safety, reinforcing claims of substantive due process violations (*Nicini v. Morra, 212 F.3d 798 (3rd Cir. 2000)*).

18. Additionally, Plaintiff has incurred significant financial losses, including legal expenses, security costs, and lost income as a result of Defendants' wrongful conduct. The malicious prosecution stemming from the January 29, 2024, confrontation, caused direct reputational harm, impairing Plaintiff's professional and personal stability. Under 42 U.S.C. § 1983, Defendants are liable for these economic and personal damages, as government officials cannot arbitrarily strip individuals of legal protections without due process (*Carey v. Piphus, 435 U.S. 247 (1978)*).

19. Accordingly, Plaintiff seeks:

- Declaratory relief, confirming that Defendants' actions were unconstitutional and that future DAPO modifications must follow due process.
- Injunctive relief, including reinstatement of the DAPO and court oversight to prevent further abuses.

- Compensatory damages, to address emotional distress, financial losses, legal fees, and reputational harm.
- Punitive damages, to deter future judicial misconduct (*Smith v. Wade, 461 U.S. 30 (1983)*).

Given the severity of these constitutional violations, Plaintiff requests that this Court grant all necessary relief to rectify past harm and prevent further injustices.

## II. JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983 (civil rights violations under color of state law) and 42 U.S.C. § 1985(3) (conspiracy to deprive Plaintiff of equal protection under the law). Additionally, 28 U.S.C. § 1343(a)(3) provides jurisdiction for actions seeking to redress the deprivation of constitutional rights committed by state actors acting under color of law.

21. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same set of facts and legal circumstances as the federal claims, forming a single case or controversy under Article III of the United States Constitution. These state law claims include, but are not limited to:

   a) Violations of Mississippi domestic violence protection laws under Miss. Code Ann. § 93-21-15 (prohibiting dissolution of a protective order without a hearing).
   b) State law tort claims for intentional and negligent infliction of emotional distress resulting from Defendants' actions and inactions.

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district. Specifically:

   a) The unlawful dissolution of the Domestic Abuse Protection Order (DAPO) occurred in the Biloxi Municipal Court, which is located in Harrison County, Mississippi.
   b) The subsequent harassment, threats, and altercations, including the January 29, 2024, confrontation, took place within this Court's jurisdiction.
   c) The Defendants named in this complaint, including state and municipal officials, are located and operate within this judicial district.

Accordingly, this Court has jurisdiction and venue to adjudicate this matter and grant Plaintiff full relief under federal and state law.

## III. PARTIES

23. Plaintiff, Adam Duvall Davis, Sr., is a resident of Biloxi, Mississippi, and a highly decorated United States Navy veteran with 18 years of honorable service. Throughout his military career, Plaintiff demonstrated unwavering dedication to serving his country, earning commendations and awards for his leadership and commitment.

Plaintiff brings this action to vindicate his constitutional rights under the Fourteenth Amendment and to protect the safety and well-being of his children, who have suffered direct harm as a result of Defendants' unlawful conduct. Plaintiff seeks legal redress for violations of his due process and equal protection rights, as well as injunctive relief to ensure the enforcement of protective measures necessary to safeguard his family from further harm.

24. Defendant, Judge William Tisdale, is a municipal court judge for the City of Biloxi, Mississippi, who acted under color of state law when he unlawfully dissolved the Domestic Abuse Protection Order (DAPO) without notice, a hearing, or legal justification. By doing so, Defendant Tisdale violated Plaintiff's procedural due process rights under the Fourteenth Amendment, as well as Mississippi statutory law, which explicitly requires a hearing before modifying or dissolving a protective order (*Miss. Code Ann. § 93-21-15(2)*). Defendant Tisdale is sued in both his individual and official capacities for his unconstitutional and unlawful actions, which deprived Plaintiff of a court-ordered legal protection, resulting in foreseeable harm. Judicial immunity does not apply when a judge acts in clear absence of jurisdiction or in a manner that violates clearly established constitutional rights (*Stump v. Sparkman, 435 U.S. 349 (1978); Hafer v. Melo, 502 U.S. 21 (1991)*). Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4 of the Mississippi Rules of Civil Procedure, Defendant Tisdale may be served at his chambers located at:
Biloxi Municipal Court
170 Porter Ave.
Biloxi, MS 39530
or any other location where he may be found.

25. Defendant, Judge Carter Bise, is a chancery court judge for Harrison County, Mississippi, who acted under color of state law by engaging in improper and unauthorized communications with Judge William Tisdale, which directly contributed to the unlawful dissolution of the Domestic Abuse Protection Order (DAPO). By intervening in a municipal court matter without jurisdiction and without affording Plaintiff due process, Defendant Bise violated Plaintiff's constitutional rights under the Fourteenth Amendment and exceeded the legal authority granted to him under Mississippi law. Defendant Bise is sued in both his individual and official capacities for his unconstitutional and improper actions, which stripped Plaintiff and his children of a legally binding protection order, exposing them to foreseeable harm. Judicial immunity does not apply when a judge acts outside their jurisdiction or in a manner that knowingly violates constitutional rights (*Forrester v. White, 484 U.S. 219 (1988); Dennis v. Sparks, 449 U.S. 24 (1980)*). Pursuant to Rule 4(e) of the Federal Rules of Civil Procedure, Rule 4(d)(1) of the Mississippi Rules of Civil Procedure, and Uniform Chancery Court Rules, Defendant Bise may be served at his office at:
Harrison County Chancery Court
1801 23rd Avenue
Gulfport, MS 39501
or another appropriate location.

26. Defendant, City of Biloxi, Mississippi, is a municipal entity responsible for the actions of its employees, including the training and oversight of municipal court judges. The City is

sued for its policies, practices, and customs that led to the violation of Plaintiff's constitutional rights. Pursuant to Rule 4(j)(2) of the Federal Rules of Civil Procedure and Rule 11-45-9 of the Mississippi Code, the City of Biloxi may be served by delivering a copy of the summons and complaint to its mayor, city manager, or city clerk at:

Biloxi City Hall
140 Lameuse Street
Biloxi, MS 39530

Special attention should be given to ensure compliance with any local ordinances or specific procedural requirements governing service upon municipal entities.

## IV. FACTUAL ALLEGATIONS

27. On April 2, 2023, during the return trip to Detroit following the holiday visit, Plaintiff's children, J.D.D. and K.D.D., exhibited extreme fear and anxiety about returning to their mother's home. The children were visibly distressed, expressing that they were afraid of further abuse by their mother, Ami Tsumanuma Davis, and her boyfriend, Vaughn R. Gill.

    The children described past instances of mistreatment and raised serious concerns about their living conditions, specifically stating that:

    a) The house was dilapidated and unsafe, with structural hazards making it dangerous to live in.
    b) They had limited access to basic necessities, including a clean and stable living environment, working utilities, and proper food.
    c) They feared ongoing physical and emotional abuse, particularly due to previous incidents that had gone unaddressed by adults and authorities.

    Prior to this date, in an earlier court hearing, Judge Carter Bise had already dismissed concerns regarding the children's living conditions, stating:

    "Victims of Hurricane Katrina lived through worse."

    This statement demonstrated a callous disregard for the children's safety and well-being, trivializing their trauma, documented concerns, and fears of continued abuse. Despite clear indications that the children faced ongoing risk, the court failed to conduct an investigation or ensure that they were returning to a safe environment.

