IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION



HON. ADAM DUVALL DAVIS, SR., U.S. NAVY VETERAN    PLAINTIFF

v.                                                Civil No. 1:25-cv-00039-LG-BWR

HON. WILLIAM TISDALE, *in his individual and official capacities;*
CITY OF BILOXI, MISSISSIPPI;
HON. CARTER BISE, *in his individual and official capacities;*
and OTHER UNNAMED DEFENDANTS                      DEFENDANTS

## OBJECTION TO REPORT AND RECOMMENDATION (ECF NO. 6): Denial of Access to Justice and Harm to Minor Child

COMES NOW Plaintiff, Hon. Adam Duvall Davis, Sr., a United States Navy Veteran, and respectfully submits this Objection pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) to the Report and Recommendation ("R&R") entered on April 3, 2025, by Magistrate Judge Bradley W. Rath.

This Objection challenges the R&R in its entirety on the grounds that it:
(1) Fails to address Plaintiff's central legal questions,
(2) Mischaracterizes Plaintiff's financial disclosures and sworn filings,
(3) Relies on inapplicable lower court rulings while ignoring controlling federal statutes, and
(4) Exhibits an appearance of bias incompatible with judicial neutrality.

The omissions, contradictions, and selective reasoning in the R&R create an unjust and unconstitutional barrier to Plaintiff's access to justice under 28 U.S.C. § 1915, particularly in a matter where child safety, civil rights, and federally protected benefits are at stake.

The R&R must be rejected because it fails to address Plaintiff's key legal questions, mischaracterizes Plaintiff's filings and financial situation, relies on inapposite lower court decisions while ignoring binding statutory protections, and reflects an appearance of bias. The Report's omissions and logic errors create an unjust barrier to Plaintiff's access to justice under 28 U.S.C. § 1915.

---

## I. THE COURT FAILED TO ADDRESS PLAINTIFF'S LEGAL QUESTIONS

Plaintiff raised detailed and explicit legal questions regarding how to properly disclose VA disability compensation on the AO 239 IFP application without waiving its statutory protections under 38 U.S.C. § 5301. The Court failed to respond to any of these questions or provide the requested guidance. Instead, the R&R labeled Plaintiff's application "inconsistent," then refused to explain how it could be corrected or how VA compensation should be reported in a manner consistent with federal law.

The R&R also failed to clarify whether the Court itself considers VA compensation to be "income." The Report alternates between calling it "benefits" and treating it as attachable income, thereby creating a contradiction that shields the Court's legal reasoning from scrutiny. This ambiguity deprives Plaintiff of a meaningful opportunity to comply with the Court's expectations and violates basic principles of procedural fairness.

In Plaintiff's Motion for Reconsideration, he asked the Court to:

- Define whether VA compensation is considered income under § 1915(a) and how such a definition aligns (or conflicts) with 38 U.S.C. § 5301, IRS Code § 104(a)(4), SSA POMS GN 02210.006, and the HAVEN Act;
- Explain how courts may classify VA compensation as income for IFP purposes, but not for taxation, Social Security credits, or bankruptcy;
- Clarify whether the Court's application of *Hawes v. Stephens* to a non-prisoner civilian plaintiff was intentional or mistaken;
- Justify its use of prisoner-specific standards under the PLRA rather than the general indigency standard in 28 U.S.C. § 1915(a);
- Specify whether the Court believed Plaintiff was incarcerated, or why it cited a case governed by prison financial restrictions;
- Explain why the Court ignored Plaintiff's bankruptcy documentation, which clearly showed severe financial hardship;
- Indicate whether Plaintiff may amend his IFP form and how to do so without waiving statutory rights;
- Provide a clear explanation of IFP eligibility criteria the Court applies, especially regarding debt and exempt benefits;
- Acknowledge Plaintiff's honorable service and correct the unequal caption formatting;
- Explain the Court's selective treatment of evidence, and
- Provide instructions on appellate rights if the motion were denied.

None of these questions were answered in the R&R. The Report not only ignored each point but gave no procedural opportunity for Plaintiff to amend his filing based on clarified criteria. These omissions raise serious due process concerns and further illustrate the appearance of bias and arbitrary decision-making.

As a United States Magistrate Judge, the Court holds considerable authority, especially over pro se litigants seeking access to justice. With great power comes greater responsibility—not only to rule, but to explain. Instead of rising to that duty, the Court has chosen to sidestep Plaintiff's direct legal questions, obscure its reasoning, and deny a clear path for correction. Such avoidance is not judicial restraint—it is a failure of judicial responsibility.

## II. RELIANCE ON NON-BINDING CASES TO OVERRIDE FEDERAL LAW

The Report relies on several non-binding district court decisions to justify denying Plaintiff's in forma pauperis (IFP) application, including *Konecny v. Core-Mark Holdings*, *Martin v. Mitchell*, *Zara v. 7-Eleven Headquarters*, and *Stupkowski v. Terrell*. None of these cases address the statutory protections governing VA disability compensation under 38 U.S.C. § 5301, nor do they analyze whether courts may legally treat such compensation as income for purposes of assessing indigency. These decisions merely assume that VA benefits may be included in financial assessments without reconciling this assumption with binding federal law.

Plaintiff never denied that district courts have occasionally treated VA benefits as income. Plaintiff's position is that doing so is legally impermissible when it conflicts with § 5301, the Supremacy Clause, and Supreme Court precedent in *Porter v. Aetna* and *Ridgway v. Ridgway*. The Report mischaracterizes Plaintiff's argument as ignorance of case law, rather than a direct challenge to its legal validity and compatibility with higher authority.

