

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HON. ADAM DUVALL DAVIS, SR., U.S. NAVY VETERAN          PLAINTIFF


v.                                                      Civil No. 1:25-cv-00039-LG-BWR


HON. WILLIAM TISDALE, *in his individual and official capacities;*
CITY OF BILOXI, MISSISSIPPI;
HON. CARTER BISE, *in his individual and official capacities;*
and OTHER UNNAMED DEFENDANTS                            DEFENDANTS

## PLAINTIFF'S MOTION TO VACATE VOID JUDGMENT UNDER RULE 60(b)(4) AND REQUEST FOR JUDICIAL DISQUALIFICATION UNDER 28 U.S.C. § 455(a)

## I. INTRODUCTION AND PURPOSE

This motion is filed pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure to vacate a void judgment entered against Plaintiff the Hon. Adam Duvall Davis, Sr., which denied his in forma pauperis (IFP) status and access to emergency relief. The judgment is void because it was rendered in violation of constitutional protections, federal statutes—particularly 38 U.S.C. § 5301(a)—and the Due Process Clause of the Fifth and Fourteenth Amendments.

Alternatively, this motion is also submitted pursuant to Federal Rule of Civil Procedure 59(e) for reconsideration of the Order entered on June 27, 2025. Plaintiff respectfully asserts that the Court committed clear legal error, ignored controlling federal statutes, and denied emergency constitutional relief under improper grounds. Even if the judgment is not void under Rule 60(b)(4), it must be amended under Rule 59(e) to correct manifest injustice, misapplication of law, and failure to engage with Plaintiff's central constitutional and statutory claims.

This filing also supports a motion for disqualification of District Judge Louis Guirola under 28 U.S.C. § 455(a) due to demonstrated judicial contradictions, disregard of controlling law, evasion of constitutional issues, and conduct that gives rise to a reasonable question as to impartiality.

Plaintiff further seeks reassignment to a neutral Article III judge, restoration of access to the judicial process under constitutionally appropriate standards, and formal referral to the U.S. Department of Justice for civil rights review due to ongoing harm, statutory violations, and state actor retaliation that has not been properly adjudicated.

Plaintiff respectfully submits that this motion is necessary not only to correct the record but to preserve the rule of law and ensure that veterans, pro se litigants, and disabled individuals are not

excluded from federal justice through procedurally coercive, retaliatory, or constitutionally void rulings.

## PRELIMINARY STATEMENT

1. Plaintiff, Adam Duvall Davis, Sr., brings this action pursuant to 42 U.S.C. § 1983 to redress egregious violations of his constitutional rights committed by state actors operating under color of law. Specifically, this case arises from the unlawful and arbitrary dissolution of a valid Domestic Abuse Protection Order (DAPO)—an order explicitly issued to safeguard Plaintiff and his minor children from documented harassment, abuse, and threats by individuals who posed an imminent danger to their safety.

2. The events giving rise to this action began when Plaintiff, after enduring escalating abuse and harassment from his ex-wife, Ami Tsumanuma Davis, and her boyfriend, Vaughn Gill, sought and was granted a Domestic Abuse Protection Order (DAPO) by the Biloxi Municipal Court, presided over by Judge William Tisdale. The DAPO was issued pursuant to Miss. Code Ann. § 93-21-15, which mandates protective measures to prevent continued domestic abuse. The order explicitly prohibited Ami and Vaughn from initiating contact with or being in proximity to Plaintiff and his minor children, ensuring their legal protection against further harassment and potential harm.

3. Despite these legally binding safeguards, Judge William Tisdale unilaterally and unlawfully dissolved the DAPO following ex parte communications with Judge Carter Bise, a Chancery Court judge. This action was taken without providing Plaintiff with notice, an opportunity to be heard, or any legally sufficient justification—a direct and egregious violation of Plaintiff's procedural due process rights under the Fourteenth Amendment to the U.S. Constitution. The Supreme Court has long held that a person cannot be deprived of a legally recognized protection order without due process, as established in Mathews v. Eldridge, 424 U.S. 319 (1976), and reaffirmed in Goss v. Lopez, 419 U.S. 565 (1975).

4. Additionally, Miss. Code Ann. § 93-21-15(2) explicitly states that a protection order may not be modified or dismissed without a hearing where both parties have the opportunity to present evidence. By violating both federal due process protections and clear statutory mandates, the Defendants acted outside the bounds of their judicial authority, resulting in direct and foreseeable harm to Plaintiff and his children.

5. Crucially, on June 2, 2025, Judge Carter Bise officially recused himself from Plaintiff's related state custody proceedings due to demonstrated bias and a lack of impartiality. Subsequently, on June 5, 2025, the entire 8th Chancery District also recused itself from the matter, acknowledging systemic judicial prejudice. On June 17, 2025, the Mississippi Supreme Court appointed a Special Chancellor to assume jurisdiction. These admissions substantiate Plaintiff's allegations of improper judicial intervention and validate his claims that the dissolution of the DAPO was procedurally and constitutionally void from inception.

6. The unlawful dissolution of the DAPO directly led to a foreseeable chain of events that placed Plaintiff and his children in imminent danger. On January 29, 2024, while standing outside the courthouse, Plaintiff and his children were approached and confronted by Ami Tsumanuma Davis and Vaughn Gill, despite the fact that the DAPO had previously barred them from initiating contact. Without provocation, Vaughn

escalated the situation, issuing verbal threats and engaging in physical aggression, leaving Plaintiff with no alternative but to act in self-defense to protect himself and his children.

7. Had the DAPO remained in effect, this confrontation would not have occurred. The arbitrary and constitutionally defective actions of Judges Tisdale and Bise directly placed Plaintiff and his children in foreseeable danger, violating their substantive due process rights under the Fourteenth Amendment, as articulated in County of Sacramento v. Lewis, 523 U.S. 833 (1998), and DeShaney v. Winnebago County, 489 U.S. 189 (1989).

8. Furthermore, under the "state-created danger" doctrine, state actors who remove protective legal barriers and affirmatively expose individuals to harm are liable under 42 U.S.C. § 1983. See Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998); Doe v. South Carolina Dep't of Soc. Servs., 597 F.3d 163 (4th Cir. 2010).

9. In addition to the individual judicial misconduct, the City of Biloxi, Mississippi, bears municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978), for its failure to train or supervise its municipal judges on lawful DAPO procedures. The absence of written policies, training, or accountability systems permitted Judge Tisdale to disregard Mississippi law and violate Plaintiff's rights with impunity. This deliberate indifference to the constitutional rights of domestic violence victims constitutes an actionable municipal custom or practice.

10. Plaintiff accordingly seeks declaratory, injunctive, compensatory, and punitive relief against all Defendants, including municipal liability against the City of Biloxi for its unconstitutional policies and practices that enabled and perpetuated these violations.

## II. The Judgment Is Void Under Rule 60(b)(4) Due to Constitutional and Statutory Violations

A judgment is void under Federal Rule of Civil Procedure 60(b)(4) if it is issued in a manner inconsistent with due process or if the court lacked the legal authority to issue the judgment. In this case, the Court's denial of Plaintiff's in forma pauperis (IFP) application and emergency relief is void because it was rendered in direct violation of Plaintiff's federally protected rights under the Constitution and 38 U.S.C. § 5301(a).

First, the Court unlawfully conditioned access to the federal judiciary on the disclosure of VA disability compensation, a form of protected federal benefits that is explicitly exempt from any legal or equitable process under 38 U.S.C. § 5301(a)(1). This constitutes a constructive seizure of protected benefits and imposes an unconstitutional condition, forcing Plaintiff to choose between surrendering statutory protections and accessing the court. No court has authority to override these federal exemptions through procedural coercion.