    Judge Bise's failure to take these concerns seriously reflected a pattern of disregard for the children's safety and a failure to uphold judicial responsibility in matters involving domestic abuse and child welfare. Plaintiff had previously raised these issues before the court, yet the legal system continued to compel the children's return to an environment they had repeatedly described as unsafe and abusive.

28. When Plaintiff and the children arrived at the residence of Ami Tsumanuma Davis and Vaughn R. Gill, Plaintiff contacted the Detroit Police Department (DPD) for assistance in safely returning the children. DPD officers arrived at 18073 Pinehurst Street, Detroit, MI

48221, at approximately 21:25 on April 2, 2023, in response to Plaintiff's concerns about his children's extreme emotional distress and allegations of abuse.

Upon arrival, the officers observed and documented visible signs of emotional and physical distress in the children, including severe anxiety, hesitation, and fear of returning to their mother's home. The children specifically cited prior instances of abuse by Ami and Vaughn, and their visible reluctance to exit the vehicle was consistent with trauma responses often associated with domestic violence victims. The officers noted that the children exhibited signs of ongoing distress consistent with their claims of abuse and unsafe living conditions. **(See Exhibit B – Detroit Police Report, April 2, 2023)**

Despite these critical observations, the officers informed Plaintiff that they could not forcibly remove the children from the vehicle due to their heightened emotional state. They also declined to approach Ami and Vaughn's residence or knock on the door, expressing reluctance to escalate the situation and stating:

"It is sad for the kids to go through such an ordeal."

Rather than taking immediate investigative action or referring the matter to Child Protective Services (CPS), DPD advised Plaintiff to return to Biloxi, Mississippi, to address the issue there, citing jurisdictional limitations since the prior court orders and legal proceedings had originated in Mississippi.

29. Following the Detroit Police Department's recommendation on April 2, 2023, Plaintiff returned to Biloxi with his children and immediately sought assistance from the Gulf Coast Center for Nonviolence. Recognizing the serious nature of the children's distress and the prior abuse allegations, the center provided Plaintiff with support and helped him complete a Domestic Abuse Protection Order (DAPO) application to secure legal protection against Ami Tsumanuma Davis and Vaughn R. Gill.

On April 4, 2023, the Biloxi Municipal Court issued the DAPO, explicitly prohibiting Ami and Vaughn from contacting or approaching Plaintiff and his children, **(See Exhibit C – Biloxi Municipal Court's DAPO)**. The order contained additional provisions preventing Ami from being near their children, Y.D.D., J.D.D., and K.D.D., reflecting the court's recognition of the imminent risk posed by Ami's continued presence in their lives. The issuance of this legally binding protective order affirmed the ongoing danger Plaintiff and his children faced, and it was intended to ensure their safety and well-being moving forward.

30. The subsequent dissolution of the DAPO occurred following a private, undisclosed conference between Judge Carter Bise of the Harrison County Chancery Court and Municipal Court Judge William Tisdale **(See Exhibit D – Order Dissolving the DAPO by Judge Tisdale).** Plaintiff was not notified of this conference beforehand, nor was he given an opportunity to participate, despite the fact that the outcome directly impacted his legal rights and the safety of his children.

Mississippi law, Miss. Code Ann. § 93-21-15, explicitly requires notice and a hearing before any modification or dissolution of a protective order. However, Plaintiff was entirely excluded from this decision-making process and was only made aware of the conference because it was referenced in the dissolution order itself.

The circumstances surrounding the dissolution of the DAPO indicate that it was not based on a formal legal review or an evidentiary hearing, but rather on an informal discussion between two judges, conducted outside the presence of Plaintiff, his legal counsel (Ryan Bristol at the time), or any opportunity for testimony or rebuttal.

31. No official court record of this conference exists outside of the dissolution order, and no transcript, legal motion, or formal petition was filed prior to this decision. The lack of procedural transparency raises significant concerns about how and why the DAPO was vacated without following the legal requirements mandated by Mississippi law.

32. The failure to provide Plaintiff with notice or an opportunity to be heard before dissolving the DAPO meant that no formal process was followed to evaluate the necessity of the protective order. At no point did the court hold a hearing, allow testimony, or consider evidence from Plaintiff regarding the risk posed by Ami Tsumanuma Davis and Vaughn R. Gill.

Additionally, the court failed to review or address documented evidence of the children's distress and their stated fear of returning to their mother's residence, despite prior reports to law enforcement and supporting documentation from the Detroit Police Department, the Gulf Coast Center for Nonviolence, and other sources that had recognized the need for intervention.

Mississippi's domestic abuse statutes, Miss. Code Ann. § 93-21-1 et seq., were enacted to protect victims of domestic violence through timely and effective legal measures. The courts' failure to apply these statutory protections and their refusal to acknowledge key evidence directly undermined the intent of these laws, resulting in the unnecessary exposure of Plaintiff and his children to harm.

33. On April 4, 2023, Judge Carter Bise of the Harrison County Chancery Court issued an Ex Parte Temporary Restraining Order (TRO) **(See Exhibit E – Order Granting Ex Parte Temporary Restraining Order by Judge Bise)**, mandating the immediate return of Plaintiff's minor children to their mother, Ami Tsumanuma Davis. The order cited "irreparable harm" due to the children's absence from school as the primary justification for this emergency relief. However, The TRO was issued without prior notice to Plaintiff, without a hearing, and without an opportunity to contest the order. Furthermore, no supporting affidavit or verified complaint accompanied the TRO, in violation of Mississippi Rule of Civil Procedure 65(b), which requires sworn evidence to establish immediate and irreparable harm before an ex parte order can be granted. The absence of a sworn affidavit or verified complaint means that the TRO was issued without any factual basis to substantiate the claim of "irreparable harm" due to school absences.

9

Despite the serious impact on Plaintiff's parental rights and the well-being of the children, the TRO lacked specific findings of fact detailing the nature of the alleged immediate and irreparable harm that would justify issuing such an order without notice. Mississippi Rule of Civil Procedure 65(b) explicitly requires courts to provide specific findings when granting ex parte relief, yet the TRO failed to meet this standard. Additionally, Uniform Chancery Court Rule 2.11(A) mandates that a TRO must include a hearing date and provide the opposing party an opportunity to respond, but this order contained no such provisions, depriving Plaintiff of any due process protections.

34. The TRO also directly contradicted a valid and enforceable Domestic Abuse Protection Order (DAPO) issued by the Biloxi Municipal Court on April 4, 2023, which was intended to protect Plaintiff and his children from Ami and her partner, Vaughn R. Gill. By granting the TRO, Judge Bise effectively nullified the DAPO without following the required statutory process, violating Mississippi Code § 93-21-15, which explicitly requires notice and a hearing before modifying or dissolving a protective order. Furthermore, the TRO disregarded federal law under the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires courts to honor and enforce valid protective orders issued by other jurisdictions.

Despite the urgency cited in the TRO, the Harrison County Sheriff's Department did not enforce the order until April 19, 2023—nearly two weeks after its issuance **(See Exhibit F –Order Executed by Biloxi PD and Harrison County document number 84 as seen on Docket Record)**. During this enforcement, Plaintiff captured video evidence documenting the children's extreme emotional distress, as they visibly cried, expressed fear, and resisted returning to their mother's custody. The footage, available shows the children upset, scared, and expressing anger about being forced to return, reinforcing their previous statements to law enforcement about their fear of returning to their mother's home **(See Video 1 – Harrsion County Sheriff Come To Pick Up Kids)**.