The Report also cites *Smith v. Oliphant*, *Woods-White v. Comm'r of Social Security*, *Dobbribs v. Kroger Co.*, and *McCoy v. Colvin*. These cases involve general financial hardship claims, not VA disability benefits. Using them to justify denying Plaintiff's IFP motion conflates protected federal benefits with ordinary income and erases the critical legal distinction that Congress has made.

The Court's reliance on *Hawes v. Stephens*, 964 F.3d 412 (5th Cir. 2020), is legally misplaced and factually inapposite. In *Hawes*, the Fifth Circuit did not hold that VA disability compensation could be freely scrutinized or treated as income for purposes of in forma pauperis analysis. Instead, the court emphasized that the veteran's VA benefits had lost their protected status under 38 U.S.C. § 5301 only because they had been commingled with other non-exempt funds in his inmate trust account. The court stated that the benefits were no longer traceable and thus no longer exempt. This ruling does not stand for the proposition that VA disability compensation is countable income in general—it merely illustrates that commingling and waiver can erode § 5301 protection in a custodial setting. In Plaintiff's case, no such waiver or commingling has occurred. His VA disability benefits remain separately accounted for, and their legal status as exempt from "any legal or equitable process whatever" remains intact. Applying *Hawes* beyond its narrow procedural context distorts its holding and unlawfully erodes Congress's explicit protections for disabled veterans.

The Court's reliance on these cases elevates judicial discretion above express statutory exemptions. This creates a false equivalency between non-binding opinions and the plain text of 38 U.S.C. § 5301. It also ignores the interpretive rule that courts must avoid constitutional conflict where possible. By failing to distinguish between countable income and legally protected benefits, the Court's reasoning risks violating not only federal statute but also the Constitution.

Lower court discretion cannot supersede Congressional intent, and the decisions cited in the Report cannot override federal protections enacted to safeguard veterans and their dependents.

To rely on such authority without engaging with the controlling law is not just flawed—it is constitutionally dangerous.

### III. MISAPPLICATION OF HAWES v. STEPHENS AND IMPROPER USE OF PRISONER STANDARDS AGAINST A CIVILIAN VETERAN

The Court's reliance on *Hawes v. Stephens*, 964 F.3d 412 (5th Cir. 2020), is legally misplaced and factually inapposite. In *Hawes*, the Fifth Circuit addressed a narrow issue related to the commingling of VA benefits in an inmate trust account. The holding did not authorize general judicial scrutiny of VA disability compensation, nor did it classify those benefits as attachable income for the purpose of in forma pauperis (IFP) analysis. Rather, the court concluded that once VA benefits are commingled with other funds and rendered untraceable, they may lose their exempt status under 38 U.S.C. § 5301. That holding is limited to custodial and inmate-account settings and does not apply here.

In *Hawes*, the plaintiff was incarcerated and subject to VA compensation reduction under 38 U.S.C. § 5313(a)(1), which lowers payments to the 10% disability rate (approximately $165/month) after 60 days of imprisonment. The veteran had no housing, utility, or daily expenses because those were covered by the state. The Fifth Circuit emphasized that the benefits lost their protected status only because they were deposited into a general prison account, becoming indistinguishable from other funds. This specific factual scenario is wholly inapplicable to Plaintiff, a non-incarcerated civilian veteran who lives independently, maintains a household, and receives VA disability compensation that is kept separate from other income.

Plaintiff has not waived any protections under § 5301. His VA disability benefits remain segregated and are not used for any non-permitted purpose. There is no commingling, no state-funded subsistence, and no custodial context that would justify invoking *Hawes*. The attempt to use this case to justify denial of Plaintiff's IFP application is a distortion of the ruling and its context.

Moreover, the application of any standard derived from the Prison Litigation Reform Act (PLRA) is legally erroneous. Plaintiff is not incarcerated and is not subject to the statutory limitations that apply to prisoner-plaintiffs under 28 U.S.C. § 1915(b). Section 1915(a) sets a separate standard for non-incarcerated litigants, one that does not rely on reduced expenses or custodial considerations. The PLRA was enacted to curb abusive prisoner litigation—not to burden civilian veterans seeking access to the courts.

The Court's reliance on *Hawes* and implicit use of a PLRA-like framework to assess Plaintiff's finances reflect a broader effort to find legal justification for denial, not a good-faith application of governing law. This is not a close call. Using an incarcerated plaintiff whose benefits were diluted in a custodial account as a financial benchmark for a disabled veteran raising children in his own home is not just inapt—it is logically absurd and legally indefensible.

Plaintiff urges this Court to recognize the categorical distinction between inmates whose subsistence is state-funded and free citizens whose federally protected benefits are exempt from judicial interference. Judicial credibility depends on meaningful distinctions. The facts and

holding of *Hawes* bear no rational connection to the circumstances in this case and must be rejected as a basis for denying IFP relief.