Second, the Court misapplied binding legal standards by relying on inapplicable prisoner-case precedent (Hawes v. Stephens, 964 F.3d 412 (5th Cir. 2020)) under 28 U.S.C. § 1915(b), which applies solely to incarcerated individuals. Plaintiff is not incarcerated, and his motion was filed under § 1915(a). The Court's reliance on Hawes to justify denial of access to the courts was both legally erroneous and jurisdictionally unsound.

3

Third, the Court denied Plaintiff's emergency motion for protective and injunctive relief without addressing the underlying constitutional and statutory claims, including ongoing retaliation by state actors, threats to Plaintiff's physical safety, and violations of an existing Domestic Abuse Protection Order (DAPO). The denial of emergency relief based solely on IFP status, without reviewing the urgency or merits of the claims, violates procedural due process and renders the judgment constitutionally invalid.

Fourth, the Court introduced factual findings without evidentiary support—such as speculative statements that Plaintiff's "vehicles appear to be paid off"—which constitutes improper judicial fact-finding and undermines the fairness of the proceeding. Such speculative conclusions further taint the judgment and violate Rule 52(a) and basic due process requirements.

Because the Court's ruling disregarded constitutional guarantees, federal supremacy, and controlling statutes, the judgment is void and must be vacated under Rule 60(b)(4).

### III. Misapplication of Hawes v. Stephens and Misuse of Section 1915(b) to Deny Civilian Access Under 1915(a)

Judge Guirola misquoted Plaintiff's argument regarding *Hawes v. Stephens*. Plaintiff did not state that *Hawes* turned solely on the commingling of VA benefits with non-exempt funds. Instead, Plaintiff clearly explained that *Hawes* was a prisoner case in which the exemption protections of § 5301 were lost due to the custodial context, commingling, and untraceability of benefits—factors wholly absent in Plaintiff's civilian case.

Judge Guirola fundamentally misapplied the Fifth Circuit's decision in *Hawes v. Stephens*, 964 F.3d 412 (5th Cir. 2020), in a manner that conflicts with the plain language of 28 U.S.C. § 1915, the statutory protections of 38 U.S.C. § 5301(a), and the structural distinction between prisoner and civilian litigants.

The Court falsely characterized *Hawes* as holding that:

1. Section 5301(a) does not exempt VA benefits from being considered income in IFP evaluations, and
2. VA disability compensation may be used to assess civilian eligibility under § 1915(a).

This is incorrect. The Fifth Circuit in *Hawes* addressed a prisoner's loss of § 5301 protections due to commingling protected VA benefits with non-exempt funds in a prison trust account. The opinion expressly dealt with § 1915(b)—which governs incarcerated persons—not § 1915(a), which applies to non-prisoners like Plaintiff. Nowhere did the Fifth Circuit authorize courts to override § 5301(a) when evaluating IFP for civilians.

4

Judge Guirola's logic is doubly flawed. First, he conceded that § 1915(b) applies only to prisoners, yet continued to cite *Hawes* as justification for denying Plaintiff's IFP request under § 1915(a). This is a statutory contradiction. Judge Guirola also claimed that since § 1915 does not require courts to collect fees from non-prisoners, it is unlikely that considering VA disability benefits as income would violate § 5301. This statement is deeply flawed. Without a statutory basis or the veteran's affirmative waiver, courts cannot touch VA disability benefits for any purpose—not even for determining court access—without violating § 5301. Judge Guirola's reasoning falsely assumes the court could impose financial obligations on veterans simply because they are not incarcerated, even though the statute explicitly forbids seizure or legal process without exception. This logic subverts Congress's intent to provide absolute protection to VA benefits under federal law. In truth, any consideration of protected VA benefits as a basis to deny access to federal court does amount to a constructive seizure unless the veteran affirmatively and knowingly waives that protection, which Plaintiff did not do. The law provides no authority—express or implied—for courts to seize, assign, offset, or leverage veterans' benefits without their consent. There is no statutory or procedural mechanism in § 1915(a) that authorizes the court to enforce payment or collection of fees from non-prisoners. Second, his claim that "because courts don't collect filing fees from non-prisoners, it's unlikely § 5301 is violated" shows a profound misunderstanding of the statute. Judge Guirola further attempted to justify his reasoning by stating that because § 1915 does not require courts to collect fees from non-prisoners—even when IFP is denied—it is therefore unlikely that considering VA disability as income would violate § 5301(a)(1). This logic is both incoherent and legally unsound. Whether fees are collected is irrelevant to whether the court has engaged in an unlawful legal or equitable process under § 5301. The statute protects against any form of legal process that results in coercive disclosure, conditioning, or financial manipulation of VA benefits. Judge Guirola's position ignores the distinction between an actual seizure and a constructive or conditional seizure—where a veteran must choose between court access and preservation of their federal protections. Judge Guirola undermines his own admission that § 1915(b) applies only to prisoners by continuing to rely on it to justify denying IFP status to a non-prisoner civilian under § 1915(a). Specifically, he uses language stating that "even though Section 1915(b) requires courts to collect funds from a veteran's prison account, the Fifth Circuit did not view this collection as an 'attachment, levy, or seizure' prohibited by Section 5301(a)(1)." This reasoning is misplaced. Judge Guirola's use of § 1915(b) to support his ruling after acknowledging it applies only to prisoners is inherently contradictory and confirms the circular logic and statutory conflation at the heart of his decision. This contradiction underscores the circular and selective reasoning employed to dismiss Plaintiff's claims while appearing to recognize their merit. Judge Guirola's claim that the *Hawes* court did not consider commingling when evaluating IFP eligibility is both factually and legally baseless. If commingling had not been part of the court's reasoning, *Hawes* would have had no lawful basis for allowing VA benefits to be treated as available for fees under § 1915(b). The court cannot invoke a prisoner-specific statutory mechanism—designed for incarcerated litigants—as a justification for civilian treatment without violating the basic statutory distinction between § 1915(a) and § 1915(b). His logic would allow courts to bypass § 5301 protections so long as no money is directly seized—even when the court uses benefit disclosures to deny access, compel action, or render adverse findings. This fundamentally contradicts *Philpott*, *Porter*, and *Ridgway*, where the Supreme Court emphasized that statutory protections apply before and after receipt and prohibit any legal or equitable process whatever. § 5301(a)(1) prohibits any form of legal or equitable process—regardless of

whether physical funds are seized. Conditioning access to the courts on the surrender of protected benefits constitutes a constructive seizure, an unconstitutional condition, and an unlawful legal process.

The Fifth Circuit's entire rationale turned on the loss of traceability and protected status under § 5301 due to commingling. That factual context is what allowed the court to avoid the bar on seizure or legal process. Absent commingling, the VA benefits would have remained fully protected and beyond reach of the state's collection or cost-recovery mechanism. Without a finding of commingling or traceability loss, the government (or the court system) would be required to petition the Secretary of Veterans Affairs for permission to access or divert VA benefits. There is no indication that such permission was sought or granted. Therefore, Judge Guirola's attempt to abstract *Hawes* into a blanket endorsement of treating VA benefits as income for IFP purposes—without commingling—is dishonest, legally untenable, and reliant on a fabricated understanding of the case's scope. Judge Guirola further compounded his misrepresentation by falsely stating that the Fifth Circuit did not discuss commingling when analyzing whether VA benefits could be considered income for IFP eligibility. In fact, the *Hawes* court did examine the issue of commingling when analyzing the plaintiff's claim under § 5301(a)—specifically regarding the use of VA benefits in his inmate trust account to pay a medical copay. See *Hawes*, 964 F.3d at 415–17. By claiming commingling was not part of the court's analysis in determining the scope of § 5301's protection, Judge Guirola misstates the record. His assertion creates a false premise to dismiss Plaintiff's objection and strengthen the erroneous analogy to a prisoner case. The Fifth Circuit's ruling in *Hawes v. Stephens*, 964 F.3d 412 (5th Cir. 2020), was narrowly limited to prisoner litigation under 28 U.S.C. § 1915(b). The plaintiff in that case was incarcerated, and the issue involved whether VA benefits deposited in a prison account could be considered for calculating initial partial filing fees. *Hawes* did not decide whether VA disability compensation can be considered income for the purpose of evaluating IFP eligibility under § 1915(a) for non-incarcerated, civilian litigants. The opinion did not adjudicate or interpret the protections under 38 U.S.C. § 5301 for civilian access to courts or analyze the constitutional consequences of conditioning court access on benefit disclosure. Judge Guirola's citation to *Hawes* to justify denying a civilian IFP motion represents a clear misapplication of the Fifth Circuit's holding and stretches its authority well beyond its context and legal relevance.