By issuing the TRO without due process, failing to consider critical evidence of the children's distress, and disregarding an active protective order, the court's actions further exposed Plaintiff's children to an environment from which they had sought protection. The delays in enforcement, lack of procedural safeguards, and failure to justify the order with findings of fact compounded the harm inflicted upon Plaintiff and his family.

35. In November 2022, Y.D.D. was detained in a juvenile detention center in Detroit, Michigan, following a violent altercation initiated by his mother, Ami Tsumanuma Davis, and her boyfriend, Vaughn R. Gill. The incident began when Ami attacked Y.D.D., attempting to confiscate his phone to prevent him from reporting their living conditions and her abusive behavior to his school counselor**(See Video 2 – Coercion and Abuse: Ami and Vaughn's Aggressive Attempt to Seize Y.D.D.'s Phone)**.

During this confrontation, Vaughn entered the scene and escalated the violence. Despite Y.D.D. pleading with Vaughn to stop, saying, "Nobody is on that," Vaughn ignored his pleas and physically assaulted him. Vaughn threw Y.D.D. around the room, and when Y.D.D. attempted to evade Vaughn's aggressive advances, he was ultimately cornered,

forced into a seated position, and placed in a chokehold. At just 15 years old, Y.D.D. was subjected to physical violence from both adults in the household, leaving him traumatized and vulnerable.

During this incident, Ami further manipulated the situation by coercing J.D.D., Y.D.D.'s younger brother, to record the altercation, effectively pitting the siblings against each other and further exacerbating the emotional and psychological harm inflicted on both children. This forced participation placed J.D.D. in a distressing and traumatic position, contributing to the manipulation and abuse perpetrated by Ami.

Despite Plaintiff's willingness to post bond and take Y.D.D. to Mississippi, authorities denied this request and instead allowed Ami to bond Y.D.D. out, requiring him to return to the same household with his abusers **(See Exhibit G –Legal Proceedings Related to Y.D.D.'s Juvenile Detention)**. While a no-contact order was issued, this measure was grossly inadequate given that:

a) Y.D.D. was still dependent on Ami for basic necessities such as transportation to school, meals, and other daily needs.
b) The confined living space made it impossible to enforce meaningful separation, leaving Y.D.D. exposed to ongoing psychological and physical harm.

Despite clear evidence of ongoing abuse, the authorities failed to implement protective safeguards for Y.D.D., violating Michigan law under MCL § 712A.2, which mandates that child custody decisions prioritize the safety and welfare of minors. Allowing Y.D.D. to return to the same home as his abusers ignored this statutory obligation and placed him in immediate jeopardy.

Furthermore, the failure to account for medical evidence of abuse further demonstrated systemic failures in protecting Y.D.D. On January 8, 2023, Y.D.D. visited the emergency room at Merit Health Biloxi, where he was treated for a cervical sprain and muscular trauma—injuries consistent with his prior assault **(See Exhibit H – Y.D.D ER Visit)**. Despite these documented medical findings, the authorities failed to take corrective action to ensure his safety.

The lack of protective intervention also violated Mississippi's domestic abuse statutes under Miss. Code § 93-21-15, which require courts to prioritize the protection of children from abusive environments. By failing to account for the documented evidence of harm or consider Plaintiff's ability to provide a safe and stable home, the authorities perpetuated the cycle of abuse, leaving Y.D.D. , J.D.D, and K.D.D. in a dangerous and psychologically damaging environment.

36. Following the dissolution of the Domestic Abuse Protection Order (DAPO), the court issued an Agreed Order on Temp. Sole Physical Custody on June 16, 2023 **(See Exhibit I –Agreed Order on Temp. Sole Physical Custody)**, Temporary Order Denying in Part and Conditionally Granting in Part Emergency Motion on October 5, 2023 **(See Exhibit J – Temporary Order Denying In Part And Conditonally Granting In Part**

**Emergency Motion)**, Order Denying Emergency Order and Granting Specific Relief on November 7, 2023, **(See Exhibit K – Order Denying Emergency Order and Granting Specific Relief)** and explicitly prohibiting Ami Tsumanuma Davis from having unsupervised contact with the children due to significant safety concerns. This ruling acknowledged the ongoing risk posed by Ami's actions and living environment, confirming earlier findings that her behavior placed the children in substantial danger.

However, despite these findings, earlier judicial decisions—including the dissolution of the DAPO and conflicting temporary orders—failed to adequately address these risks, leaving the children vulnerable to further harm.

Additionally, the court's actions deviated from well-established legal precedent set by the Mississippi Court of Appeals and Supreme Court, which emphasize the importance of keeping siblings together for psychological well-being. Specifically:

a) Smullins v. Smullins, 77 So. 3d 119 (Miss. Ct. App. 2011) held that separating siblings without just cause can negatively impact their emotional and psychological health.
b) Sellers v. Sellers, 638 So. 2d 481, 484 (Miss. 1994) reaffirmed that courts must prioritize the stability and continuity of sibling relationships in custody matters.

Despite these precedents, the court ignored these principles and allowed K.D.D. to remain isolated, separated from his siblings, and excluded from the support system that could have facilitated his recovery. This deprived him of access to mental health resources and compounded the psychological harm already inflicted.

Furthermore, the court's failure to prioritize the children's safety and emotional well-being violated:

a) Miss. Code § 93-21-3, which mandates that courts prioritize the safety and welfare of abuse victims in domestic violence cases.
b) The Fourteenth Amendment's Due Process Clause, as the ruling denied K.D.D. equal protection and access to necessary recovery resources.

This pattern of judicial inconsistency—first dissolving the DAPO without due process, then later restricting Ami's access due to safety concerns, while simultaneously isolating K.D.D. from his siblings and needed resources—demonstrates systemic failures in addressing domestic abuse and ensuring the well-being of children involved. The court's inconsistent and conflicting orders left K.D.D. without the protection, support, and resources necessary for his recovery, further exacerbating the long-term harm inflicted upon him and his family.

37. On February 13, 2023, Jasmine Wright, the therapist for Y.D.D., J.D.D., and K.D.D., provided a formal letter detailing the therapeutic services that Y.D.D. had been receiving. As part of her assessment, Wright administered the Eyberg Child Behavior Inventory (ECBI) and the Child and Adolescent Trauma Screen (CATS), both of which confirmed

that Y.D.D. exhibited clear signs of trauma and PTSD (**Exhibit L –ROI from Mental Health Provider**).

Wright's evaluation emphasized that Y.D.D. felt neither physically nor emotionally safe with his mother, Ami Tsumanuma Davis, or her boyfriend, Vaughn R. Gill. Given these findings, the therapist strongly recommended limited supervised visitation at most to prevent further psychological harm.

Despite these professional recommendations based on clinical assessments, the court disregarded the findings and proceeded with judicial decisions that further endangered Y.D.D.. The failure to incorporate expert evaluations and prioritize the child's well-being reflects a pattern of judicial indifference toward the mental health and safety of the children involved.

38. Following the Judgment of Divorce in 2020, Ami Tsumanuma Davis relocated multiple times, disrupting Plaintiff's ability to exercise his visitation rights and causing instability in the children's lives.

    a) In September 2022, Ami moved to Sandusky, Ohio, citing employment as the reason. However, this employment lasted only three to four months, after which she relocated again.
    b) In October 2022, Ami moved to Detroit, Michigan, a relocation that was unrelated to employment and done without ensuring the stability of the children's schooling or home environment.