Furthermore, the Court attempted to bolster its position by citing a set of unrelated and inapplicable cases:

- Konecny v. Core-Mark Holdings Co. Inc. (PFG), No. 4:25-cv-00137-ALM-BD, 2025 WL 734010 (E.D. Tex. Feb. 17, 2025): An employment discrimination case with no analysis of IFP standards or veterans' benefits. It is improperly cited for the idea that non-prisoners may be denied IFP—but contains no legal reasoning regarding VA compensation and fails to address statutory protections like § 5301.
- Martin v. Mitchell, No. 20-cv-2366 JLS (AGS), 2021 WL 347696 (S.D. Cal. Feb. 2, 2021): Involved a plaintiff receiving VA benefits, but the court denied IFP without analyzing 38 U.S.C. § 5301. It simply assumed such benefits could be treated as income, ignoring the protective scope of federal law and Supreme Court precedent.
- Zara v. 7-Eleven Headquarters, No. 6:19-cv-1401-Orl-40GJK, 2019 WL 13395550 (M.D. Fla. Sept. 9, 2019): A standard IFP denial based on financial disclosures. The case does not mention VA benefits or their legal status, and cannot support scrutiny of protected funds.
- Stupkowski v. Terrell, No. CIV. 08-1081 JNE/SRN, 2008 WL 3911386 (D. Minn. Aug. 18, 2008): Briefly mentioned veterans' benefits without any analysis of § 5301. The assertion that VA benefits may be considered was unsubstantiated dicta and ignores Supreme Court rulings requiring liberal construction in favor of veterans.

None of these cases analyze whether treating VA benefits as income conflicts with § 5301 or relevant precedent. Their use to justify judicial scrutiny of protected benefits reflects judicial overreach—not sound legal analysis.

Congress enacted § 5301 to protect veterans from having their benefits subjected to any form of legal process. This principle is well established:

- *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159 (1962): VA disability benefits are protected even after receipt unless the protection is affirmatively waived.
- *Ridgway v. Ridgway*, 454 U.S. 46 (1981): Federal benefits protections override state and judicial attempts to redirect protected funds.
- *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413 (1973): Benefits exempt from legal process cannot be counted merely because they are received monthly.
- *Nelson v. Heiss*, 271 F.3d 891 (9th Cir. 2001): VA funds remain protected unless clearly waived.

The Court's attempt to distinguish between "considering" VA benefits and "attaching" them ignores the plain language of § 5301, which protects these benefits from "any legal or equitable process whatever." This includes judicial determinations that rely on such benefits to deny access to courts.

In sum, the cited cases do not support the Court's legal reasoning and certainly do not override clear federal protections. To do so is not only unsupported by precedent—it violates the Supremacy Clause and the constitutional right of equal access to justice.

## IV. MISINTERPRETATION OF 38 U.S.C. § 5301 AND IMPERMISSIBLE CONDITIONING OF COURT ACCESS

As discussed in Section II, the Court's reliance on lower court cases that neither bind this Court nor address statutory exemptions for veterans' benefits reveals a flawed foundation. That error is compounded by a deeper and more consequential misreading of 38 U.S.C. § 5301, the federal law that expressly prohibits the very type of judicial interference now being applied to deny Plaintiff access to the courts.

The Magistrate Judge attempts to justify the consideration of Plaintiff's VA disability compensation by asserting that the Court "does not act as a creditor." But this narrow framing disregards the plain language and established legal scope of § 5301, which provides:

"Payments of benefits... shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

This broad protection is not limited to collections—it bars any legal or equitable process that compromises the integrity of the benefit. The U.S. Supreme Court has made this clear in *Porter v. Aetna*, 370 U.S. 159, 162 (1962), where it held that VA benefits remain exempt even after receipt unless affirmatively waived. In *Ridgway v. Ridgway*, 454 U.S. 46, 60 (1981), the Court reiterated that Congress's explicit protections preempt contrary judicial action. The Court's analysis here violates both holdings by insisting that VA benefits can be weighed and effectively counted for the purpose of denying court access—a functional seizure without a formal label.

Even worse, the Report relies on *Stupkowski v. Terrell* and other unreported district cases that ignore the Supremacy Clause and apply no substantive statutory analysis to § 5301. These rulings are not binding, not persuasive, and not consistent with the Supreme Court's command that veterans' protections be interpreted liberally in favor of the beneficiary. No case cited by the Court shows that a veteran can be denied judicial access unless he first waives federal protections granted to him under law.

By conditioning Plaintiff's IFP eligibility on his willingness to report federally protected funds as attachable income, the Court has effectively created a judicial lien on benefits that Congress declared untouchable. This is not legal neutrality—it is legally impermissible coercion. It transforms a statutory right into a procedural barrier and invites courts to disregard federal protections whenever they conflict with discretionary preferences.

Congress did not intend for veterans to choose between access to the courts and the integrity of their compensation. That is the unconstitutional fork in the road the Court has imposed here, and it must be corrected.

## V. THE COURT IGNORED PLAINTIFF'S BANKRUPTCY EXPLANATION AND MISAPPLIED THE FINANCIAL STANDARD

Plaintiff explained that any discrepancies in his debt reporting arose from the reinstatement of obligations under 11 U.S.C. § 349(b) following the dismissal of his Chapter 7 bankruptcy. Under that statute, dismissal of a bankruptcy case legally restores debts to their pre-bankruptcy enforceable status. Plaintiff clearly cited this statute in his motion for reconsideration to show that his debt levels were the result of statutory operation—not deception or excessive spending.

The Court did not address this explanation at all. Instead, it cited unrelated district court cases—*Smith v. Oliphant*, *Woods-White v. Comm'r of Social Security*, and *Dobbribs v. Kroger Co.*—to imply that Plaintiff's expenses outweighed his income and thus disqualified him from IFP status. Not only are these cases non-binding, they also have nothing to do with VA benefits, bankruptcy law, or the protections Plaintiff invoked. They were cited to cast doubt on Plaintiff's credibility, not to engage with the law or facts he presented.