Judge Guirola's denial was not based on a finding of bad faith, excess assets, or misrepresentation. Instead, it was a punitive response to Plaintiff's invocation of federal law—asserting that protected VA benefits could not lawfully be considered income. This amounts to retaliation through judicial process for exercising a protected statutory right.

Furthermore, Judge Guirola misquoted Plaintiff's argument, falsely implying that Plaintiff believed *Hawes* turned solely on commingling. In fact, Plaintiff explained that *Hawes* dealt with a prisoner under § 1915(b), where custodial control and traceability loss of VA funds rendered § 5301 inapplicable. That rationale has no relevance in the civilian context of segregated VA payments.

*Hawes* is inapplicable here for three key reasons:

1. Plaintiff is not incarcerated and not subject to § 1915(b);

2. Plaintiff's VA compensation is not commingled or placed in a trust account;
3. The Fifth Circuit never extended its holding in *Hawes* to permit courts to treat VA benefits as income under § 1915(a).

Judge Guirola's conflation of §§ 1915(a) and 1915(b) enabled circular reasoning: acknowledging that Hawes applied only to prisoners, yet still applying its holding to deny civilian access. This directly contradicts both the letter and spirit of federal statutes protecting VA benefits from seizure, legal process, or conditional leverage.

The Court's reliance on Hawes therefore reflects judicial overreach, statutory misreading, and a legally unsupportable attempt to bypass Plaintiff's federally protected status under 38 U.S.C. § 5301. Such misuse of precedent, coupled with coercive application of procedural rules, renders the judgment void and violates fundamental fairness.

This misuse of precedent is not merely a legal error—it rises to the level of a due process violation. By misquoting Plaintiff's argument and relying on that distortion to justify denying IFP status, Judge Guirola deprived Plaintiff of meaningful judicial review. This violates Plaintiff's rights under the Fifth and Fourteenth Amendments, which guarantee not only access to court but also fair consideration of the arguments presented.

Additionally, the mischaracterization of Plaintiff's position violates Federal Rule of Civil Procedure 52(a)(1), which requires that a court's factual findings and legal conclusions be grounded in the actual record—not misstatements or strawman reasoning.

Such conduct may also implicate ethical violations under Canon 3(C)(1) of the Code of Conduct for United States Judges and supports Plaintiff's request for disqualification under 28 U.S.C. § 455(a). When a judge repeatedly distorts the record to reach a preordained outcome, the appearance of impartiality is destroyed.

## IV. Improper Use of SSI Definitions and Non-Binding Precedent to Justify Denial

Judge Guirola attempted to justify his denial of Plaintiff's IFP status by relying on statutory definitions used in the Supplemental Security Income (SSI) program. This approach fundamentally misunderstands and deviates from longstanding federal interpretations that sharply distinguish SSI from VA disability benefits. SSI is a means-tested public assistance program intended to provide subsistence-level support to the indigent and subject to income and asset scrutiny under Title XVI. By contrast, VA disability compensation is a non-taxable, service-connected entitlement governed by entirely different legal standards under Title 38. It is protected from any form of legal or equitable process, including court conditioning, by 38 U.S.C. § 5301(a). These benefits are not need-based and do not lose their protection simply because a veteran seeks access to justice. The conflation of SSI standards with judicial assessments of VA-protected compensation represents not only a categorical legal error but also a breach of judicial norms requiring respect for clear statutory divisions. Thus, importing SSI's income definitions into VA benefit determinations is both doctrinally incompatible and legally impermissible. Specifically, he cited 42 U.S.C. § 1382a(a), which includes veterans' disability compensation within its definition of "income" for purposes of determining eligibility for SSI benefits. This

7

reliance is misplaced and legally irrelevant to the analysis of judicial filing fees and access to court under 28 U.S.C. § 1915(a).

The SSI program is part of Title XVI of the Social Security Act and governs administrative determinations of eligibility for need-based public assistance. It was never intended to define legal standards for federal court access or to override statutory protections provided under 38 U.S.C. § 5301(a), which shields VA disability benefits from any form of attachment, levy, or seizure under legal or equitable process. SSA eligibility standards are not judicially enforceable mechanisms for determining court access and cannot be used to override statutory mandates or exemptions.

Section 5301(a) is a non-waivable, substantive federal protection designed to guarantee the inviolability of veterans' disability compensation. Unlike SSI eligibility determinations, which are administrative and voluntary, Section 5301 governs judicial authority and expressly forbids courts from considering protected benefits for purposes of collection or enforcement. Judge Guirola's attempt to equate SSI eligibility with court fee enforcement creates a categorical error.

By conflating income definitions used for needs-based social assistance with judicial doctrines concerning legal process, the Court dilutes the supremacy of Section 5301 and manufactures a legal standard that conflicts with constitutional protections. This misclassification creates an irreconcilable conflict between Congress's intent to shield VA benefits from court process and the Court's procedural imposition, effectively coercing a statutory waiver in violation of the Supremacy Clause and established precedent. Congress did not intend for courts to borrow SSI definitions to justify overriding express federal protections. In doing so, the Court ignored binding Supreme Court precedent including *Philpott v. Essex County Welfare Board*, 409 U.S. 413 (1973), *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159 (1962), and *Ridgway v. Ridgway*, 454 U.S. 46 (1981), all of which held that federal statutory exemptions apply absolutely, regardless of any administrative or practical considerations.

The Court also relied on district court decisions and inapplicable lower court rulings that never analyzed Section 5301(a) or resolved the inherent conflict between administrative income classifications and statutory benefit exemptions. This selective citation practice substitutes persuasive authority for binding precedent and fails to address the unique statutory context of VA compensation. The Court's reliance on SSI statutes and unrelated, non-binding lower court opinions served only to present the illusion of legal justification, while strategically omitting binding Supreme Court precedent that directly governs the issue. Controlling authority such as *Porter v. Aetna* (1962), *Philpott v. Essex* (1973), and *Bennett v. Arkansas* (1988) clearly establishes that VA disability compensation is protected from all forms of legal or equitable process and cannot be subject to court conditioning, seizure, or means-testing. In *Philpott*, the Supreme Court held that statutory protections apply even after funds are deposited, eliminating any justification for judicial means-testing. In *Bennett*, the Court unequivocally barred state seizure of protected benefits, even in cases involving public debts. These precedents are binding under the doctrine of stare decisis, which mandates lower courts follow Supreme Court rulings. By ignoring these decisions and instead relying on social security regulations and prisoner litigation standards, the Court acted in direct violation of constitutional principles and disregarded the principle of stare decisis—one of the foundational doctrines of American

8

jurisprudence. Stare decisis requires all lower courts to adhere to precedent clearly established by the U.S. Supreme Court. When a district court circumvents controlling holdings such as *Philpott*, *Porter*, and *Bennett*, it commits legal error that is not merely procedural but constitutional in nature. This failure renders its ruling void under Rule 60(b)(4), exposes the decision as retaliatory or outcome-driven, and supports scrutiny under judicial misconduct standards.