These relocations, particularly the move to Detroit, created significant barriers to Plaintiff's ability to maintain his court-ordered visitation rights, including during summer breaks and other scheduled parenting time, as originally outlined in the Judgment of Divorce. The constant changes in the children's living situation severely hindered Plaintiff's relationship with his children, further exacerbating the emotional and psychological toll of the unstable home environment.

39. Court records reflect Ami Tsumanuma Davis's consistent refusal to comply with visitation orders, despite Plaintiff's multiple legal efforts to enforce his parental rights.

In December 2022, Plaintiff filed a petition for modification of custody and visitation, as well as a citation for contempt, in response to Ami's repeated violations of court-ordered visitation agreements. These filings were intended to address Ami's noncompliance and seek judicial intervention to restore Plaintiff's parental access.

Despite these legal efforts, Ami continued to obstruct Plaintiff's visitation rights, creating additional barriers to his ability to maintain a meaningful relationship with his children. This pattern of defiance further contributed to the ongoing emotional and psychological strain on the children, as they were denied access to a stable and consistent parental presence.

Plaintiff was not informed of the motion to dissolve the DAPO or provided an opportunity to present evidence supporting its continuation. This failure to notify Plaintiff constituted a violation of his procedural due process rights under the Fourteenth Amendment.

40. In June 2023, while Plaintiff was conducting a custody exchange for his minor child, K.D.D. Davis, in Michigan, Defendant Ami Tsumanuma Davis began harassing him by falsely claiming that a temporary protection order (TPO) was still in effect, despite its expiration after ten days and the absence of a scheduled hearing. Plaintiff informed Ami that the TPO was no longer legally enforceable, but she insisted otherwise based on her attorney's advice, obstructing the lawful custody exchange.

As Plaintiff secured his children in the vehicle, Defendant Vaughn Gill left his residence and aggressively approached, targeting Y.D.D. and J.D.D. Davis in the back of the car. Plaintiff was forced to intervene, positioning himself between Gill and the minors to protect them. Gill escalated the confrontation by using aggressive body language, profanity, and intimidation in an attempt to provoke a violent reaction. Plaintiff's oldest son, A.D.D., stepped in to separate them, preventing further escalation(**Video 3 –Gill Walks to Car to Confront YDD and JDD**).

During the altercation, Gill began discussing Plaintiff's private financial matters, including bankruptcy and foreclosure, despite having no legal or personal right to such information, suggesting that Ami had shared Plaintiff's confidential details as part of a coordinated effort to harass and humiliate him. When the police arrived at the scene, Ami's attorney was on the phone with the officers, falsely asserting that the TPO was still valid and in effect, further attempting to obstruct Plaintiff's lawful parental rights.

41. On September 11, 2023, Defendant Vaughn Gill sent multiple messages to Plaintiff on Facebook Messenger, despite knowing that Plaintiff had no desire to communicate with him **(Exhibit M –Gill's Message to Davis on Facebook Sept 11, 2023)**.

The messages were intended to provoke, intimidate, and harass Plaintiff, constituting cyberstalking under Michigan law (MCL § 750.411h).

This act was part of a broader pattern of harassment, demonstrating an ongoing effort by Defendants to interfere with Plaintiff's parental rights and to create a hostile environment.

The Michigan custody exchange incident and cyberstalking incident directly resulted from the improper dissolution of the DAPO, which left Plaintiff without legal protection from these attacks.

These events collectively demonstrate a pattern of intimidation, harassment, and conspiracy, warranting legal relief and accountability from the Court.

42. On January 29, 2024, Plaintiff and his children were confronted by Ami Tsumanuma Davis and Vaughn R. Gill outside the courthouse in Gulfport, Mississippi.

a) Vaughn aggressively approached Plaintiff, shouting threats in an intimidating and confrontational manner.

b) The confrontation escalated rapidly, with Vaughn physically pushing Plaintiff on the chest, as documented in Plaintiff's sworn affidavit to the Gulfport Municipal Court.

c) Plaintiff's children were visibly distressed, witnessing the altercation unfold in a public setting.

Fearing for their safety, Plaintiff acted in self-defense to protect himself and his children.

43. Despite video evidence and witness testimony confirming that Ami and Vaughn initiated the confrontation **(Video 4-8 - January 29,2023 Altercation Videos)**, Plaintiff was wrongfully charged with simple assault.

a) Vaughn's own statements to police contained contradictions regarding his recollection of events, particularly regarding whether Plaintiff struck him before or after his verbal aggression escalated the situation.

b) Plaintiff filed a sworn affidavit stating that Vaughn was the initial aggressor, physically pushing him and causing him pain, which directly contradicted Vaughn's claims.

c) Law enforcement proceeded with charges against Plaintiff despite these contradictions and the existence of exculpatory evidence, including video footage.

d) The police report notes that the case was given an "Exceptional Clearance" status, meaning it was cleared despite ambiguities in the evidence.

e) Plaintiff's appeal of the charges was officially filed on July 12, 2024, further demonstrating that this case remains contested.

The incident serves as yet another example of the ongoing harassment and legal manipulation faced by Plaintiff, as well as the failure of law enforcement and the judicial system to hold Ami and Vaughn accountable for their actions.

44. The improper dissolution of the Domestic Abuse Protection Order (DAPO) directly exposed Plaintiff and his children to continued harm. On April 19, 2023, the Harrison County Sheriff's Department removed Y.D.D., J.D.D., and K.D.D. from Plaintiff's custody and forcibly returned them to their mother, Ami Tsumanuma Davis, despite previously documented evidence of their fear and distress.

This action deprived the children of the protection and mental health support they had been receiving from their therapist, Jasmine Wright, who had formally assessed and documented their trauma, PTSD symptoms, and emotional instability. In a February 13, 2023, letter from the Gulf Coast Center for Nonviolence, Wright reported that:

a) Therapeutic assessments confirmed that Y.D.D. exhibited symptoms of trauma and PTSD, as indicated by the Eyberg Child Behavior Inventory (ECBI) and the Child and Adolescent Trauma Screen (CATS).

b) "It appears that the child's mother is currently a significant trigger for the child, which has jeopardized the child's physical and emotional safety."

c) "The child has adamantly expressed he does not feel physically or emotionally safe with his mother or her boyfriend, who lives in the home with her."

d) Wright recommended no visitation or limited supervised visitation with Ami, along with multiple protective measures to ensure Y.D.D.'s safety during visits.

Despite these professional recommendations based on clinical assessments, the court failed to prioritize the children's safety and well-being, instead executing an order that forced them back into an environment from which they had already sought protection. This further exacerbated the psychological harm inflicted on the children, reinforcing the long-term impact of the court's failure to uphold protective measures.

45. The City of Biloxi failed to adequately train or supervise its municipal court officials, including Judge William Tisdale. This failure allowed critical procedural safeguards to be ignored, resulting in the improper dissolution of the Domestic Abuse Protection Order (DAPO) and the subsequent harm suffered by Plaintiff and his children.

Despite clear legal requirements under Mississippi law and established constitutional protections, the City of Biloxi failed to ensure that municipal court judges were properly trained on due process requirements in protective order cases. As a result:

a) Judge Tisdale dissolved the DAPO without notice or a hearing, in direct violation of Miss. Code Ann. § 93-21-15, which requires that protective orders cannot be modified or dissolved without due process.

b) The City of Biloxi's lack of oversight and failure to provide adequate judicial training allowed municipal court officials to violate Plaintiff's constitutional rights under the Fourteenth Amendment by depriving him and his children of legal protection without proper legal proceedings.

c) The failure to enforce proper judicial procedures resulted in foreseeable harm, as the dissolution of the DAPO led to continued harassment, emotional distress, and exposure to danger for Plaintiff and his children.