This analysis also conflicts with controlling case law. In *Adkins v. E.I. DuPont*, 335 U.S. 331 (1948), the Supreme Court held that a person need not be absolutely destitute to qualify for IFP status—only unable to pay the filing fee while still affording basic necessities. Similarly, *Potnick v. Eastern State Hospital*, 701 F.2d 243 (2d Cir. 1983), and *De Long v. Hennessey*, 912 F.2d 1144 (9th Cir. 1990), affirm that eligibility for IFP is based on practical inability to pay, not rigid budget formulas. The Court's suggestion that Plaintiff is "living above his means" ignores the reality that a person can have high expenses due to legal obligations and still be financially incapable of prepaying court fees.

Furthermore, Plaintiff provided his bankruptcy case number—filed in the very same judicial district—as part of his supporting materials. If the Court doubted the accuracy of Plaintiff's financial disclosures, it had immediate access to verify them through its own internal records. The fact that it chose not to do so, while using the existence of debt as a strike against Plaintiff, underscores a troubling bias and disregard for basic fairness.

The Court's failure to consider this legal explanation, and its choice to instead assume dishonesty, reflects a denial of Plaintiff's right to a fair evaluation under 28 U.S.C. § 1915. It also erodes trust in the judicial process by punishing litigants for disclosing complex financial realities instead of rewarding transparency and statutory compliance.

## VI. UNEQUAL TREATMENT IN CAPTIONING AND FORMATTING

In the original caption of the Court's Order, the title "Hon." was used to identify Defendants Bise and Tisdale—both sitting judges—but was completely omitted for Plaintiff, despite Plaintiff serving 19 years in the U.S. Navy and achieving the distinguished designation of Master Training Specialist. This omission was not accidental or ministerial—it was a clear act of selective recognition, signaling unequal respect and undermining the Court's appearance of impartiality.

When Plaintiff raised this issue, the Court quietly corrected it in the header of the Report and Recommendation—not by restoring "Hon." to Plaintiff's name, but by moving "Hon." from the front to the back of the judicial defendants' names, e.g., "William Tisdale, Hon." This formatting change was not neutral; it preserved the honorific for the judges while conspicuously continuing to omit it for the Plaintiff. This maneuver was deliberate, not procedural. It reveals a conscious effort to uphold symbolic authority for state actors while denying equal standing and dignity to a pro se veteran plaintiff challenging judicial abuse.

The Court attempted to justify the formatting under Federal Rules of Civil Procedure 8, 10, and 17, but none of these rules address the use of honorifics. The explanation is a post hoc rationalization, disconnected from the Plaintiff's actual concern: equal treatment in how parties are addressed before the Court.

This treatment is particularly offensive given Plaintiff's service to the nation and the fact that he is litigating a case involving alleged constitutional violations by the very officers the Court continues to elevate symbolically. In this context, the omission of Plaintiff's honorific becomes more than a cosmetic oversight—it is a subtle but powerful act of judicial bias, reinforcing unequal standing and diminishing the seriousness of Plaintiff's claims.

The judiciary is not merely a forum of rules—it is a forum of equal standing. Canon 2(A) of the Code of Conduct for United States Judges requires courts to "promote public confidence in the integrity and impartiality of the judiciary." When the Court selectively bestows honorific titles on the judicial defendants while omitting the same for a veteran plaintiff—then retrofits its caption to preserve those titles while continuing to exclude Plaintiff—it signals partiality in form and substance.

Moreover, Canon 3(A)(3) mandates that judges be "dignified, respectful, and courteous to litigants." The Court's actions undermine this standard. Combined with its refusal to answer legal questions, its tone, and its adversarial posture, this pattern justifies serious concern under 28 U.S.C. § 455(a). Even the appearance of bias—especially in a case alleging civil rights violations—demands caution and accountability.

The Court's handling of this issue speaks volumes.

### VII. COURT FAILED TO PROVIDE GUIDANCE ON COMPLETING IFP FORM

The AO 239 form provides a standard mechanism for litigants to disclose income and expenses when seeking in forma pauperis status. It lists "Disability (such as social security, insurance payments)" as an example of reportable income, but does not reference VA disability compensation—which is categorically protected from judicial process under 38 U.S.C. § 5301. While the form may leave room for interpretation in some areas, it does not require applicants to disclose or classify VA disability compensation as attachable income, nor does it provide any mechanism to override its federal exemption.

The issue in this case is not with the form itself but with the Court's unlawful expansion of the form's scope. Plaintiff followed the AO 239's instructions in good faith and listed all reportable

financial information not subject to federal exemption. The Court, however, rejected the filing not because the form was incomplete, but because Plaintiff refused to classify federally protected VA benefits as available income for court costs—despite the form not requiring that classification. This represents a procedural trap rather than a legitimate assessment of indigency.

AO 239 directs applicants to "estimate the average amount of money received" from listed sources over the past 12 months. It does not instruct applicants to state whether those funds are usable to pay court fees, nor does it ask for legal interpretations about whether a particular benefit should be treated as income. That determination, if required, belongs to Congress—not to a court rewriting a form through denial orders.