Plaintiff's argument is not that VA disability benefits are invisible, but rather that their protected status prohibits courts from conditioning access on the disclosure or classification of such benefits. No court may impose an economic barrier to justice that effectively coerces a waiver of statutory rights under the guise of procedural compliance.

Therefore, Judge Guirola's use of SSI and unrelated benefit classifications is both factually irrelevant and legally deficient. It undermines the text and purpose of 38 U.S.C. § 5301(a), violates Plaintiff's right to judicial access, and constitutes an impermissible constructive seizure of federally protected benefits. Even the United States Supreme Court, when evaluating IFP motions, does not compel veterans to report VA disability compensation as income. Supreme Court Rule 39 governs such motions and requires a party to submit a declaration of assets but makes no specific reference to veterans' benefits as income. The Supreme Court adjudicates IFP applications under its own procedures, in conjunction with 28 U.S.C. § 1915(a), and has never used definitions from Title XVI or SSI law to override 38 U.S.C. § 5301(a). Rule 39 of the Rules of the Supreme Court states that a party must file an affidavit with a "complete statement of all assets," but this is read in conformity with statutory exemptions, including those found in § 5301. Rule 40 further governs the disposition of such motions. Rule 40 explicitly recognizes veterans as a class entitled to enhanced procedural access, and this recognition should inform judicial treatment at all levels, not merely in the Supreme Court. This enhanced access illustrates that statutory exemptions for veterans are not only administrative but procedural, designed to ensure parity and protection. The Court's failure to account for this recognition before drawing conclusions about income disclosure requirements exposes a fundamental misalignment with the precedent and purpose Rule 40 represents. when seeking review in the Supreme Court. It provides that a veteran suing to establish reemployment rights under any provision of law exempting veterans from payment of fees or court costs may file a motion for leave to proceed without prepayment. This codified recognition further illustrates the judiciary's historical respect for veterans' statutory protections and the exceptional status Congress has assigned to their benefits. Thus, any inference that VA disability compensation must be disclosed as ordinary income for judicial filing purposes lacks support even at the highest level of federal judicial review. To impose such a requirement in a lower court contravenes the broader judicial tradition and statutory structure designed to protect veterans' benefits from coercive use or waiver.

**Even the U.S. Supreme Court recognizes veterans as deserving of special procedural leniency, waiving fees and security under Rule 40 when their statutory rights are at stake. Rule 40 allows veterans to proceed without prepayment of fees solely by declaring veteran status—without any requirement to disclose income, assets, or indigency. Plaintiff's protected VA compensation is not income and cannot be leveraged as a procedural barrier. This Court's action, by contrast, imposed a procedural burden explicitly barred by both Rule 40 and statutes such as § 5301 and § 5307, which are designed to prevent such legal interference.

Conditioning court access on the disclosure of VA benefits imposed an unconstitutional condition and violated the doctrine of stare decisis, which compels lower courts to follow binding precedent. The Supreme Court has held in *Philpott* and *Porter* that VA disability benefits may not be subjected to legal or equitable process. Ignoring these precedents not only contradicts settled law but also inflicts procedural prejudice upon the Plaintiff, a disabled veteran seeking justice. The Court's failure to follow the Supreme Court's clear mandate renders its decision void under Rule 60(b)(4) and constitutes a violation of the Supremacy Clause and the procedural parity standards respected even at the Supreme Court level.

## IV. Ignored Constitutional and Procedural Questions

The Court's failure to address the following legal and procedural questions is not a mere oversight—it constitutes a denial of the Plaintiff's rights under the Fifth and Fourteenth Amendments. These omissions implicate not only statutory interpretation but also constitutional guarantees of due process, equal protection, and the right to petition the judiciary for redress. Each question was explicitly raised by Plaintiff and entirely ignored or evaded by the Court, reflecting a failure to engage with core statutory, constitutional, and equitable issues:

1. **Whether VA compensation is income under § 1915(a):** Plaintiff consistently maintained that VA disability compensation is protected under 38 U.S.C. § 5301 and cannot be classified as income for court fee purposes. The Court failed to resolve this threshold statutory question.
2. **Whether the court's reliance on prisoner precedent was intentional:** The ruling imported standards and logic from prisoner-specific cases under § 1915(b), despite acknowledging that Plaintiff is a non-prisoner. The Court provided no explanation for this legal conflation.
3. **Whether disclosure of VA compensation constitutes waiver under § 5301:** Plaintiff raised the argument that compelled disclosure operates as a constructive waiver of statutory protections. The Court did not address this point or provide guidance on how such waivers may be lawfully executed.
4. **Whether the denial of court access on these grounds is a constructive seizure:** Conditioning access to court on disclosure of protected benefits amounts to a constructive seizure under Supreme Court precedent. The Court ignored this constitutional claim.
5. **How the Court reconciles its ruling with the Supremacy Clause and SCOTUS precedent:** Plaintiff cited binding cases such as *Philpott*, *Porter*, and *Bennett* to argue that the Court's decision violated established federal protections. The Court declined to reconcile its judgment with these precedents.
6. **Whether Plaintiff may amend the IFP form with protected disclosures:** Plaintiff requested clarification on whether and how VA compensation could be listed without waiving protections. The Court offered no procedural instruction or accommodation.
7. **Whether ADA accommodations were available and how to request them:** Plaintiff noted the lack of hearing accommodations and requested clarification on how to request ADA modifications. The Court entirely ignored this request, in violation of statutory ADA requirements.

8. **What constitutes an IFP-qualifying financial hardship:** The Court denied the IFP motion but failed to articulate what financial circumstances would satisfy the standard under § 1915(a) for a veteran whose benefits are exempt from legal process.
9. **How to appeal a denial when the court has issued no clear rationale:** The Court's reasoning was internally contradictory and failed to answer Plaintiff's core questions. Plaintiff requested clarification on how to seek review of a non-substantive denial. The Court ignored this inquiry.
10. **Why children's safety and video evidence of abuse were not acknowledged:** Plaintiff referenced child safety, trauma documentation, and video evidence of ongoing abuse—all ignored by the Court despite their relevance to the request for emergency relief.

This pattern of avoidance and non-responsiveness violates fundamental due process as established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which guarantees fair notice and a meaningful opportunity to be heard. It also raises substantial concerns under *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), affirming the imperative of judicial neutrality. The Court's failure to answer these direct constitutional questions constitutes a breach of its adjudicative duty and a denial of equal access to justice. Each of these omissions justifies reconsideration and remediation under Rule 60(b)(4), and underscores the necessity for judicial disqualification under 28 U.S.C. § 455 due to the appearance of partiality and disregard for settled law.


## V. Misinterpretation of 38 U.S.C. § 5301

Judge Guirola wrongly asserted that the court does not attach, levy, or seize VA compensation when granting or denying IFP, and therefore that consideration of VA benefits in this context does not violate § 5301(a)(1). This is a legally incorrect and misleading conclusion. The Court does not need to physically confiscate benefits to violate § 5301. The statute explicitly provides:

"Payments of benefits due or to become due under any law administered by the Secretary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." 38 U.S.C. § 5301(a)(1).