The City's failure to train and supervise its municipal judges created a systemic issue that deprived Plaintiff of his constitutional rights, demonstrating a pattern of deliberate indifference to the legal protections owed to victims of domestic violence.

46. The actions of Defendants have caused Plaintiff and his children significant emotional distress, exposure to physical danger, and prolonged legal complications. As a direct result of the improper dissolution of the DAPO, the issuance of conflicting court orders, and the failure of judicial and municipal authorities to uphold due process, Plaintiff and his children have endured:

a) Severe emotional distress, including anxiety, fear, and psychological trauma, as documented in therapist Jasmine Wright's evaluations and the children's reluctance to return to an unsafe environment.

b) Exposure to physical danger, as seen in the January 29, 2024, confrontation outside the courthouse, where Plaintiff and his children were threatened and forced into an altercation initiated by Ami and Vaughn.

c) Unjust legal complications, including wrongful criminal charges against Plaintiff despite video evidence and affidavits demonstrating that he acted in self-defense.

These unconstitutional actions have not only disrupted Plaintiff's relationship with his children but also placed them in ongoing psychological and physical harm. Plaintiff seeks justice and accountability for the violations of his and his children's constitutional rights, and for the systemic failures that allowed these injustices to persist.

## V. JURISDICTIONAL CONFLICTS

47. Under Mississippi law, both Chancery Courts and Municipal Courts have the authority to issue Domestic Abuse Protection Orders (DAPOs) under Miss. Code Ann. § 93-21-3. However, these courts operate within distinct jurisdictions, and each must adhere to statutory procedures when issuing, modifying, or dissolving protective orders.

a) Chancery Courts handle civil matters, including family law cases, divorce, and child custody disputes.

b) Municipal Courts have limited jurisdiction over criminal and quasi-criminal matters, including protective orders issued in domestic violence cases.

48. The Municipal Court properly issued the DAPO on April 4, 2023, under its statutory authority in domestic violence cases. However, Judge Carter Bise of the Chancery Court later intervened to dissolve this order, despite no evidence that a proper motion, notice, or hearing had been conducted before doing so.

a) While Chancery Courts have the authority to issue DAPOs, they cannot unilaterally dissolve or modify a Municipal Court's DAPO without following procedural safeguards, including notice and a hearing under Miss. Code Ann. § 93-21-15.

b) The Chancery Court's actions directly override a valid protective order issued by the Municipal Court, without legal justification or proper statutory adherence.

49. By moving to dissolve the DAPO without proper legal authority, Judge Bise overstepped the jurisdictional limits of the Chancery Court. This judicial overreach, combined with Judge Tisdale's failure to uphold the procedural requirements of the Municipal Court, resulted in procedural violations and the erosion of legal protections for Plaintiff and his children.

The conflicting actions of the Chancery Court and Municipal Court created a jurisdictional crisis, leading to legal inconsistencies, procedural violations, and direct

harm to Plaintiff and his children. The failure of the courts to recognize and adhere to their respective jurisdictional boundaries resulted in:

a) The improper dissolution of a valid protective order, leaving Plaintiff and his children exposed to continued abuse and harassment.
b) Judicial decisions that conflicted with one another, causing confusion in enforcement and undermining the effectiveness of legal protections.
c) A lack of coordination between courts, preventing the proper handling of protective orders and exposing systemic failures in how domestic abuse cases are adjudicated in Mississippi.

## Case Law and Statutory Authority Supporting Jurisdictional Boundaries

50. Mississippi law provides clear guidance on the procedures for issuing, modifying, or dissolving protective orders. These rules exist to prevent jurisdictional overreach and ensure procedural due process:

a) Miss. Code Ann. § 93-21-15 – Mandates that no protective order may be modified or dissolved without notice to all parties and a hearing, ensuring due process is upheld in all domestic violence cases.
b) Miss. Code Ann. § 93-21-3 – Grants both Chancery and Municipal Courts the power to issue DAPOs but does not allow one court to unilaterally dissolve another court's order without following statutory procedures.
c) Granny Goose Foods, Inc. v. Bhd. of Teamsters, 415 U.S. 423 (1974) – Establishes that courts must adhere to strict due process standards when issuing, modifying, or dissolving protective orders.
d) Sellers v. Sellers, 638 So. 2d 481, 484 (Miss. 1994) – Holds that Mississippi courts must act within their designated jurisdiction and must not issue conflicting orders that create confusion in family law cases.

This jurisdictional conflict underscores systemic issues in the handling of protective orders, demonstrating an urgent need for procedural clarity, judicial accountability, and inter-court coordination. The failure of the courts to follow jurisdictional rules and due process protections directly contributed to the harm suffered by Plaintiff and his children.

## VI. CAUSES OF ACTION

### COUNT I: VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER THE FOURTEENTH AMENDMENT (42 U.S.C. § 1983)

51. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

52. Defendants Judge William Tisdale and Judge Carter Bise, acting under color of state law, deprived Plaintiff of his liberty and property interests in the Domestic Abuse Protection Order (DAPO) without providing notice, a hearing, or an opportunity to present evidence, in direct violation of the Due Process Clause of the Fourteenth Amendment to the United

18

States Constitution. These actions constitute a violation of 42 U.S.C. § 1983, which provides a remedy for individuals deprived of constitutional rights by state actors.

53. Defendant Tisdale's actions, including his disregard of critical evidence such as the Detroit Police Department's observations from April 2, 2023, further compounded the procedural violations, leaving Plaintiff and his children exposed to unnecessary harm and risk. The Detroit Police Department had documented the children's severe emotional distress and fear of returning to their mother's home, yet this evidence was ignored when the DAPO was dissolved.

54. The dissolution of the DAPO without adherence to proper legal procedures, as mandated by Mississippi Code § 93-21-15, was arbitrary and capricious, depriving Plaintiff of a fair and meaningful opportunity to be heard. Miss. Code Ann. § 93-21-15 explicitly requires notice and a hearing before modifying or dissolving a protective order, yet no such procedural safeguards were followed in this case.

55. Defendants Tisdale and Bise acted in contravention of Mississippi Code § 93-21-3, which emphasizes the legislative purpose of safeguarding victims of domestic abuse. Their actions violated statutory protections intended to ensure the safety and welfare of Plaintiff and his children, nullifying the intended protective function of the DAPO.

56. The failure to adhere to procedural safeguards also violated established constitutional principles articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), which require adequate notice and a meaningful opportunity to be heard before depriving an individual of a protected interest. The arbitrary revocation of Plaintiff's DAPO without affording him due process directly conflicts with these constitutional requirements.

57. The actions of Defendants Tisdale and Bise reflect a willful and systemic disregard for procedural due process requirements under both state and federal law, directly resulting in harm to Plaintiff and his children and constituting a gross violation of their Fourteenth Amendment rights. Their failure to uphold judicial integrity, follow statutory protections, and provide Plaintiff with a fair hearing before dissolving the DAPO deprived Plaintiff of his legal rights and exposed his children to continued danger.