Furthermore, the AO 239 Long Form asks applicants to list the "amount due" for monthly expenses—not whether those expenses are currently being paid. Plaintiff accurately reported these amounts as legal obligations, consistent with federal bankruptcy law and SSA accounting standards. Penalizing Plaintiff for reporting real debts simply because they are not being paid in full imposes an extra-formal requirement not found anywhere in the instructions.

Despite Plaintiff's repeated and explicit request for clarification on how to lawfully complete the form without waiving rights under § 5301, the Court provided no guidance, no amendment opportunity, and no explanation of how to resolve the supposed inconsistency. This amounts to a denial of procedural due process and turns the AO 239 form from a neutral eligibility tool into a vehicle for judicial discretion inconsistent with federal protections.

By using its own interpretation of the form to deny access, while refusing to explain or clarify that interpretation when asked, the Court has effectively conditioned legal access on a waiver of federal statutory rights—an outcome that is not supported by any authority and is in direct conflict with controlling law and the principles of fundamental fairness.

## VIII. THE TONE OF THE REPORT REFLECTS JUDICIAL BIAS

Rather than neutrally evaluating Plaintiff's motion, the Report and Recommendation adopts a dismissive and adversarial tone. In multiple instances, it uses conclusory language to characterize Plaintiff as "mistaken" without engaging the legal substance of his arguments. For example, the Report begins by stating:

"Plaintiff is mistaken." (R&R at 5)

Yet nowhere does the Court explain how Plaintiff's understanding of 38 U.S.C. § 5301, the Supremacy Clause, or the legal definition of "income" under § 1915(a) is actually incorrect. Instead, it dismisses Plaintiff's interpretation outright without engaging his cited authorities—including Porter v. Aetna, Ridgway v. Ridgway, or the HAVEN Act.

The Report continues this dismissive tone by saying:

"Plaintiff has not clearly explained how the form is defective..." (R&R at 6)

This disregards the multiple places in Plaintiff's motion where he explicitly explained how the AO 239 form fails to account for federally protected non-attachable benefits such as VA disability compensation. It also ignores Plaintiff's request for clarification as to where such benefits should be listed without waiving their legal status.

Moreover, the Report states:

"The caption of a complaint is chiefly for administrative convenience..." (R&R at 7–8)

This glib rationale ignores the heart of Plaintiff's concern—that the omission of his honorific and the formatting used for judicial defendants communicates symbolic inequality and reinforces the perception of institutional bias. The Court not only failed to engage this concern, but trivialized it.

The Report reads more like a defense of the original denial than a fresh, impartial analysis. Its rhetorical framing does not reflect judicial objectivity—it signals bias.

This conduct violates Canon 3(A)(4) of the Code of Conduct for United States Judges, which requires that judges "accord to every person... the right to be heard according to law." It also violates Canon 2(A), which mandates that judges act at all times in a manner that promotes public confidence in the impartiality of the judiciary.

Judicial bias is not limited to overt acts—it can manifest in language, tone, and refusal to engage the merits. As the Supreme Court held in Liteky v. United States, 510 U.S. 540 (1994), bias may be inferred from behavior that displays deep-seated favoritism or antagonism. In Caperton v. Massey, 556 U.S. 868 (2009), the Court reaffirmed that even the appearance of bias violates due process when it reaches a constitutionally intolerable level.

Here, the Court's tone, rhetorical dismissiveness, and unwillingness to substantively address Plaintiff's arguments raise precisely that concern. They reflect not a neutral judicial inquiry but an attempt to justify a prior denial—an act that undermines the legitimacy of the recommendation and the Court's appearance of impartiality.

## VIII. FAILURE TO ADDRESS HARM TO PLAINTIFF'S CHILDREN

The Court's Report and Recommendation (R&R) fails to acknowledge the direct, ongoing harm caused to Plaintiff's minor children due to delays in adjudicating his in forma pauperis (IFP) status. This omission is not only procedurally unjust—it is constitutionally offensive.

Plaintiff has repeatedly explained that the inability to proceed with his case has delayed urgent legal action necessary to protect his sons, particularly Kyonosuke Davis, from documented abuse, psychological manipulation, and physical danger. These are not abstract harms—they are verified in sworn affidavits submitted by Plaintiff's other children, Yuuji Davis and Joseph Davis, who are now in college and thriving only because they were finally able to escape the abusive environment imposed by their mother, Ami Tsumanuma Davis.

Joseph testifies that Kyonosuke has been denied visitation, unlawfully isolated, and physically mistreated, including being dragged, beaten with a belt, and having his finger crushed in a laptop. Yuuji adds that Kyonosuke has cried during court-ordered visitation exchanges, was thrown out of a vehicle, and has expressed violent ideation against those currently in the home with him. He is routinely monitored during calls, denied meaningful contact with his father and siblings, and kept in psychological isolation, which has visibly affected his mental state.

These harms are not speculative. They are current, documented, and known to this Court. The denial of IFP status has effectively blocked Plaintiff from pursuing relief for his minor child, even when supported by overwhelming evidence including: • Video evidence of abuse; • Court orders that were not enforced; • Expert analysis from child counselor Jasmine Wright, who has treated the children for trauma; • A pattern of neglect, coercion, and racial bias by the custodial parent; • Sworn testimony identifying specific incidents of violence, educational neglect, and emotional trauma.