This language prohibits any legal or equitable process whatever, which includes coercive procedures that force a veteran to choose between disclosing protected benefits or being denied access to the courts. Constructive seizure occurs when a litigant is placed in a coercive procedural posture such that protected property is functionally forfeited, even absent formal execution or garnishment. See *Drye v. United States*, 528 U.S. 49, 60 n.7 (1999).

Denying IFP due to non-disclosure of VA compensation—when the statute protects against compelled disclosure and legal process—constitutes a constructive seizure. Courts cannot create indirect end-runs around § 5301 by conditioning access to the justice system on disclosures that would render a veteran's protections null. While § 1915(a) asks for a statement of assets, it does not—and cannot—override federal protections for those assets. VA benefits are categorically

excluded from seizure or disclosure by any "legal process whatever," and requiring disclosure as a condition of court access is itself such a process.

Congress has long made clear that § 5301 protections were enacted to shield veterans' compensation from any form of legal coercion that would deprive them of its intended use: sustenance and rehabilitation. The court's interpretation collapses that legislative purpose. This line of reasoning not only distorts the scope of § 5301 but ignores Supreme Court holdings that emphasize the absolute and continuing nature of the exemption, including *Philpott v. Essex Cnty. Welfare Bd.*, *Porter v. Aetna Life Ins. Co.*, and *Ridgway v. Ridgway*.

Judge Guirola's rationale would allow courts to compel disclosures, deny access, and then claim there was no violation simply because they didn't garnish an account—an illogical and unconstitutional interpretation of the law. While the court claimed it was not acting as a creditor, § 5301 forbids "any legal or equitable process whatever." Conditioning IFP on surrendering this protection is a form of coercive seizure. This reading not only distorts § 5301 but imposes an unconstitutional burden on a federally protected class. By conditioning court access on surrendering benefit protections, the court violates the Fifth and Fourteenth Amendments. It chills exercise of protected rights under color of administrative necessity—a form of constructive disenfranchisement for veterans.

Because § 5301 was enacted pursuant to Congress's Article I powers and governs disbursement of federal veterans' compensation, it preempts any contrary state or federal practice that imposes conditions inconsistent with its terms. See U.S. Const. art. VI, cl. 2 (Supremacy Clause).

As the Supreme Court made clear in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010), a judgment is void under Rule 60(b)(4) if it is entered in violation of due process. That is precisely the case here.

The phrase "any legal or equitable process whatever" is notably broader than conventional attachment doctrines. The statute's plain meaning—especially the use of "whatever"—demands an expansive reading. Courts cannot reframe compelled disclosure as something less than seizure to escape the statute's bar.

The court relied on *United States v. Radley*, a criminal case that is irrelevant to the protective scope of § 5301. *Radley* simply invoked dictionary definitions, not legislative intent or judicial construction specific to veterans' benefits. This approach ignores controlling Supreme Court precedent, including:

- *Porter v. Aetna Life Ins. Co.*, 370 U.S. 159 (1962)
- *Philpott v. Essex Cnty. Welfare Bd.*, 409 U.S. 413 (1973)
- *Ridgway v. Ridgway*, 454 U.S. 46 (1981)

These cases interpret similar exemption language and support a broad reading of § 5301 that prohibits both direct and indirect seizures. Courts have consistently excluded Social Security disability benefits from coercive processes absent clear waiver. Extending similar logic to VA

compensation—protected by even more restrictive statutory language—makes this exclusion not only reasonable but legally mandated.

Judge Guirola compounded this error by substituting these binding precedents with *Black's Law Dictionary* definitions, using them to narrow the scope of "attachment," "levy," and "seizure" without justification. This misuse of interpretive tools is a judicial maneuver that dilutes protections already established by the Supreme Court in favor of veterans.

To the extent Judge Guirola reduced the meaning of "attachment, levy, or seizure" to basic dictionary entries while ignoring the richer constitutional and statutory interpretations provided by *Porter*, *Philpott*, and *Ridgway*, he not only sidestepped precedent but falsely portrayed the statute as ambiguous when it is not. Under the doctrine of *stare decisis*, courts are obligated to apply binding Supreme Court precedent. The failure to follow these authorities not only renders the judgment void under Rule 60(b)(4), but also raises serious constitutional concerns requiring scrutiny and correction.

This misreading of § 5301 not only subverts statutory protections but lays the foundation for further constitutional and procedural violations, as discussed in the following sections.

## VI. Judicial Estoppel and Bias

Judge Guirola also refused to address Plaintiff's argument that it was improper to refer to Judges Tisdale and Bise as "Honorable" while denying Plaintiff—an honorably discharged disabled veteran—the same title. He dismissed the issue as irrelevant, stating it did not need to be addressed in the memorandum. This refusal to acknowledge Plaintiff's earned title, despite his service record, reflects both judicial bias and an appearance of impropriety. This approach deviates from longstanding federal interpretations that demand equal respect for litigants with lawful and protected statuses, such as veterans.

Plaintiff, the Hon. Adam Duvall Davis, Sr., served with distinction in the United States Navy for 19 years without a blemish on his record. His service included overseas deployments during wartime, participation in rescue missions, humanitarian operations, and direct support of presidential-level communications. Federal law, along with norms of respect and parity, require courts to recognize veterans' honorifics, particularly where such recognition bears on credibility, standing, and equal treatment. Notably, SSA eligibility standards—used as proxies for means testing—are not legally enforceable mechanisms for determining federal court access, especially where constitutional rights and protected statuses are at stake.

By selectively assigning the title "Honorable" to judicial actors who are defendants in this case—while omitting the same courtesy to a veteran litigant—Judge Guirola demonstrated partiality. This unequal treatment raises concerns of judicial estoppel and violates the principles of fairness and dignity guaranteed under the Fifth and Fourteenth Amendments. The court's failure to recognize this symbolic slight generates tangible harm: it signals to the litigant and the public that military service and pro se representation are lesser statuses undeserving of respect, thereby chilling access and fostering structural prejudice.

However, a judge's refusal to acknowledge questions of unequal treatment—especially when those questions bear on perceived judicial impartiality—only heightens the appearance of bias. This omission is particularly troubling in a case that already involves allegations of discriminatory treatment, improper judicial favoritism, and constitutional violations.

A judge is not permitted to pick and choose which federal questions to answer when those questions go to due process, equal protection, and the appearance of fairness. Stare decisis and the Canons of Judicial Conduct obligate the Court to apply consistent standards of fairness across parties—especially when judicial decorum directly affects perception of impartiality.

This inconsistency also casts doubt on the impartiality of the court and supports Plaintiff's motion to disqualify Judge Guirola under 28 U.S.C. § 455(a), which mandates recusal where the judge's impartiality might reasonably be questioned. The selective honorific usage was not merely a stylistic choice—it was a symbolic and procedural decision that contributes to the broader pattern of systemic judicial bias at issue in this case.

Moreover, when Plaintiff's own filings and formal records affirm his title, the deliberate omission by the court operates as an intentional slight—further undermining the integrity of the proceedings. Judicial neutrality demands consistency in court decorum and respect for the lawful status of all parties, especially those with protected classifications such as disabled veterans.

This double standard and refusal to engage with the question on the merits reflects a broader pattern of institutional bias and retaliation that taints the validity of the underlying rulings. The Court's actions not only disregard Plaintiff's service, but also deny him the full measure of procedural respect owed under federal law and constitutional norms.

By selectively ignoring this and other procedural questions raised by Plaintiff, Judge Guirola engaged in issue evasion, which violates his obligation under Canon 3(A)(4) of the Code of Conduct for United States Judges, requiring that judges accord every person with a legal interest the right to be heard and to have that right fully considered.