58. This claim is brought under 42 U.S.C. § 1983, which provides a cause of action for individuals whose constitutional rights have been violated by state actors acting under color of law. Defendants Tisdale and Bise, acting in their official capacities as judges within the Mississippi judicial system, engaged in acts that deprived Plaintiff of his procedural due process rights under the Fourteenth Amendment.

   a. Under 28 U.S.C. § 1331, federal courts have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."
   b. Under 28 U.S.C. § 1343(a)(3), federal courts have jurisdiction over civil rights violations committed by state actors, including due process violations under 42 U.S.C. § 1983.

## COUNT II: VIOLATION OF SUBSTANTIVE DUE PROCESS

59. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

19

60. Defendants Judge William Tisdale and Judge Carter Bise's actions deprived Plaintiff of his fundamental right to safety and protection, a right guaranteed under the Fourteenth Amendment's Substantive Due Process Clause. By dissolving the Domestic Abuse Protection Order (DAPO) without justification or adherence to legal standards, Defendants placed Plaintiff and his children in imminent danger.

61. The foreseeable consequences of dissolving the DAPO without justification included:

    a. The harm suffered during the January 29, 2024, altercation, where Plaintiff and his children were confronted and endangered by Ami Tsumanuma Davis and Vaughn R. Gill.

    b. The denial of critical mental health support for Plaintiff's children, who had been receiving therapy from Jasmine Wright, a licensed trauma specialist, to process their past abuse.

    c. The forced return of the children to a known unsafe environment, despite therapist recommendations and prior law enforcement documentation confirming their distress and trauma.

These outcomes were not merely negligent but were the direct and foreseeable results of Defendants' reckless and unjustified decision to dissolve the protective order.

62. Defendants Tisdale and Bise's actions demonstrated a reckless disregard for Plaintiff's and his children's constitutional rights. By prioritizing procedural shortcuts over the safety and well-being of domestic abuse victims, Defendants violated fundamental principles of substantive due process, as articulated in County of Sacramento v. Lewis, 523 U.S. 833 (1998), which prohibits state actions that are arbitrary, capricious, or shocking to the conscience.

    a) The U.S. Supreme Court has held that substantive due process protects individuals from government actions that are arbitrary or conscience-shocking. In County of Sacramento v. Lewis, the Court emphasized that executive actions that are deliberately indifferent to an individual's rights can violate substantive due process.

    b) In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the Court recognized that while the state may not have an affirmative duty to protect individuals from private harm, it cannot act in ways that increase an individual's vulnerability to such harm. By dissolving the DAPO, Defendants removed existing protections, thereby creating or exacerbating the danger to Plaintiff and his children.

    c) Although in Town of Castle Rock v. Gonzales, 545 U.S. 748 (2005), the Court held that there is no constitutional right to police enforcement of a restraining order, the present case is distinguishable. Here, the issue is not the failure to enforce a protective order but the active dissolution of an existing order by judicial officers, which directly increased the risk to Plaintiff and his children.

    d) Defendants' conduct, including their failure to consider documented evidence of abuse and their disregard for the legislative intent of Mississippi's domestic abuse statutes under Miss. Code § 93-21-3, directly resulted in harm to Plaintiff and his children. These actions represent a gross violation of substantive due process rights

20

under the Fourteenth Amendment, as they stripped Plaintiff and his children of legal protections designed to safeguard them from harm.

This claim is brought under 42 U.S.C. § 1983, which provides a cause of action for individuals whose constitutional rights have been violated by state actors acting under color of law. Defendants Tisdale and Bise, acting in their official capacities, engaged in state action that deprived Plaintiff and his children of their substantive due process rights by:

a) Removing an established legal protection (the DAPO) and exposing Plaintiff and his children to danger.
b) Ignoring documented evidence of abuse, trauma, and risk to the children.
c) Failing to adhere to the protective purpose of Mississippi's domestic abuse statutes, which are designed to prevent harm to victims of abuse.

Jurisdiction is proper under:

a. 28 U.S.C. § 1331, granting federal courts jurisdiction over all civil actions arising under the Constitution or federal law.
b. 28 U.S.C. § 1343(a)(3), which grants jurisdiction over civil rights violations committed by state actors.

## COUNT III – CONSPIRACY TO VIOLATE EQUAL PROTECTION (42 U.S.C. § 1985(3))

63. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
64. Defendants Judge William Tisdale and Judge Carter Bise acted in concert, conspiring to deprive Plaintiff of his constitutional rights through the arbitrary and unjust dissolution of the Domestic Abuse Protection Order (DAPO). Their coordinated actions resulted in procedural violations that placed Plaintiff and his children in immediate danger.

Defendants demonstrated unequal treatment, as Plaintiff was not afforded the same procedural protections as others in similar situations. By dissolving the DAPO without notice or a hearing, Defendants denied Plaintiff the equal protection of the law, violating his rights under the Equal Protection Clause of the Fourteenth Amendment.

a) Plaintiff was deprived of procedural due process, whereas similarly situated individuals seeking or defending against a protective order are typically afforded notice and a hearing before modifications are made.
b) The court's selective disregard of Plaintiff's rights reflects systemic bias, as other individuals in domestic violence cases would not have had their protective orders dissolved in this arbitrary and capricious manner.

65. The coordinated effort between Defendants reflects deliberate indifference and systemic bias against Plaintiff. Their joint actions and disregard for established legal procedures

violated 42 U.S.C. § 1985(3), which prohibits conspiracies to deprive individuals of equal protection or privileges under the law.

    a) Under Griffin v. Breckenridge, 403 U.S. 88 (1971), a conspiracy under 42 U.S.C. § 1985(3) occurs when two or more persons conspire to deny someone equal protection or privileges under the law.
    b) Defendants acted in concert to nullify a valid protective order, disregarding the legal rights and safety of Plaintiff and his children.
    c) Their failure to uphold legal standards in this case while ensuring due process in other protective order cases constitutes a violation of equal protection.

66. Defendants' failure to apply procedural safeguards consistently, including their refusal to consider critical evidence such as the Detroit Police Department's report and professional trauma assessments, demonstrates systemic bias. These actions:

    a) Placed Plaintiff and his children in direct harm, despite clear evidence that the DAPO was necessary for their safety.
    b) Afforded preferential treatment to the opposing party, disregarding the legal and procedural rights Plaintiff was entitled to under Mississippi law.

67. The arbitrary dissolution of the DAPO without adherence to statutory requirements or procedural fairness is further evidence of deliberate indifference to Plaintiff's constitutional rights and the legislative intent of Mississippi's domestic abuse statutes under Miss. Code § 93-21-3.

    a) Miss. Code Ann. § 93-21-15 mandates procedural protections in modifying or dissolving a protective order, yet Defendants ignored these requirements, stripping Plaintiff of legal protections without due process.

68. Defendants' conspiracy to dissolve the DAPO without legal justification, coupled with their disregard for evidence of abuse and procedural safeguards, deprived Plaintiff of equal protection and violated his rights under 42 U.S.C. § 1985(3). These actions:

    a. Demonstrate a systemic failure to uphold the principles of fairness and justice enshrined in federal and state law.
    b. Show a pattern of unequal treatment, reinforcing that Plaintiff was singled out for disparate treatment compared to others seeking similar legal protections.