This harm is compounded by the improper dissolution of a valid Domestic Abuse Protection Order (DAPO) issued for the express purpose of protecting Kyonosuke and his siblings. That order was dissolved without a hearing, notice, or opportunity to be heard—clear violations of Mississippi Code § 93-21-15 and the Fourteenth Amendment. The denial of IFP status prevents Plaintiff from challenging these unlawful actions and seeking reissuance of urgently needed protection.

Moreover, the Court is a mandatory reporter under Mississippi Code § 43-21-353 and a finder of fact under Federal Rule of Civil Procedure 17(c)(2). It has in its possession all of the necessary documentation to take emergency or interim action to safeguard the children from further harm. As a gatekeeper to justice, the Court must not ignore its duty to act when presented with credible and corroborated evidence of child abuse and endangerment. Its inaction in this matter not only delays a permanent solution—it enables continued harm.

The Court's affirmative duty to protect unrepresented minors is also supported by Canon 3(A)(4) of the Code of Conduct for United States Judges, which requires that judges "accord to every person... the right to be heard according to law," and Canon 2(A), which mandates that judges act at all times in a manner that promotes public confidence in the impartiality of the judiciary. Additionally, In re Gault, 387 U.S. 1 (1967), reaffirmed that children are entitled to full constitutional protections, including access to courts and due process.

The Court also possesses inherent equitable powers to issue injunctive or interim relief to prevent imminent harm to children—even in the absence of a formal motion—when credible, corroborated evidence justifies intervention. See Ex parte Burrus, 136 U.S. 586, 593–94 (1890); United States v. Ritchie, 15 F.3d 592, 599 (6th Cir. 1994). Courts have long exercised this power to ensure that constitutional rights—especially the safety and welfare of children—are not sacrificed to procedural technicalities. This Court has clear documentation before it: video evidence, expert mental health findings, and corroborated sworn affidavits showing that the DAPO was both necessary and lawfully issued before it was improperly dissolved through an inter-court conspiracy. Its continued refusal to act despite this evidence and despite the Court's own statutory obligations, amounts to willful neglect of judicial duty.

By refusing to consider these facts in the IFP denial, the Court has failed its duty under Bounds v. Smith, 430 U.S. 817 (1977), which guarantees "meaningful access to the courts" for all litigants, particularly where children's constitutional rights are at stake. As the Supreme Court reaffirmed in M.L.B. v. S.L.J., 519 U.S. 102 (1996), due process prohibits courts from denying access to justice in family matters based solely on inability to pay. When the consequence is the continued suffering of a child in a dangerous environment, the denial of IFP is not merely administrative—it is constitutional dereliction.

In a proceeding involving children, where liberty, safety, and emotional well-being are on the line, the Court cannot feign neutrality by remaining silent. Delay in adjudicating this case further prolongs the suffering of a vulnerable minor. If the Court has discretion in interpreting income for IFP purposes, it also has the discretion to prioritize the constitutional and human rights of a child in peril.

The decision to ignore this element of the case reflects either a dangerous indifference or an intentional strategy to suppress the stakes—neither of which is acceptable. The facts demand urgency. Kyonosuke's safety is not a theoretical interest—it is the core of this case, and this Court's silence is a grave disservice to the law and to justice.

## X. ADDITIONAL UNANSWERED REQUESTS

The Report and Recommendation not only mischaracterizes Plaintiff's legal positions—it ignores key procedural and constitutional questions that were explicitly raised in Plaintiff's motion for reconsideration. This silence deprives Plaintiff of meaningful engagement and creates a due process concern under both 28 U.S.C. § 1915 and Fed. R. Civ. P. 72. Below is a non-exhaustive list of critical issues that the Court failed to address:

1. Plaintiff's Offer to Amend the IFP Form
   Plaintiff explicitly requested guidance on how to amend the AO 239 IFP form to reflect his VA disability compensation without mischaracterizing it as income. The Court refused to offer any clarification, while simultaneously labeling the application "inconsistent." This refusal to offer instruction contradicts the judiciary's duty to assist pro se litigants in navigating procedural complexities.
2. ADA-Compliant Accommodations
   Plaintiff requested clarification on how to receive reasonable accommodations due to his hearing impairment, including real-time transcription or assistive listening devices. This request was ignored in violation of the Americans with Disabilities Act, which requires courts to provide equal access to litigants with disabilities. See *Tennessee v. Lane*, 541 U.S. 509 (2004).
3. Request for Appeal Instructions
   Plaintiff asked the Court to provide clear instructions for appeal in the event of another denial. Instead, the Court provided boilerplate language and failed to acknowledge Plaintiff's need for guidance. For a pro se litigant asserting fundamental rights, this omission effectively obstructs access to appellate review.
4. The Human Stakes Involved
   The Report does not mention Plaintiff's children, his family's trauma, or the irreparable

harm caused by delayed access to legal relief. The complete erasure of these facts reveals either a systemic failure to engage or a deliberate effort to obscure the moral and constitutional stakes.

5. VA Disability as Income Under § 1915
   Despite anchoring its recommendation on Plaintiff's financial disclosures, the Court never definitively stated whether it views VA disability benefits as income under § 1915. It referenced unrelated cases without analyzing how its position aligns—or conflicts—with federal protections like 38 U.S.C. § 5301, the HAVEN Act, or Supreme Court precedent (*Porter*, *Ridgway*). This evasion denies Plaintiff the ability to contest a clear legal conclusion.

6. Clarification on Caption Formatting
   Plaintiff asked why "Hon." was used for Defendants but not for Plaintiff. Rather than directly addressing the concern, the Court moved the title "Hon." to the end of the judicial defendants' names while continuing to omit it for Plaintiff. This post hoc formatting change underscores the Court's unwillingness to confront legitimate claims of unequal treatment.