Additionally, the Court referred to Plaintiff's VA compensation as both "benefits" and "income," undermining its own reasoning. This contradiction illustrates judicial inconsistency and reinforces Plaintiff's contention that the analysis was result-driven rather than grounded in coherent legal reasoning or respect for statutory protections.

The Court corrected honorific formatting for judicial defendants but excluded Plaintiff, despite military service and pro se representation. Judge Guirola stated that addressing this disrespect was unnecessary, while simultaneously inflating Judge Tisdale's standing by calling him "Senior Municipal Court Judge," a title that neither Plaintiff nor Magistrate Judge Rath used in the record. Judge Guirola has never disclosed whether he has any personal or professional relationship with Judge Tisdale or the recused chancellors of the 8th District, creating a concern over partiality.[1]

Judge Guirola also used prejudicial and conclusory phrasing such as "Their vehicles appear to be paid off," suggesting facts not in evidence. This is contrary to:

- Federal Rule of Civil Procedure 52(a)(1), which requires factual findings to be based on evidence, not speculation;
- Canon 2(A) of the Code of Conduct for U.S. Judges, which demands the appearance of impartiality;
- Canon 3(A)(3) and 3(A)(4), which require judges to avoid bias and base decisions on law and record;
- and the Due Process Clause of the Fifth Amendment, which prohibits courts from making adjudications on unsupported inferences that impair a party's rights.

Such language serves to manipulate the record and implies adjudicated findings without evidentiary basis, contributing to an appearance of partiality and bias. These cumulative improprieties justify vacatur under Rule 60(b)(4) and compel disqualification under 28 U.S.C. § 455(a) to preserve the integrity of the proceedings.

## VII. Refusal to Address Harm to Children

The denial of Plaintiff's in forma pauperis (IFP) application functionally blocked him from pursuing federal protection for his minor children, despite presenting credible, documented evidence of abuse and neglect. Among the evidence submitted were: (1) a sworn affidavit outlining repeated abuse in the minor children's custodial environment; (2) a counselor's report documenting trauma consistent with domestic violence; and (3) multiple video recordings visually confirming the emotional and physical distress endured by the children. These materials were properly filed and are part of the record. Yet, Judge Guirola's opinion failed to acknowledge or even reference this evidence, violating both procedural expectations and ethical mandates.

**Footnote 1:**
*Plaintiff respectfully submits that any such relationships, if they exist, are reasonably discoverable and should be disclosed pursuant to Canon 3(C)(1) of the Code of Conduct for United States Judges and 28 U.S.C. § 455(b)(5)(ii), which requires disqualification when a judge or their close connections have a personal bias, interest, or relationship likely to raise reasonable questions regarding impartiality.*

This silence is particularly troubling because Rule 17(c)(2) of the Federal Rules of Civil Procedure obligates courts to protect the interests of unrepresented minors when they are parties to or affected by litigation. Moreover, under both the Child Abuse Prevention and Treatment Act (CAPTA) and equivalent state laws, judicial officers are considered mandatory reporters. Ignoring direct evidence of child abuse not only violates this duty but also reflects a judicial omission with life-altering consequences.

Federal courts have an affirmative obligation to safeguard the welfare of minors, particularly when allegations of abuse intersect with a parent's petition for redress. The Supreme Court has long recognized the liberty interest parents have in the care and custody of their children. See *Troxel v. Granville*, 530 U.S. 57 (2000). This interest is magnified when courts are presented with credible evidence of threats to that custody through abuse or neglect. The failure to even inquire, much less respond to these allegations, constitutes a constructive denial of judicial protection.

The denial of Plaintiff's IFP application, based on unlawful legal standards, effectively closed the courthouse door to a disabled veteran seeking to protect his children from abuse. This is not a mere procedural misstep—it is a deprivation of access to justice that directly harmed vulnerable minors. Such harm implicates not only Rule 60(b)(4), but also the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.

The fact that all Chancellors of the Eighth Chancery Court District recused themselves en masse due to the issues raised by Plaintiff underscores the seriousness of the underlying constitutional violations and the appearance of judicial partiality. Plaintiff respectfully requests that this Court take judicial notice of those recusals pursuant to Federal Rule of Evidence 201(b)(2) as adjudicative facts not subject to reasonable dispute and capable of accurate and ready determination. The en masse recusal constitutes probative evidence of systemic irregularity and justifies heightened scrutiny of the decisions rendered by Judge Guirola in this case.

Furthermore, in Plaintiff's original complaint, he explicitly identified this matter as related to *24CH218-cv-00558-CB*, a case that contains overlapping facts, parties, and allegations of child endangerment. The Court had full opportunity and authority to take judicial notice of that docket and its contents under Federal Rule of Evidence 201. Plaintiff's filings placed the Court on actual notice of the interconnected litigation, thereby removing any plausible excuse for judicial inaction. The decision to ignore this related proceeding, which contains corroborative evidence of abuse and procedural misconduct, represents not a mere oversight but a willful disregard for facts within the Court's reach. This is particularly troubling given the ethical obligations of impartiality and child protection embedded in federal law and judicial canons.

The Supreme Court has held that the judicial obligation to provide fair access to court and protect vulnerable litigants must be exercised with diligence and good faith. In *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), the Court explained that due process is violated when judicial actions create an appearance of bias or when a judge fails to disqualify themselves in matters involving serious concerns about partiality. The present circumstances—where Judge

Guirola dismissed credible child abuse claims and refused to acknowledge interrelated litigation—create precisely that kind of constitutional infirmity.

Furthermore, failure to consider readily accessible evidence from a related case not only violates Rule 201 but also meets the standard under Rule 60(b)(4) for vacating a void judgment. A judgment issued in disregard of required judicial notice, in violation of due process, and under conditions amounting to constructive denial of court access, lacks legitimacy and must be set aside.

Federal courts must not permit procedural formalism or judicial avoidance to obscure urgent matters of child welfare. The gravity of this omission demands immediate correction and reconsideration.

## VIII. Pattern of Misstatements and Omissions

Judge Guirola referenced Plaintiff's bankruptcy docket but refused to verify whether Plaintiff's sworn debt disclosures were consistent. Instead, he selectively cited past figures while ignoring the factual explanation offered—that the debt had increased after military discharge and foreclosure risk. By doing so, the court implied fabrication without making a factual finding, thereby undermining Plaintiff's credibility without evidence and violating Federal Rule of Civil Procedure 52(a)(1) and Canon 3(A)(4) of the Code of Conduct for United States Judges.

His statement that the bankruptcy docket was too outdated to be helpful contradicts his reliance on it to portray Plaintiff's disclosures as inconsistent, confirming selective judicial notice and record manipulation. Such selectivity in judicial notice is incompatible with Rule 201 of the Federal Rules of Evidence, which requires that judicially noticed facts be indisputably accurate and not selectively excerpted to disadvantage one party.

This tactic served to obscure the record and cast unjustified doubt on Plaintiff's good faith, while avoiding any finding that would entitle Plaintiff to IFP status. These factual and legal omissions had a material impact on Plaintiff's ability to secure IFP status and protect his constitutional claims under 42 U.S.C. § 1983, thereby denying meaningful access to the courts in violation of the Due Process Clause.

Factual errors included misidentifying a minor child as an adult, misrepresenting Plaintiff's financial disclosure, and ignoring bankruptcy law explanations. The Court cited non-binding and irrelevant cases such as Konecny v. Dep't of Justice, Martin v. Scott, Zara v. Bush, and Stupkowski v. United States while failing to engage with binding Supreme Court precedent.