69. To further substantiate the claim under 42 U.S.C. § 1985(3), the following case law is pertinent:

    a) Griffin v. Breckenridge, 403 U.S. 88 (1971): The Supreme Court held that § 1985(3) reaches private conspiracies aimed at depriving individuals of equal protection of the laws. The Court emphasized that the statute applies when there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."

b) Bray v. Alexandria Women's Health Clinic, 506 U.S. 263 (1993): The Court clarified that, under § 1985(3), plaintiffs must demonstrate that the conspiracy was motivated by a class-based, invidiously discriminatory animus. While the specific context involved anti-abortion protests, the ruling underscores the necessity of proving discriminatory intent against a protected class.

c) United Brotherhood of Carpenters & Joiners v. Scott, 463 U.S. 825 (1983): The Court held that § 1985(3) does not reach conspiracies motivated by economic or commercial animus, emphasizing that the statute is intended to address conspiracies driven by discriminatory animus against protected classes.

These cases collectively highlight the requirement under § 1985(3) to demonstrate a conspiracy motivated by discriminatory animus against a protected class, resulting in the deprivation of equal protection or privileges under the law.

70. This claim is brought under 42 U.S.C. § 1985(3), which prohibits conspiracies to deny equal protection or equal privileges under the law. Defendants Tisdale and Bise, acting in their official capacities, conspired to dissolve a valid protective order, knowing it would place Plaintiff and his children in harm's way and deprive them of equal protection under the law.

Jurisdiction is proper under:

a. 28 U.S.C. § 1331, granting federal courts jurisdiction over all civil actions arising under the Constitution or federal law.

b. 28 U.S.C. § 1343(a)(3), which grants jurisdiction over civil rights violations involving conspiracies to deny equal protection under 42 U.S.C. § 1985(3).

## COUNT IV: CONSPIRACY TO VIOLATE CIVIL RIGHTS (42 U.S.C. § 1985(3))

(Against Judges William Tisdale and Carter Bise, and Other Unnamed Defendants)

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. Defendants Judge William Tisdale and Judge Carter Bise, acting under color of state law, engaged in a concerted and coordinated effort to deprive Plaintiff of his constitutionally protected rights by improperly dissolving a valid Domestic Abuse Protection Order (DAPO) without notice, hearing, or legal justification.

73. Defendant Judge Carter Bise conferred with Judge William Tisdale, as documented in the Dissolution Order, and advised that the motion to dissolve the DAPO was "well-taken" . Acting on this communication, Judge Tisdale dissolved the DAPO without following procedural due process requirements, violating Plaintiff's rights under the Fourteenth Amendment.

74. This private conference between Defendants Bise and Tisdale was not part of any public hearing or legal proceeding and was conducted without Plaintiff's knowledge, thereby depriving Plaintiff of a meaningful opportunity to be heard.

23

75. The improper dissolution of the DAPO was an overt act that directly exposed Plaintiff and his children to harm, culminating in the January 29, 2024, altercation initiated by Ami Tsumanuma Davis and Vaughn Gill.

76. Had the DAPO remained in place, Plaintiff and his children would have remained protected under its terms, and the events of January 29, 2024, would not have occurred.

77. The actions of Defendants Bise and Tisdale were taken in furtherance of a conspiracy to deny Plaintiff equal protection of the law, violating 42 U.S.C. § 1985(3).

78. The conspiracy was motivated by an intent to deprive Plaintiff of rights guaranteed under the Fourteenth Amendment, including the right to procedural due process and equal protection under the law.

79. As a direct and proximate result of Defendants' conspiracy, Plaintiff suffered significant harm, including:

   a. Loss of court-ordered protection from domestic abuse.
   b. Exposure to renewed threats and violence.
   c. Emotional distress and trauma for both Plaintiff and his children.
   d. Unwarranted criminal charges arising from a confrontation that would not have occurred but for the dissolution of the DAPO.

80. The conspiracy extended across state lines, leading to additional incidents of harassment in Michigan during a custody exchange.

   a. June 2023 Custody Exchange Incident in Michigan: Plaintiff was picking up his child, K.D.D., as part of a custody exchange. Ami Tsumanuma Davis harassed Plaintiff, falsely claiming that a temporary protection order was still in effect, despite its expiration after ten days and no hearing being set.
   b. Ami and her lawyer knowingly misrepresented legal facts to interfere with Plaintiff's custody rights.
   c. Vaughn Gill aggressively confronted Plaintiff's children (Y.D.D. and J.D.D.) at the exchange, forcing Plaintiff to intervene.
   d. Gill physically intimidated Plaintiff and made profane remarks about his financial situation, including bankruptcy and foreclosure, information he could only have learned through Ami.
   e. Gill later harassed Plaintiff via Facebook Messenger on September 11, 2023, engaging in cyberstalking and continued intimidation.

## COUNT V: MUNICIPAL LIABILITY (MONELL CLAIM)

81. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.
82. The City of Biloxi failed to enforce its municipal ordinances and procedural safeguards requiring proper training and supervision of judicial officials in compliance with

24

Mississippi Code § 93-21-15, which mandates procedural protections in modifying or dissolving domestic abuse protective orders.

83. The City's lack of enforcement resulted in systemic violations of individuals' constitutional rights, including Plaintiff's rights to procedural due process and the protection of his children. By failing to implement proper oversight mechanisms, the City created an environment where judicial officers could arbitrarily dissolve protective orders without proper legal justification or due process safeguards.

84. Defendant City of Biloxi failed to adequately train or supervise its judicial officials and municipal employees, resulting in the deprivation of Plaintiff's constitutional rights. Specifically, the failure to provide sufficient training on the procedural requirements for modifying or dissolving protective orders led to arbitrary and unlawful decisions that harmed Plaintiff and his children by:

   a) Allowing Judge Tisdale to dissolve a valid protective order without notice or a hearing, violating due process protections under the Fourteenth Amendment.
   b) Failing to ensure proper judicial review of Plaintiff's case, despite available evidence of harm, including reports from the Detroit Police Department and professional trauma assessments by Jasmine Wright.

85. The City's failure to implement safeguards against the improper dissolution of court orders reflects deliberate indifference to the rights of individuals like Plaintiff. This includes:

   a) Failing to ensure children's rights to safety, stability, and mental health support were protected during legal proceedings.
   b) Allowing municipal court officials to act without oversight, creating a pattern of unconstitutional deprivations.

86. The City's deliberate indifference and lack of adequate policies or training directly caused or contributed to the deprivation of Plaintiff's Fourteenth Amendment rights, as well as violations of Mississippi statutory protections, including Miss. Code § 93-21-15 and § 93-21-3, which emphasize the necessity of procedural fairness and safeguarding domestic abuse victims.

87. The City of Biloxi's actions and omissions reflect a pattern of systemic failures to uphold constitutional protections, creating an environment where procedural safeguards are ignored, and victims of abuse are left vulnerable. This pattern directly resulted in harm to Plaintiff and his children, as they were deprived of legal protection without due process.


## Legal Precedents Supporting Municipal Liability (Monell Claim)

88. Under federal law, municipalities are liable for constitutional violations caused by their policies, customs, or practices when such violations result from deliberate indifference, as established in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). The City of Biloxi's lack of training and supervision constitutes an

unconstitutional custom or practice that directly caused the harm suffered by Plaintiff and his children.

   a) In Monell, the Supreme Court held that municipalities are liable under 42 U.S.C. § 1983 when their official policies or customs result in constitutional violations.
   b) Here, the City of Biloxi's failure to train or supervise judicial officers effectively created an unofficial policy that allowed violations of procedural due process to persist unchecked.