7. Citations to Governing Law
   Plaintiff cited a comprehensive list of controlling statutes, including 38 U.S.C. § 5301, IRS Code § 104(a)(4), 11 U.S.C. § 349(b), and Social Security regulations that govern classifications of benefits. The Court failed to address a single one. Instead, it relied on out-of-circuit, non-binding decisions without confronting the laws raised.

8. Transparency in Income vs. Expense Assessment
   Plaintiff asked for transparency regarding how courts assess "inability to pay." The R&R gave no clear rule, threshold, or explanation—leaving Plaintiff and future applicants with no standard to follow. The lack of any stated reasoning increases the likelihood of arbitrary enforcement, a danger recognized in *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972), where vague legal standards were struck down for violating due process.

## XI CONFLICT OF INTEREST AND APPEARANCE OF IMPROPRIETY

Magistrate Judge Bradley W. Rath is now personally named in multiple filings by Plaintiff that challenge not only his legal conclusions, but also his tone, impartiality, and repeated refusal to address fundamental procedural and constitutional issues. Continued judicial oversight of this matter by Judge Rath violates the principle that no person should sit in judgment of their own conduct—a cornerstone of both constitutional due process and federal judicial ethics.

Under 28 U.S.C. § 455(a), a judge must recuse himself in any proceeding "in which his impartiality might reasonably be questioned." That standard does not require actual bias—it requires only an appearance of bias from the perspective of a reasonable, informed observer. As the Supreme Court held in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), judicial recusal is mandated even in cases where "an objective observer would question [the judge's] impartiality," regardless of actual intent.

In this case, the conflict is ongoing and compounding. Judge Rath has now issued multiple rulings and recommendations involving Plaintiff, and those rulings have become the subject of

constitutional challenge based on selective formatting, adversarial tone, avoidance of key legal issues, and refusal to provide access to the courts. These concerns were not raised abstractly—they were laid out in detail in Plaintiff's motion for reconsideration and again in this objection.

Yet the Court has continued to:

- Defend its own language choices (e.g., calling Plaintiff "mistaken");
- Avoid engaging Plaintiff's legal citations, including *Porter*, *Ridgway*, the HAVEN Act, and 38 U.S.C. § 5301;
- Ignore questions about the captioning and status bias, while subtly preserving honorifics for state actors and excluding Plaintiff;
- And refuse to recuse, despite now being a named figure in allegations of constitutional violations and judicial misconduct.

In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Supreme Court held that due process requires recusal where there exists a serious risk of actual bias, or where a judge's prior involvement creates an impermissible appearance of partiality. This principle applies with even greater force where, as here, the judge must evaluate legal attacks on their own conduct.

By continuing to preside over a matter in which he is now a disputed actor, Judge Rath transforms the judicial role into one of self-defense, not neutral adjudication. This undermines public trust in the legitimacy of these proceedings and risks irreversible constitutional harm to Plaintiff and his family. The fact that the Court refuses to acknowledge this appearance of impropriety—while also avoiding substantive responses to Plaintiff's legal claims—only magnifies the perception of arbitrary justice.

For these reasons, Plaintiff respectfully requests that this matter be reassigned to a neutral judicial officer to preserve both the appearance and reality of fairness as required by law.

## XII. CERTIFICATE OF OBJECTION COMPLIANCE

Plaintiff certifies that this Objection is timely filed within fourteen (14) days of service of the Magistrate Judge's Report and Recommendation, as required by Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1). Plaintiff respectfully requests de novo review by the District Judge of all findings, conclusions, and recommendations to which objection has been made.

Pursuant to Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428–29 (5th Cir. 1996), Plaintiff expressly preserves each objection herein for the purposes of appeal and further judicial review.

## XIII. Judicial Misinterpretation of 38 U.S.C. § 5301 and Impermissible Conditioning of Court Access

The Magistrate Judge repeatedly downplays the full scope of protection provided by 38 U.S.C. § 5301(a) by suggesting that merely considering VA disability benefits in an indigency analysis

does not violate the statute because the Court "does not act as a creditor." This interpretation is both legally incorrect and constitutionally dangerous.

Section 5301(a) plainly states:

*"Payments of benefits... shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."*

This language has been interpreted by the U.S. Supreme Court to apply broadly and liberally, protecting veterans' benefits not only from formal garnishment or attachment, but also from indirect legal coercion or compelled diversion. See *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159, 162 (1962) ("The exemption is to be liberally construed... and does not cease upon receipt by the beneficiary."); *Ridgway v. Ridgway*, 454 U.S. 46, 60 (1981) ("Congress has spoken with force and clarity... courts may not limit the scope of that command.").

By demanding that Plaintiff disclose and apply his VA disability compensation to court costs or face denial of access to the judiciary, the Court is not engaging in a neutral assessment of economic need—it is engaging in an unlawful legal process prohibited by § 5301(a). Whether the Court labels itself a "creditor" is immaterial. As the Supreme Court has made clear, it is the nature of the process itself, not the identity of the actor, that determines whether the exemption has been violated.

The Court's reliance on *Stupkowski v. Terrell*, an unpublished and non-binding District of Minnesota case from 2008, cannot override binding federal statute or Supreme Court precedent. Moreover, the Court ignores the HAVEN Act, which reaffirms Congress's intent to exclude VA disability benefits from legal scrutiny in financial hardship proceedings, including bankruptcy and by logical extension, in forma pauperis applications.

Judicial discretion cannot override Congressional protections. Conditioning access to justice on a waiver of statutory exemptions effectively weaponizes procedure against the very populations those statutes were enacted to protect—disabled veterans and their families. This is not just incorrect—it is constitutionally impermissible.

### XIV. PATTERN OF INACCURATE OR MISLEADING STATEMENTS IN THE R&R

The Report and Recommendation reflects a concerning pattern of factual misstatements and selective omissions that demonstrate the Magistrate Judge's failure to evaluate this matter with the care and seriousness warranted by the rights at stake:

1. Misstatement of Dependent Ages: The Court stated that Plaintiff "claimed his spouse and two 18-year-old sons as relying on him for support." This is false. Joseph is 16 years old—a legal minor. This fact is documented in both the complaint and the DAPO. The misstatement calls into question whether the R&R was based on a complete review of the record. Additionally, the same Court previously admonished Plaintiff about failing to

    redact minor names, implying knowledge of Joseph's minor status. The contradiction is deeply troubling.

2. **Misrepresentation of Plaintiff's Income Disclosure:** The R&R stated that Plaintiff "refused" to disclose his VA disability benefit amount, citing the $0.00 entry on the AO 239 form. In reality, Plaintiff attached legal documentation explaining that VA disability compensation is not income under federal law, and Plaintiff followed the form's instructions. The Court ignored this good-faith legal position and created the appearance of intentional concealment where none existed.

3. **Unsupported Legal Assertion Regarding 38 U.S.C. § 5301:** The R&R claims that "nothing in the statute suggests that recipients of benefits are exempt from statutory filing fee requirements." This is legally untrue. Section 5301 provides broad protection against any legal or equitable process. The Court's statement reads more like advocacy for a preferred outcome than neutral legal analysis.

4. **Failure to Acknowledge Plaintiff's Bankruptcy Explanation:** The R&R cast doubt on Plaintiff's reported debts as inconsistent, while completely ignoring Plaintiff's citation to 11 U.S.C. § 349(b) to explain why those debts were reinstated following bankruptcy dismissal. This omission unfairly impugns Plaintiff's credibility.

5. **Citing Non-Binding, Inapplicable Lower Court Decisions:** The R&R cites decisions like *Konecny, Martin, Stupkowski,* and *Zara*—none of which interpret or apply § 5301 with any depth. These cases do not control and cannot override Supreme Court precedent in *Porter* and *Ridgway*. Reliance on them suggests the goal was to find support for denial, rather than assess Plaintiff's eligibility under binding authority.

These errors, taken together, do not simply reflect negligence or haste—they illustrate a judicial approach that prioritizes argument over accuracy, and legal positioning over human consequence. For this Court, the denial of a fee waiver may be a minor procedural ruling. But for Plaintiff and his children, it is a matter of accessing the legal protections that shield them from ongoing trauma. The law demands more than detachment—it demands fidelity to fact, law, and justice.

## XV. CONCLUSION AND PRAYER FOR RELIEF

For all the reasons stated above—including the misapplication of law, failure to engage with Plaintiff's constitutional arguments, refusal to clarify procedural requirements, disregard for the documented harm to Plaintiff's children, and the appearance of judicial bias—Plaintiff respectfully requests that the District Court:

1. Reject the Report and Recommendation (ECF No. 6) in its entirety as legally and procedurally deficient;
2. Grant Plaintiff's Motion to Proceed In Forma Pauperis, recognizing the legal protections afforded to VA disability compensation and Plaintiff's demonstrated financial hardship, especially in light of federal statute 38 U.S.C. § 5301, the HAVEN Act, and controlling Supreme Court precedent;
3. Alternatively, if the Court remains uncertain, allow Plaintiff to amend the IFP application with specific, written guidance on how to lawfully disclose VA disability compensation in a manner that preserves its protected legal status;

4. Reassign this matter to a different magistrate judge pursuant to 28 U.S.C. § 455(a), due to the appearance of judicial impropriety, prejudgment, and bias displayed in the Report and Recommendation and prior rulings;
5. Immediately issue injunctive or interim relief protecting Plaintiff's minor child, Kyonosuke Davis, pursuant to the Court's inherent equitable powers and its duty as a mandatory reporter and finder of fact. Plaintiff respectfully requests that the Court review the documented evidence, including affidavits, videos, and counseling records, and consider reinstating the Domestic Abuse Protection Order (DAPO) that was unlawfully dissolved in violation of Mississippi Code § 93-21-15;
6. Preserve all objections raised in this filing for purposes of appeal under Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996), and Federal Rule of Civil Procedure 72(b).

The denial of in forma pauperis status in this case is not a trivial administrative matter. It functionally bars Plaintiff—a disabled veteran, domestic abuse survivor, and father—from pursuing legal recourse to protect his child from ongoing abuse. The law does not—and must not—require indigent litigants to choose between basic survival and fundamental justice.

Congress intended for statutes like § 5301 to shield veterans, not exclude them from the legal system. The Court's misapplication of these statutes has not only denied Plaintiff access to justice—it has endangered a child. The urgency of this matter requires corrective action now.

Respectfully submitted,

/s/ Hon. Adam Duvall Davis, Sr. U.S. Navy Veteran, Plaintiff Pro Se 870 Ellington Drive Biloxi, MS 39532