In contrast, cases such as Porter v. Aetna Life Ins. Co., 370 U.S. 159, 162 (1962) have held that "the benefits of the statute are not conditioned upon the beneficiary's lack of need," and Philpott v. Essex Cnty. Welfare Bd., 409 U.S. 413, 417 (1973) clarified that protections under federal law apply "whether the funds retained the quality of moneys or were converted into another form." Likewise, Ridgway v. Ridgway, 454 U.S. 46, 56 (1981) reaffirmed that statutory protection extends to shield veterans' entitlements from any state or judicial interference.

This omission further demonstrates a pattern of judicial evasion and contributes to the void nature of the order under Rule 60(b)(4). Federal courts have an affirmative duty to liberally construe pro se pleadings and evaluate them on the merits, not discredit them through incomplete or distorted record analysis. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (pro se pleadings must be held to less stringent standards).

These cumulative misstatements and omissions did not merely reflect poor analysis—they represent an abandonment of judicial neutrality and fair process. When viewed in conjunction with the court's refusal to apply controlling Supreme Court precedent and its manipulation of judicial notice, the conduct rises to a level of constitutional violation warranting relief under Rule 60(b)(4). The judgment is therefore void for lack of due process, improper legal interpretation, and failure to uphold the supremacy of federal law.

## IX. Conflict of Interest and Request for Disqualification

Judge Guirola failed to acknowledge that Chancellor Carter Bise and all sitting judges of the Eighth Chancery Court District formally recused themselves from state proceedings involving Plaintiff due to allegations of judicial impropriety, retaliatory conduct, and constitutional violations. These recusals are not speculative—they are documented by Orders of Recusal entered on June 2, 2025 (Doc. 210), and June 5, 2025 (Doc. 211), with one entered in response to Plaintiff's motion and the other entered sua sponte by the court. These official actions underscore the credibility and seriousness of Plaintiff's claims regarding judicial bias and misconduct.

The mass recusal of an entire chancery court bench due to issues raised by Plaintiff constitutes more than just a procedural anomaly—it is compelling prima facie evidence that Plaintiff's allegations of systemic judicial abuse and retaliatory treatment are not frivolous and merit thorough judicial review. This fact alone warranted express acknowledgment and consideration in Judge Guirola's order, particularly given the statutory obligations imposed by 28 U.S.C. § 455(a), which requires disqualification where a judge's impartiality "might reasonably be questioned."

Instead, Judge Guirola omitted this critical procedural history entirely. He failed to disclose whether he has any prior or existing professional relationships with the recused Chancellors or with parties and institutions involved in the underlying litigation. This omission raises questions of transparency, especially in a case where the core allegation involves systemic retaliation and denial of federal rights by state actors.

Further compounding the issue, Plaintiff had previously named Magistrate Judge Rath in filings questioning his neutrality and role in suppressing due process arguments and access to relief. Despite this, Judge Guirola adopted Magistrate Rath's Report and Recommendation wholesale, without modification and without conducting the required de novo review under 28 U.S.C. § 636(b)(1)(C). The failure to engage in a meaningful review constitutes reversible error. See United States v. Raddatz, 447 U.S. 667, 676 (1980) (noting that de novo review is essential to preserve the litigant's rights and ensure independent judicial evaluation).

Moreover, Judge Guirola operated under the assumption that his own impartiality was beyond reproach, despite the escalating appearance of bias and procedural irregularity. By ignoring a well-documented and exceptional pattern of judicial recusals, he not only failed to safeguard the appearance of justice, but he also entrenched the very abuses that gave rise to Plaintiff's request for federal intervention.

Continued oversight by either Judge Guirola or Magistrate Judge Rath undermines public confidence in the fairness of these proceedings and violates 28 U.S.C. § 455(a). The statute does not require actual bias but rather focuses on whether a reasonable person might question the judge's impartiality. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 860 (1988). Under the present circumstances—including documented recusals, unaddressed allegations of bias, and failure to conduct de novo review—that standard is plainly met.

The Supreme Court has emphasized that justice must satisfy the appearance of justice. See Offutt v. United States, 348 U.S. 11, 14 (1954). Judge Guirola's continued involvement, despite the broader judicial recusals and conflict concerns, falls short of that fundamental constitutional imperative.

Plaintiff respectfully requests that this case be reassigned to another Article III judge to preserve the integrity of the judicial process and restore public confidence in the impartial administration of justice. Relief under Rule 60(b)(4) is appropriate here due to the void nature of the judgment, which was rendered without adherence to statutory disqualification rules and without proper de novo review.

## X. Improper Dismissal of Emergency Motion as Moot

Judge Guirola denied Plaintiff's emergency motion for protective and injunctive relief as "premature," despite the motion being factually supported by prior docket entries and declarations of harm. These supporting filings confirmed imminent danger and the legal basis for urgent relief—facts which the Court had direct access to but failed to consider. citing unpaid filing and administrative fees. This ruling violates the principle that emergency relief—particularly when invoking irreparable harm, civil rights under 42 U.S.C. §§ 1983 and 1985, and physical safety—must be evaluated on the merits regardless of fee status when urgent circumstances exist. See Carson v. American Brands, Inc., 450 U.S. 79, 84 (1981) (irreparable consequences justify immediate review).

Federal courts are authorized under Rule 65 to grant temporary and emergency injunctions, and Rule 60 permits equitable relief even in extraordinary procedural postures. Denying such relief due to unpaid fees places form over substance and blocks redress for potentially life-threatening harm, in violation of fundamental due process. See Elrod v. Burns, 427 U.S. 347, 373 (1976) (loss of constitutional rights constitutes irreparable injury).

Judge Guirola's reasoning conflicts with Local Rule 7(b)(4), which allows motions without a memorandum of authorities when involving necessitous or urgent matters. Plaintiff's filing clearly raised issues of ongoing threats tied to known violations of a Domestic Abuse Protection Order (DAPO), including requests for temporary injunction and protective orders based on safety

threats and civil rights deprivations. See ECF Nos. [2], [5], and [8] (Plaintiff's motions for IFP, reconsideration, and emergency relief).

By treating the emergency motion as moot simply because the Report and Recommendation had already been adopted, Judge Guirola failed to independently assess the merits of a constitutionally grounded request. It gives the appearance that he did not conduct a meaningful de novo review, possibly due to a collegial relationship with Magistrate Judge Rath, whose recommendations were at issue. This raises legitimate concerns that institutional bias or reluctance to correct a colleague influenced the outcome, particularly in light of 28 U.S.C. § 455(a), which mandates that a federal judge disqualify himself in any proceeding in which his impartiality might reasonably be questioned. The failure to confront or acknowledge possible conflicts of interest—especially in a case where related judicial officers have already recused themselves—undermines public confidence in judicial neutrality and raises the specter of unlawful favoritism in violation of due process.

The emergency motion raised distinct legal issues, including irreparable harm, due process violations, and retaliation by state actors, which were not addressed in the financial eligibility analysis. See Objection to R&R, ECF No. [7] at 1–5.

A court cannot avoid ruling on a properly filed constitutional emergency motion solely on procedural grounds, especially when the record includes factual allegations of danger, judicial misconduct, and systemic bias. Such a denial disregards Rule 65's protective framework, bypasses equitable discretion under Rule 60, and suppresses valid constitutional claims. See *Boddie v. Connecticut*, 401 U.S. 371, 374 (1971) (denial of access to courts solely for inability to pay violates due process).

The denial of IFP status in this context functionally forces a disabled veteran into an unconstitutional condition: either waive protection under 38 U.S.C. § 5301 by disclosing exempt VA benefits or be denied court access. This violates the unconstitutional conditions doctrine, which prohibits conditioning the exercise of one constitutional or statutory right on the surrender of another. See *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013). The logic employed by the court here directly conflicts with U.S. Supreme Court Rule 40, which permits veterans to proceed without fee based solely on veteran status—a rule that does not require any income or indigency disclosures. This cross-reference illustrates the inconsistency of requiring such disclosures at the district court level when the highest court in the country waives them for veterans categorically.

The seventy-day delay between Plaintiff's emergency filings and the court's final order only compounded the harm, exposing Plaintiff and his children to continued risk while denying meaningful review. Prolonged judicial inaction in the face of constitutional emergency not only increases exposure to irreparable harm, but further evidences the systemic failure to take Plaintiff's rights seriously. This delay raises deeper questions: how is Plaintiff expected to remain safe during this period? What lawful actions can he take to protect himself and his family without risking further retaliation—especially when federal protections under 38 U.S.C. § 5301 are being leveraged against him as a barrier to court access? This question lies at the heart of Plaintiff's Rule 60(b)(4) motion, as it exemplifies the unconstitutional condition imposed:

surrender legally protected veterans' benefits or forfeit judicial recourse. Such a dilemma triggers heightened constitutional scrutiny and reinforces the necessity of vacating a judgment that rests on coercive and unlawful prerequisites. from the same local court actors named in this lawsuit? And fundamentally, why is such hardship and obstruction being imposed on a disabled military veteran with no history of domestic violence and limited court involvement—facts corroborated by the very children who lived with him and witnessed the events firsthand?

## XI. Conclusion

The cumulative omissions, factual distortions, and judicial evasions in this case have denied Plaintiff due process and equal protection under the law, in direct violation of the Fifth and Fourteenth Amendments to the United States Constitution. The Court's failure to adhere to the binding precedent of *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Boddie v. Connecticut*, 401 U.S. 371 (1971), demonstrates a disregard for the constitutional mandate that courts must not condition access to justice on a litigant's financial disclosure where fundamental rights are at stake. Under the doctrine of stare decisis, the lower courts are bound by these Supreme Court holdings, and failure to follow them renders the judgment void for purposes of Rule 60(b)(4). The district court misapplied prisoner precedent, ignored Supreme Court authority, distorted statutory exemptions, and failed to conduct meaningful review of Plaintiff's emergency and constitutional claims.

Judge Guirola's final order threatens dismissal without prejudice if the full filing and administrative fees are not paid within thirty days. This threat confirms that the Court found merit in Plaintiff's underlying claims but chose to obstruct review through procedural mechanisms that directly conflict with the VA benefit protections of 38 U.S.C. § 5301.

This pattern of constructive seizure, judicial misstatement, and refusal to address constitutional questions cannot be left unremedied. Plaintiff respectfully requests that the record be corrected, that access to justice be restored, and that judicial oversight be reassigned to preserve the integrity of the federal judiciary and protect vulnerable litigants from procedural abuse and unconstitutional conditions.

## XII. Relief Requested

Plaintiff respectfully requests that this Court grant the following relief:

1. Recognize Federal Oversight Request: Acknowledge that Plaintiff has formally requested federal investigation and oversight into systemic misconduct and retaliatory abuse by state actors, including judicial officers, under 42 U.S.C. §§ 1983 and 1985, and the Supremacy Clause of the U.S. Constitution.
2. Federal Intervention and Protection: Reaffirm Plaintiff's right to immediate federal intervention and protection in light of ongoing harm, civil rights deprivations, and the unconstitutional use of VA-protected benefits as a barrier to court access. Grant preliminary and permanent relief to suppress unlawful state actions that conflict with federal law.

3. Referral to DOJ Civil Rights Division: If this Court declines to vacate its prior order or disqualify implicated judicial officers, Plaintiff respectfully requests that the matter be referred to the U.S. Department of Justice Civil Rights Division and/or another appropriate federal authority for oversight and investigation. If the Court is not authorized to make such referral, Plaintiff requests that it provide procedural guidance and instruction on how Plaintiff may initiate that process independently.

4. Judicial Misconduct Notification: Formally take judicial notice of alleged misconduct under Canon 3(A)(4) of the Code of Conduct for United States Judges, based on the evasion of constitutional questions, mischaracterization of record evidence, and failure to address Plaintiff's equal protection and disability rights claims.

5. Clarification of Financial Hardship and Authority Under § 1915(a): Require the Court to define what constitutes qualifying financial hardship under 28 U.S.C. § 1915(a), and clarify what statutory authority permits VA disability compensation to be treated as disqualifying income or assets given the explicit protection of 38 U.S.C. § 5301.

6. ADA Compliance and Show Cause Order: Direct the Court to show cause why it failed to offer or acknowledge ADA accommodations for Plaintiff's documented hearing disability, in violation of federal law and constitutional due process.

7. Non-Waiver of § 5301 Protections: Declare that Plaintiff did not, and does not, waive his rights under 38 U.S.C. § 5301, and that any judicial findings implying such a waiver must be withdrawn unless supported by express and knowing consent on the record.

8. Vacatur of Prior Order: Vacate the order denying IFP status under Rule 60(b)(4) due to its constitutional and statutory defects. Alternatively, grant relief under Rule 60(b)(6) for extraordinary circumstances and to prevent manifest injustice.

9. Judicial Reassignment and Transfer of Venue: Reassign this matter to a different Article III judge outside of the Southern District of Mississippi to preserve public confidence in the neutrality and integrity of the proceedings, pursuant to 28 U.S.C. § 455(a). Given the extensive involvement of local judicial officers—many of whom have already recused themselves—and the pervasive interconnection among court actors named in this and related cases, Plaintiff cannot reasonably expect a fair hearing within this district. Further, the federal judges in the Southern District of Mississippi have spent their careers within the same legal and professional community as the state actors named in this action, raising further concern over impartiality. Plaintiff respectfully requests transfer of this case to a neighboring federal district, such as the Eastern District of Louisiana, to ensure impartial adjudication and compliance with due process protections. See *In re Murchison*, 349 U.S. 133 (1955); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009).

10. Amendment of IFP Application: Permit Plaintiff to amend his IFP application with specific instruction regarding permissible disclosures and limitations under 38 U.S.C. § 5301, ensuring protection of exempt veterans' benefits.

11. Emergency Relief and DAPO Enforcement: Reinstate Plaintiff's right to request and obtain emergency relief, including enforcement of the Domestic Abuse Protection Order (DAPO), and direct the Court to evaluate such motions on the merits, irrespective of IFP status, as required by Rule 65 and principles of fundamental fairness.

Plaintiff seeks this relief to correct a void judgment, restore constitutional access to court, and prevent further harm from continuing judicial errors and systemic abuse.

## XIII. Certificate of Objection Compliance

Plaintiff certifies that this Motion is timely filed pursuant to Federal Rules of Civil Procedure 60(b)(4) and 60(b)(6) and is supported by newly raised constitutional arguments and factual clarifications. To the extent this filing also serves to preserve objection to prior judicial determinations, Plaintiff respectfully requests de novo review by an impartial Article III judge pursuant to 28 U.S.C. § 636(b)(1) and FRCP 72(b).

Plaintiff expressly preserves each constitutional and statutory objection contained herein for purposes of appeal and further judicial review. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

## XIV. Local Rule 7(b)(4) Statement

Pursuant to Local Rule 7(b)(4) of the U.S. District Court for the Southern District of Mississippi, no separate memorandum of authorities is submitted with this Motion, as it concerns necessitous and urgent matters involving irreparable harm, denial of access to court, and continuing constitutional violations. Plaintiff's filings provide detailed factual and legal authority sufficient to support the relief requested.

Respectfully submitted on July 7th, 2025,

/s/ Hon. Adam Duvall Davis, Sr. U.S. Navy Veteran,

Plaintiff Pro Se

870 Ellington Drive Biloxi, MS 39532