89. In City of Canton v. Harris, 489 U.S. 378 (1989), the Supreme Court held that a municipality's failure to train its employees adequately can serve as the basis for liability under 42 U.S.C. § 1983 when the failure amounts to deliberate indifference to the rights of persons with whom the employees come into contact. The City of Biloxi's failure to train judicial officials on the proper handling of protective orders demonstrates deliberate indifference and a conscious disregard for constitutional rights by:

   a) Failing to ensure that judges followed Mississippi law requiring notice and a hearing before dissolving a protective order.
   b) Allowing an ongoing pattern of inconsistent, arbitrary decision-making in domestic violence protective order cases.
   c) Not providing municipal court officials with adequate training regarding due process protections under the Fourteenth Amendment.

90. Mississippi case law further reinforces municipal liability under § 1983 when systemic failures in oversight and enforcement result in constitutional violations:

   a) Holliday v. Monroe County, Mississippi & Monroe County Sheriff's Department – The court acknowledged that municipalities can be held liable when a policy, custom, or failure to train directly results in a constitutional violation. This case underscores that Monell claims require demonstrating that the municipality's inaction or failure to train led to a deprivation of rights.
   b) Linares v. City of Southaven – Reaffirmed that under Monell, municipal liability arises only when the constitutional violation results from an official policy, custom, or practice, reinforcing the argument that Biloxi's lack of training led to systemic procedural failures in handling protective orders.
   c) Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397 (1997) – The Supreme Court ruled that a municipality can be liable where it fails to act on a known pattern of constitutional violations. Biloxi's repeated failure to enforce procedural protections in protective order cases establishes an unconstitutional municipal custom.

91. The City of Biloxi's deliberate indifference created an environment where violations of procedural due process and substantive protections were inevitable, directly resulting in the harm experienced by Plaintiff and his children. The City's failure to train, supervise, or hold municipal officials accountable led to a constitutional deprivation actionable under 42 U.S.C. § 1983.

92. This claim is brought under 42 U.S.C. § 1983, which provides a cause of action for individuals whose constitutional rights have been violated by municipal policies, customs, or practices. The City of Biloxi, acting through its municipal officials and judicial officers, created an unconstitutional custom by failing to enforce procedural safeguards, leading to:

    a) The wrongful dissolution of a valid protective order without due process, in violation of the Fourteenth Amendment.
    b) The systemic failure to train and supervise municipal court judges, allowing repeat violations of due process protections.
    c) The deliberate disregard of Mississippi statutory protections for victims of domestic abuse, as outlined in Miss. Code Ann. §§ 93-21-15 and 93-21-3.

93. Jurisdiction is proper under:

    a) 28 U.S.C. § 1331, granting federal courts jurisdiction over all civil actions arising under the Constitution or federal law.
    b) 28 U.S.C. § 1343(a)(3), which grants jurisdiction over civil rights violations committed by municipalities under 42 U.S.C. § 1983.

### VII. JURY DEMAND

94. Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

### VI. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

## A. Immediate Emergency Relief (Expedited Hearing & Temporary Injunctions Required)

A. Expedite an emergency hearing within 14 days to address the immediate and ongoing risk to Plaintiff and his children, ensuring that their constitutional rights are not further violated while this case is pending.
B. Issue a Temporary Restraining Order (TRO) and preliminary injunction immediately, reinstating the Domestic Abuse Protection Order (DAPO) and preventing any further unlawful modification or dissolution of protective orders by Defendants without strict adherence to due process.
C. Enjoin Defendants from engaging in any retaliatory or adverse actions against Plaintiff or his children, including any efforts to undermine his parental rights, initiate baseless legal proceedings, or facilitate further harm by their past abusers.

## B. Declaratory and Injunctive Relief (Long-Term Protection and Reform)

D. Declare that Defendants' actions violated Plaintiff's constitutional rights under the Fourteenth Amendment, including violations of procedural due process, substantive due process, and equal protection.

E. Permanently reinstate the Domestic Abuse Protection Order (DAPO) and implement mandatory procedural safeguards for modifying or dissolving such orders, ensuring that Plaintiff and his children are not subjected to further harm due to unlawful judicial actions.

F. Order Defendants to implement emergency judicial training programs within 30 days to prevent further violations of domestic abuse protections, including specific training on due process requirements, the legal consequences of failing to follow statutory protections, and the rights of victims under federal law.

G. Mandate reporting and review mechanisms for judicial officers to ensure accountability and adherence to constitutional standards in protective order and family law cases, requiring public reporting within 60 days to ensure transparency.

## C. Monetary Damages (Immediate Compensation for Harm Suffered)

H. Award immediate compensatory damages to Plaintiff for:

- Emotional distress suffered due to the wrongful dissolution of the DAPO.
- Legal fees and costs incurred while seeking to reinstate protective measures.
- Financial and psychological harm suffered by Plaintiff and his children due to Defendants' unconstitutional actions.

I. Award punitive damages against Defendant Tisdale for his willful, malicious, and reckless disregard for Plaintiff's constitutional rights, causing avoidable harm and distress.

J. Award reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988, as Plaintiff's claims arise under 42 U.S.C. § 1983 and other federal civil rights statutes.

## D. Federal Oversight, Investigations, and Systemic Reforms (Immediate Review and Action Required)

K. Declare that Defendants Tisdale and Bise acted with deliberate bias and disregard for Plaintiff's rights, as evidenced by their unlawful handling of the DAPO and their systemic failures to protect Plaintiff and his children from ongoing harm.

L. Order the Federal Bureau of Investigation (FBI) and the Department of Justice (DOJ) to initiate an investigation within 30 days into this case and any other cases involving Plaintiff for potential systemic misconduct, abuse of power, or violations of federal law by state actors, judicial officials, or other parties.

M. Require Defendants to submit to external audits of their judicial and administrative processes within 60 days to identify patterns of bias or procedural failures, with public reporting of findings within 90 days to ensure transparency and accountability.

N. Order an immediate federal oversight investigation into Child Protective Services (CPS) in Harrison County, Mississippi, including their handling of Plaintiff's case and other related cases, to ensure compliance with federal and state laws protecting children and families from systemic negligence and abuse, with initial findings reported within 90 days.

O. Direct an independent investigation into the Biloxi Police Department's handling of

Plaintiff's police reports, including their responses to allegations of abuse and neglect, to determine whether systemic failures contributed to the violations of Plaintiff's and his children's rights, and to ensure accountability for any identified misconduct or negligence, with a preliminary report within 60 days.

### E. Federal Protection and Reporting (Urgent Protective Measures Required)

P. Issue a federal protection order immediately to safeguard Plaintiff and his family against potential retaliation or harm from Defendants or other judicial officials within Harrison County and the Eighth Chancery District of Mississippi, ensuring their safety and ability to pursue justice without fear.

Q. Direct the reporting of all abuse suffered by Plaintiff and his children to the Violence Against Women Act (VAWA) authorities and the United States Citizenship and Immigration Services (USCIS) within 30 days, ensuring that appropriate federal protections and oversight are applied to rectify systemic failures in safeguarding the rights of abuse victims.

### F. Any Other Relief (Immediate and Equitable Justice Required)

R. Grant any further relief this Court deems just and equitable, ensuring that the systemic failures and constitutional violations suffered by Plaintiff and his children are fully addressed with urgency.

Date: 11 FEB 2025

Respectfully submitted,

HON. Adam Duvall Davis, Sr. U.S. NAVY VET.
870 ELLINGTON DRIVE
BILOXI, MS 39532
TEL: (337) 504-8179
EMAIL: