

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HON. ADAM DUVALL DAVIS, SR., U.S. NAVY VETERAN          PLAINTIFF

v.                                      Civil No. 1:25-cv-00039-LG-BWR

HON. WILLIAM TISDALE, *in his individual and official capacities;*
CITY OF BILOXI, MISSISSIPPI;
HON. CARTER BISE, *in his individual and official capacities;*
and OTHER UNNAMED DEFENDANTS                              DEFENDANTS

## PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER RULE 54(b), MOTION FOR PROTECTIVE ORDER, AND MOTION TO CLARIFY/MODIFY ORDER

**INTRODUCTION AND SUMMARY OF RELIEF REQUESTED**
Plaintiff, Hon. Adam Duvall Davis, Sr., U.S. Navy (Vet.), respectfully petitions this Honorable Court for reconsideration, modification, and protective relief under Rule 54(b) of the Federal Rules of Civil Procedure. Plaintiff seeks correction of legal errors and contradictions contained in the prior order denying in forma pauperis status, enforcement of federal statutory protections under 38 U.S.C. §5301, and issuance of a protective order ensuring sealed handling of VA benefits. Plaintiff further requests explicit clarification to prevent appellate ambiguity and ensure compliance with the Supremacy Clause, ADA Title II, and due process requirements.

COMES NOW Plaintiff, Hon. Adam Duvall Davis, Sr., U.S. Navy (Vet.), appearing pro se, and respectfully moves this Honorable Court for:

1. Reconsideration under Federal Rule of Civil Procedure 54(b) of its prior Order denying in forma pauperis status;
2. Issuance of a protective order to safeguard statutorily protected VA benefits; and
3. Clarification and modification of that Order to ensure compliance with 38 U.S.C. § 5301, the Supremacy Clause, and the Federal Judicial Center Benchbook for U.S. District Court Judges (6th ed. 2013), including:
   - Section 3.02 – In Forma Pauperis (IFP) Applications, which directs courts to evaluate financial declarations carefully but fairly, ensure that procedures do not obstruct access to justice for indigent litigants, and exercise discretion to grant IFP status where denial would cause undue hardship;
   - Section 7.01 – Pro Se Litigants, which emphasizes the importance of providing clarity and avoiding procedural traps for those without counsel, and instructs courts to provide reasonable guidance when pro se filings raise complex issues;

- - o   Section 1.01 and Canon 2(A) (Judicial Conduct), which affirm the judiciary's responsibility to uphold public confidence by avoiding both actual bias and the appearance of bias, including inconsistent treatment of litigants and unfair procedural burdens.

# I. BASIS FOR RECONSIDERATION

Anticipated Counterarguments: Judicial Discretion and Harmless Error

Opposing parties or the Court may argue that the denial of Plaintiff's requests falls within permissible judicial discretion or constitutes harmless error. These assertions fail for two reasons:

First, judicial discretion does not extend to actions that contravene explicit statutory prohibitions such as 38 U.S.C. § 5301, which preempts state and federal interference with VA benefits.

Second, harmless error cannot excuse procedural violations that deprive a litigant of due process or access to the courts. Compelling disclosure of federally protected benefits as a condition of access exceeds discretionary authority and results in tangible harm by coercing waiver of statutory protections. Consequently, reconsideration is warranted to correct these non-harmless, legally impermissible errors.

This Court proceeds under Rule 54(b)'s more lenient standard for reconsideration of interlocutory orders. Plaintiff respectfully submits that reconsideration is warranted because the prior ruling:

1. Overlooked controlling federal statutes and Supreme Court precedent protecting VA disability benefits from compelled disclosure; and
2. Failed to apply the procedural safeguards required by the Benchbook and ADA Title II.

A. Legal Error Regarding VA-Protected Benefits

The Court's prior order expressly stated: "This Court has not classified Plaintiff's VA compensation as income for taxation, Social Security or garnishment purposes." (Doc. #15, Order dated Oct. 30, 2025, at p.2, ¶2.) Yet in the same order, the Court required disclosure of the VA benefit amount to determine Plaintiff's financial capacity under §1915. (Doc. #15, Order dated Oct. 30, 2025, at p.2, ¶3.)

This creates a direct contradiction: while disclaiming that VA benefits are treated as income, the Court functionally used them as income to measure indigency, thereby violating §5301's protection from any form of legal process. This internal inconsistency underscores that compelled disclosure, even for IFP evaluation, constitutes functional classification of VA benefits as income, contrary to congressional intent and the holdings in *Porter*, *Philpott*, and *Ridgway*.

The Order conditions Plaintiff's access to court on public disclosure of his VA disability compensation amount. (Doc. #15, Order dated Oct. 30, 2025, at p.2, ¶3.) Under 38 U.S.C. § 5301(a)(1), such benefits "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever." Conditioning court access on disclosure constitutes a constructive seizure and coercive legal process in violation of *Porter v. Aetna Cas. & Sur. Co.*, 370 U.S. 159 (1962), *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413 (1973), and *Ridgway v. Ridgway*, 454 U.S. 46 (1981). Each prohibits indirect deprivation of federally protected benefits.

B. Due Process and the Requirement of Reasoned Decision-Making

The Court's prior order not only failed to resolve the statutory question under § 5301, but also omitted analysis of the constitutional and procedural issues raised by Plaintiff. This silence violates foundational due process principles.

Under *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), due process requires meaningful notice and an opportunity to be heard when governmental action threatens a protected interest. Moreover, in *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), the Supreme Court held that agencies—and by extension, courts—must articulate the basis for their decisions in a way that permits effective judicial review.

In this case, Plaintiff raised multiple constitutional and statutory objections, including:

- Whether compelled disclosure of VA benefits violates 38 U.S.C. § 5301;
- Whether the denial of in forma pauperis status based on refusal to waive protections constitutes constructive seizure;
- Whether ADA Title II obligations were met;
- Whether equal protection and access to justice were denied.

The Court dismissed Plaintiff's claims as "meritless" (Doc. #15, p.3, ¶2), but did not explain why each individual legal question failed, nor cite controlling authority to refute Plaintiff's positions. This renders the decision effectively unreviewable and arbitrary in violation of *Chenery* and Rule 52(a). Reconsideration is warranted to cure these defects, ensure an adequate appellate record, and protect Plaintiff's rights under federal law.

The Court also misstated the facts in claiming Plaintiff "refused to list his VA disability compensation" in the IFP application. (Doc. #15, p.3, ¶2.) Plaintiff clearly acknowledged VA benefits as his sole source of income, while asserting § 5301 protections and offering to submit the amount under seal or protective order. Nowhere in the record—neither in Doc. #6, Doc. #8, nor Doc. #15—did the Court advise how such disclosure could be made without waiving statutory protections. This omission denied Plaintiff a clear procedural option and forced him into an unconstitutional dilemma.

By avoiding clear instruction while conditioning access on disclosure, the Court positioned itself to appear blameless for any resulting waiver—shifting the burden to Plaintiff while evading its own duty to provide constitutionally adequate process.

This conduct contravenes long-standing precedent requiring courts to provide meaningful guidance where procedural compliance implicates access to fundamental rights. In *Armstrong v. Manzo*, 380 U.S. 545 (1965), and *Gray Panthers v. Schweiker*, 652 F.2d 146 (D.C. Cir. 1980), courts emphasized that vague or unfair procedures violate due process.

C. Internal Contradictions and Inconsistencies Warranting Reconsideration

The Court's October 30, 2025 Order (Doc. #15) contains multiple internal contradictions that collectively undermine its legal and factual reasoning. These inconsistencies demonstrate arbitrariness, violation of statutory protections, and failure to adhere to judicial standards under the Benchbook, Rule 52(a), and applicable ethical canons. For example:

| No. | Contradiction | Governing Authority Breached | Order Citation |
|---|---|---|---|
| 1 | "This Court has not attempted to attach, levy, or seize Plaintiff's VA benefits…" | Statutory / Supremacy Clause – 38 U.S.C. § 5301; *Porter* | Doc. #15, p.2, ¶2 |
|   | vs. compelling disclosure to assess financial eligibility | | Doc. #15, p.2, ¶3 |
| 2 | "This Court has not classified Plaintiff's VA compensation as income…" | Legal reasoning – inconsistent application of §5301 | Doc. #15, p.2, ¶2 |
|   | vs. functionally using it to measure indigency | | Doc. #15, p.2, ¶3 |
| 3 | "Plaintiff's claims are meritless." without explanation | Due process / reasoned basis – *Chenery*, Rule 52(a) | Doc. #15, p.3, ¶2 |
| 4 | Acknowledgment of Rule 54(b)'s lenient standard | Procedural fairness – FRCP 54(b) | Doc. #15, p.3, ¶1 |
|   | vs. rigid denial without opportunity to amend or seal | | Doc. #15, generally |
| 5 | Benchbook cited as discretionary | Judicial oath / ethical duty – Canon 2(A) | Benchbook §1(B), §3.02, §7.01 |
|   | vs. ignoring its access and accommodation guidance | | See also ADA Title II |
| 6 | Ignoring Plaintiff's ADA requests | Disability access – *Lane v. Tennessee* | Doc. #15, no mention |
| 7 | Unequal application of honorifics ("Mr." vs. "Hon.") | Appearance of bias – Canon 2(A) | Doc. #15 and docket styling |

These contradictions rise beyond mere stylistic tension—they constitute legal error, manifest injustice, and deviation from governing law. The Court cannot have it both ways in its favor—disavowing the classification of VA benefits as income, yet using them as the basis for denying access to justice. Reconsideration under Rule 54(b) is therefore not only appropriate but necessary to restore consistency, judicial integrity, and Plaintiff's rights.

II. Constructive Seizure, Legal Process Doctrine, and Improper Conditioning of Access to Justice

A. Constructive Seizure and Legal Process Doctrine

Even absent explicit garnishment or levy, courts may not use procedural mechanisms to indirectly compel disclosure of VA-protected benefits in a manner that chills access to the judicial process. This doctrine of constructive seizure is firmly grounded in the Supreme Court's holdings in *Porter*, *Philpott*, and *Ridgway*, which reject any form of legal process that would reduce, interfere with, or conditionally attach to federal benefit streams.

In *Philpott*, the Court held that "[a]ll benefit payments... are exempt from legal process." 409 U.S. at 415. Similarly, *Porter* emphasized that even benefits temporarily held in a bank account retain their protection. *Ridgway* rejected a state court's attempt to redirect protected life insurance proceeds by judicial decree, affirming that "no court may order a diversion inconsistent with federal statute." 454 U.S. at 60.

Here, the Court did not physically garnish Plaintiff's VA benefits but instead imposed a procedural condition: disclose the exact amount or be denied access to judicial review. (Doc. #15, p.2–3.) This coercive posture fits squarely within the doctrine of constructive seizure: compelling a protected party to relinquish exemption rights as a condition for participating in a process otherwise guaranteed by statute.

The District Court further claimed it could not locate a case with Plaintiff's precise definition of constructive seizure. (Doc. #15, p.3, ¶1.) But the functional principle is well-established in the cases cited above. It is not the label but the substantive effect of judicial conduct that governs. In *Drye v. United States*, the Supreme Court reaffirmed that federal tax liens attach based not on formal title but on dominion and control, illustrating the flexible lens through which constructive acts are reviewed. 528 U.S. 49, 60 n.7 (1999).

Furthermore, the Court's reliance on *Hawes v. Stephens*, 964 F.3d 412, 417 (5th Cir. 2020), is misplaced and selectively quoted. While *Hawes* states that 'Section 5301(a) does protect federal benefit payments from attachment, levy, or seizure,' it immediately narrows its scope by suggesting nothing in the statute exempts recipients from statutory filing fees. However, *Hawes* does not address constructive seizure or coerced waiver by procedural coercion. Nor does it override the broad protections codified in 38 U.S.C. § 5301(a)(1), which explicitly provide that such benefits "shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever." The statutory text is unqualified, and the Court's omission of the full language misrepresents the scope of protection at issue.

That the Court omitted the final clause — "by or under any legal or equitable process whatever" — is particularly troubling. This language is Congress's express signal that no mechanism of judicial or equitable coercion—not even administrative or procedural steps like IFP screening—may intrude on the statutory immunity. It is not plausible that such an omission was accidental; rather, the omission allowed the Court to sidestep the full scope of protection and assert a narrower view favorable to its position. This selective quoting, while rejecting Plaintiff's full citation to §5301, reinforces the appearance of bias and warrants correction.

Moreover, the Court asserted: "This Court has not attempted to attach, levy, or seize Plaintiff's VA benefits, nor has it classified Plaintiff's VA compensation as 'income for taxation, Social Security or garnishment purposes.' ... The Court has merely held that Plaintiff must state the amount of those benefits so that it can consider whether Plaintiff should be permitted to proceed without paying the filing fee." (Doc. #15, p.3, ¶2.) This formulation reflects a fundamental misunderstanding of constructive seizure. A demand for benefit disclosure as a precondition to judicial access constitutes a coercive legal process that undermines the statutory guarantee of immunity under 38 U.S.C. § 5301. The constitutional vice is not in the classification label but in the functional effect: compelling a choice between waiver of federal protections and access to court.

The Court also mischaracterized Plaintiff's reliance on *Drye v. United States*, 528 U.S. 49, 60 n.7 (1999), dismissing it for not explicitly defining constructive seizure. However, the functional logic in *Drye*—that dominion and control, not formal title, dictate legal effect—reinforces Plaintiff's position. Courts routinely interpret doctrines by effect, not label. Just as *Drye* embraced substance-over-form in tax lien doctrine, this Court should recognize that compelling waiver of §5301 protections under threat of dismissal constitutes a form of constructive seizure, regardless of whether that phrase appears in the precedent's heading.

Thus, the absence of the phrase "constructive seizure" in case captions does not excuse the Court's failure to evaluate the *substance* of the claim under the governing legal standards.

*This Court's failure to acknowledge the omitted statutory clause, coupled with its effort to distinguish Plaintiff's authorities based on linguistic formalism, reflects an outcome-driven reading that flouts both congressional intent and controlling precedent. Courts may not judicially amputate qualifying language from federal protections to facilitate procedural denials, nor may they shift the burden to pro se litigants to supply doctrinal labels rather than enforce functional rights.*

B. Due Process and the Requirement of Reasoned Decision-Making

Federal courts are obligated to articulate clear reasons for denying access to judicial remedies, particularly where fundamental rights and federal statutory protections are implicated. Under *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), a court must provide the reasoning upon which its decisions are based so that they may be understood and reviewed. Likewise, Rule 52(a) of the Federal Rules of Civil Procedure requires findings of fact and conclusions of law when factual determinations or legal inferences are essential to a ruling.

In its October 30, 2025 Order, the Court summarily dismissed Plaintiff's allegations as "legally frivolous" and "fail[ing] to state a claim upon which relief may be granted," but did so without discussing the core constitutional arguments raised, including:

- Whether compelled disclosure of VA benefits constitutes legal process within the meaning of §5301;
- Whether denial of IFP for refusal to disclose violates the Supremacy Clause;
- Whether ADA Title II access requirements were satisfied;

- Whether due process was violated by omitting the reasoning behind denial.

By failing to address these issues, the Order violates both *Chenery* and Rule 52(a), depriving Plaintiff of meaningful review and rendering the decision arbitrary. This deficiency justifies reconsideration and clarification.

Additionally, the Court's assertion that "Plaintiff refused to list his VA disability compensation in his Application to Proceed In Forma Pauperis" (Doc. #15, p.3, ¶2) is factually inaccurate and materially misleading. Plaintiff did not refuse to disclose the existence of VA benefits; he explicitly identified them as the sole source of support but invoked the statutory protection of 38 U.S.C. § 5301 to prevent public disclosure of the benefit amount. Plaintiff also offered to disclose the amount under seal or with a protective order. Misrepresenting this lawful assertion of federal rights as a "refusal" distorts the record and further supports reconsideration under Rule 54(b) to correct a clear factual error.

Finally, the Court provided no procedural guidance or mechanism for Plaintiff to comply with the Court's disclosure expectation without forfeiting the protections of § 5301. Nowhere in the record—whether in Doc. #6, Doc. #8, or Doc. #15—did the Court explain how Plaintiff could disclose the amount of his VA compensation under seal, via in-camera review, or with a protective condition. Instead, Plaintiff was left to decipher the Court's vague and ambiguous wording without direction. This omission created a coercive posture in which a pro se litigant was forced to choose between complying with unclear instructions and risking statutory waiver, or preserving rights and facing dismissal. That is fundamentally incompatible with due process and access to justice.

By avoiding clear instruction while conditioning access on disclosure, the Court positioned itself to appear blameless for any resulting waiver—shifting the burden to Plaintiff while evading its own duty to provide constitutionally adequate process.

This conduct also contravenes long-standing precedent requiring courts to provide meaningful guidance where procedural compliance implicates access to fundamental rights. In *Goldberg v. Kelly*, 397 U.S. 254 (1970), and *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court held that procedural due process demands clear notice and a meaningful opportunity to be heard. In *Armstrong v. Manzo*, 380 U.S. 545 (1965), the Court emphasized that failing to advise a party of their procedural rights invalidates the process itself. Likewise, in *Gray Panthers v. Schweiker*, 652 F.2d 146 (D.C. Cir. 1980), the court held that legal procedures must not be structured in a way that traps the unwary or shifts the burden unfairly onto individuals lacking full legal sophistication. These authorities further confirm that the Court's omission here constitutes not just oversight, but structural unfairness requiring correction.

The Court's failure to meaningfully distinguish controlling Supreme Court precedent—*Porter*, *Philpott*, and *Ridgway*—while selectively quoting from *Hawes* and omitting the phrase "by or under any legal or equitable process whatever" from §5301(a)(1), reflects a judicial inconsistency that further undermines the reliability of the order. These omissions support Plaintiff's request for reconsideration and protective clarification to preserve federally protected benefits from constructive legal seizure through compelled disclosure, which plainly falls within

the scope of "legal or equitable process" under the statute—such as eligibility determinations under the in forma pauperis statute, 28 U.S.C. §1915.

III. APPEARANCE OF PARTIALITY AND MOTION TO RECUSE

A. Applicable Legal Standard

Section 455(a) mandates that any federal judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. The standard is not subjective but objective, requiring recusal when a reasonable person, fully informed of all relevant facts, would question the judge's impartiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988); *United States v. Brocato*, 4 F.4th 296, 301 (5th Cir. 2021).

Section 455(b) further requires disqualification where the judge has personal bias, prior involvement, or knowledge of disputed facts.

Courts have emphasized that this objective standard is not satisfied by the views of a "hypersensitive, cynical, and suspicious person" but rather by the perspective of a "well-informed, thoughtful and objective observer." See *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995). This refinement is frequently misunderstood or misapplied. Importantly, *Phillips v. Joint Legislative Comm.*, 637 F.2d 1014 (5th Cir. 1981), does not contain the language "hypersensitive, cynical, and suspicious," which was incorrectly attributed to that case in the Court's recusal denial. This misquotation reflects a broader pattern of rhetorical mischaracterization that undermines judicial neutrality.

Furthermore, the irony is not lost on Plaintiff. If the standard excludes those who are hypersensitive, cynical, and suspicious, the Court itself arguably exhibits all three traits. The Court has repeatedly claimed to understand Plaintiff's emotional state—describing Plaintiff's pleadings as "dislike" or "taking issue" without any factual basis or direct observation—suggesting speculative certainty about Plaintiff's feelings derived solely from black-and-white text. This display of judicial omniscience is not neutral objectivity. The Court is also profoundly suspicious of Plaintiff's filings, constantly characterizing good-faith efforts as tactical or manipulative. And finally, in its unwavering effort to avoid recognizing error or accountability, the Court attempts to play both sides of the law to reach its desired outcome, invoking § 5301's protections when convenient, while simultaneously compelling the very disclosures it protects.

B. Facts Warranting Disqualification

Plaintiff asserts the following facts give rise to the appearance of bias, prejudice, or structural unfairness:

1. Judicial Mischaracterization of Record: The Court falsely stated Plaintiff "refused to list his VA compensation" (Doc. #15, p.3, ¶2), despite Plaintiff's repeated offers to disclose the amount under seal or by protective order. This error materially misrepresents Plaintiff's legal position and efforts at compliance.

2. **Disregard of Controlling Law:** The Court has avoided direct engagement with binding precedent (*Porter, Philpott, Ridgway*), while relying on inapplicable cases like *Hawes*, omitting crucial statutory phrases like "by or under any legal or equitable process whatever" from §5301(a)(1). This creates a perception of selective legal analysis.
3. **Inconsistent Honorific Use:** Plaintiff, a U.S. Navy veteran and minister proceeding pro se, is stripped of his honorific throughout the Court's orders while opposing party Judge Tisdale is addressed with formal judicial respect. This inconsistent treatment undermines perceptions of impartiality. See Canon 2(A) of the Code of Conduct for United States Judges.
4. **Dismissal of Procedural Rights:** The Court denied ADA accommodations, IFP status, and failed to instruct Plaintiff on how to invoke protective mechanisms for statutorily shielded benefits, then blamed Plaintiff for lack of disclosure. This creates a procedural trap that a reasonable observer could view as deliberately constructed.
5. **Presumptions about Financial Status:** The Court opined that Plaintiff's vehicles "appear to be paid off" without evidentiary basis or hearing, invoking an assumption of wealth that contradicts the financial affidavit and penalizes Plaintiff for attempting to comply.
6. **Improper Framing of Recusal Arguments:** In its denial of Plaintiff's initial recusal motion, the Court mischaracterized his concerns as mere disagreement with rulings. The Court failed to acknowledge the constitutional and statutory dimensions of Plaintiff's objections, such as the refusal to address constitutional questions, the differential treatment of parties, and the omission of VA benefit safeguards. This minimizes the legal significance of Plaintiff's concerns and deflects scrutiny from the appearance of bias.
7. **Systematic Evasion of Constitutional Questions:** As documented in Plaintiff's prior filings (see Doc. #13, Motion to Vacate, and Doc. #8, Response in Opposition), the Court repeatedly refused to address constitutional arguments raised under the Supremacy Clause, ADA Title II, and the Due Process Clause. Instead of engaging with these substantive points, the Court avoided them entirely, which renders meaningful appellate review impossible. This omission violates *Mathews v. Eldridge*, 424 U.S. 319 (1976), and *Goldberg v. Kelly*, 397 U.S. 254 (1970), which require a fair hearing and responsive adjudication when fundamental rights are at stake.
8. **Failure to Address Inquiries Regarding Judge Tisdale's Status and Relationship to the Court:** Plaintiff specifically questioned how the Court knew that Defendant Tisdale held the title "Senior Municipal Court Judge," whether such designation was part of the record, and whether there had been any off-record communications between the Court and Judge Tisdale. (See Doc. #13 at 6–7.) The Court failed to respond to these inquiries, thereby leaving unanswered the basis for its judicial determinations and raising concerns about undisclosed familiarity, coordination, or pre-judgment. This further compounds the appearance of bias and undermines the procedural neutrality required by 28 U.S.C. § 455(a). The Court also refused to address Plaintiff's constitutional objections to Judge Tisdale's conduct, which were raised in multiple filings and ignored in all rulings to date.
9. **Disparate Evidentiary Standards Favoring the Defendant:** The Court imposed heightened scrutiny on Plaintiff's sworn statements and filings while accepting Defendant Tisdale's title of "Senior Municipal Court Judge" without any supporting record evidence or appointment document. This disparate treatment reinforces the appearance that the Court is not applying an even-handed standard.

10. Failure to Acknowledge or Apply Benchbook Standards: Despite Plaintiff citing Sections 1.01, 3.02, and 7.01 of the Federal Judicial Center Benchbook for U.S. District Court Judges (6th ed. 2013), the Court never addressed or applied these guidelines. These sections direct federal judges to (1) treat pro se litigants fairly, (2) provide clarity in complex procedural settings, and (3) handle IFP matters in a way that avoids obstructing access to justice. The Court's disregard of these procedural norms exacerbates the perception of bias.
11. No Mechanism Provided for Compliant Disclosure: The Court required Plaintiff to disclose VA compensation data but failed to inform him how to do so in a manner consistent with 38 U.S.C. § 5301. No mention was made of sealed submissions, in-camera review, or protective orders—despite Plaintiff's repeated requests. Leaving Plaintiff to "guess" how to proceed without waiving rights constructs an administrative minefield designed for failure, which violates procedural fairness and fosters distrust in judicial impartiality.
12. Use of Dismissive and Subjective Language: In characterizing Plaintiff's concerns as mere "disagreement" or "dislike," the Court employed rhetorical framing that minimizes the legal and constitutional significance of Plaintiff's arguments. Such language reveals a dismissive tone that a reasonable observer could interpret as reflecting bias or a lack of judicial neutrality.
13. Judicial Assumptions Regarding Plaintiff's Mental State: The Court speculated that Plaintiff "disliked" certain statements or "took issue" with procedural rulings, despite having no factual basis or hearing in which Plaintiff's demeanor, tone, or emotions were assessed. Such assertions constitute impermissible judicial speculation. A judge may not infer mental states from pleadings or draw conclusions about emotional reaction in place of legal reasoning. See *Liteky v. United States*, 510 U.S. 540, 555 (1994); *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989). This rhetorical shift—from evaluating legal claims to speculating on Plaintiff's psychological response—undermines the appearance of neutrality and exceeds the judicial role.
14. No Factual Reasoning Provided in Recusal Denial: In denying Plaintiff's prior motion to recuse, the Court merely summarized the allegations and dismissed them without addressing the specific facts or legal principles that could lead a reasonable person to question impartiality. A conclusory denial devoid of factual or legal engagement does not meet the standard articulated in *Liljeberg* or *Caperton* and falls short of the transparency required under § 455.

## C. Appearance of Partiality and Cumulative Impact

While any single error may be explained away, the cumulative pattern of factual distortion, unequal treatment, disregard of binding precedent, and denial of procedural guidance supports recusal under §455(a). As held in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009), due process is violated not only by actual bias, but by the probability or appearance of it.

The Fifth Circuit has affirmed that a judge must recuse where a reasonable person would harbor doubt, even in the absence of provable animus. *Chitimacha Tribe v. Harry L. Laws Co.*, 690 F.2d 1157, 1165 (5th Cir. 1982).

Given the volume and seriousness of unresolved procedural and constitutional questions, the Court's insistence on remaining assigned to this case—despite apparent discomfort with Plaintiff's filings, tone, and requests for accountability—raises an unavoidable question: Why does the Court wish to retain this matter at all? A judge with genuine impartiality would have no interest in remaining on a case clouded by these cumulative concerns. Yet the Court has demonstrated defensiveness, rhetorical minimization, and selective engagement, further reinforcing the perception that impartiality is compromised.

Plaintiff respectfully submits that disqualification is the only appropriate course to restore integrity, ensure compliance with §455, and preserve public confidence in these proceedings.

IV. MOTION FOR LEAVE TO FILE ADDITIONAL EXHIBITS

Plaintiff respectfully moves this Court for leave to file additional exhibits in support of his previously filed Motion to Vacate and Motion to Recuse, pursuant to Rule 7(b) of the Federal Rules of Civil Procedure, Local Rule 7(b)(2), and consistent with Rule 10(e) of the Federal Rules of Appellate Procedure. These exhibits include state court orders demonstrating the recusal or disqualification of multiple Chancellors in matters involving the same parties and similar factual predicates.

These proposed exhibits are essential for three purposes:

1. Factual Corroboration: They reflect that judicial concerns about impartiality and procedural irregularities were already acknowledged by other judges in Plaintiff's related state litigation.
   - *Exhibit A*: Order recusing Chancellor Bise citing prior involvement and potential bias.
   - *Exhibit B*: Transfer order issued by Mississippi Supreme Court noting venue reassignment due to judicial disqualification requests.
   - *Exhibit C*: Judicial assignment memo noting recusal of three judges and appointment of a special chancellor.
2. Legal Significance: They support Plaintiff's contention that his concerns are not speculative but substantiated by judicial officers acting under their own ethical duties under the Mississippi and federal codes of judicial conduct. These exhibits bolster:
   - Plaintiff's recusal request under 28 U.S.C. § 455(a);
   - Plaintiff's jurisdictional challenge under Rule 60(b)(4);
   - The credibility of Plaintiff's allegations regarding structural unfairness.
3. Record Preservation: Plaintiff requests that these exhibits be incorporated into the record under Rule 10(e) for completeness and to prevent manifest injustice on appeal.

Courts have routinely allowed supplemental filings to perfect the record where disqualification, jurisdiction, or due process are at issue. See *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 n.9 (1988) (post-judgment discovery of disqualifying conflict warranted Rule 60 relief); *United States v. Coggins*, 2019 WL 10111165, at *2 (W.D. Tex. 2019) (allowing late exhibits related to recusal and judicial disqualification); *In re Allied Signal Inc.*, 891 F.2d 967, 970 (1st Cir. 1989) (emphasizing necessity of full record for appellate review).

Contrary to the Court's assertion in its Order denying leave as "moot," Plaintiff maintains that these exhibits are not only relevant but necessary to complete the evidentiary record for appellate review and judicial accountability. Their exclusion forecloses meaningful review under the standards of *Caperton* and *Liljeberg*.

To the extent the Court has already ruled on the Motion to Vacate and Motion to Recuse, Plaintiff respectfully requests reconsideration of the denial of leave to file these exhibits in light of their probative value, or in the alternative, that this request be preserved for interlocutory appeal or incorporated into the appellate record under Rule 10(e) of the Federal Rules of Appellate Procedure.

Plaintiff asserts that failure to include this documentation would materially prejudice his right to a full and fair hearing, especially where credibility, judicial conduct, and procedural integrity are in dispute. No undue delay or prejudice will result from granting leave, and judicial economy would be served by allowing a complete record at this stage.

## V. OBJECTION TO CONCLUDING ORDER (Doc. #15, p.9) AND PRESERVATION OF ISSUES FOR REVIEW

Plaintiff respectfully objects to the final section of the Court's October 28, 2025 Order (Doc. #15, p.9), which summarily denies the motions and deems the motion to supplement the record as "moot." In doing so, the Court fails to cure or even acknowledge the procedural and constitutional infirmities detailed throughout Plaintiff's filings. While the Court asserts that it has "considered" all of Plaintiff's remaining arguments, it offers no reasoning, citations, or factual basis for that conclusion—rendering the denial conclusory and inconsistent with Rule 52(a).

The renewed demand that Plaintiff disclose the precise amount of his VA disability compensation—despite its statutory protection from legal process under 38 U.S.C. § 5301—further compounds the constitutional injury. As argued in prior sections, compelling disclosure of VA disability benefits in this manner constitutes a constructive seizure, as recognized in analogous contexts by the Supreme Court in cases such as Porter v. Aetna Cas. & Sur. Co., 370 U.S. 159 (1962), Philpott v. Essex County Welfare Bd., 409 U.S. 413 (1973), and Ridgway v. Ridgway, 454 U.S. 46 (1981), which collectively affirm that federal benefits are not subject to legal processes that operate coercively, even where formal seizure mechanisms are absent, violating the Supremacy Clause and due process. That even courts in non-§5301 contexts have recognized constructive barriers to access (see Boddie v. Connecticut, 401 U.S. 371 (1971)) underscores the constitutional gravity of this coercive burden. The requirement that Plaintiff either "pay the filing fee or list all income including VA disability benefits" improperly places the burden on a federally protected class of litigants and disregards the protective scope of § 5301(a)(1).

Moreover, the Court's refusal to allow the filing of relevant exhibits (Doc. #14), and its failure to issue protective guidance on how to comply without waiving federal protections, contradicts both the Federal Judicial Center Benchbook (6th ed.), Canon 2(A) of the Code of Conduct for U.S. Judges, and applicable precedent, including Goldberg v. Kelly, 397 U.S. 254 (1970),

Mathews v. Eldridge, 424 U.S. 319 (1976), and Rule 10(e) of the Federal Rules of Appellate Procedure.

Preservation Point 1: Plaintiff does not concede the Court's authority to demand detailed disclosure of VA benefits in violation of § 5301(a)(1);

Preservation Point 2: Plaintiff objects to the procedural deficiencies and constitutional violations in the handling of his IFP application and related motions;

Preservation Point 3: Plaintiff requests that all such issues be preserved for appellate review under Rule 10(e), including those raised in Doc. #13 and Doc. #14.

## VI. CONCLUSION AND JUDICIAL ESTOPPEL

The cumulative record now before this Court reveals a disturbing pattern of inconsistent reasoning, contradictory legal positions, and unexplained procedural maneuvering that undermines judicial integrity and necessitates corrective action.

The Court's Order (Doc. #15) simultaneously disclaims any classification of VA compensation as income, while functionally treating it as income for purposes of In Forma Pauperis (IFP) eligibility. This contradictory posture cannot stand. On one hand, the Court asserts:

"This Court has not attempted to attach, levy, or seize Plaintiff's VA benefits, nor has it classified Plaintiff's VA compensation as 'income for taxation, Social Security, or garnishment purposes.'" (Doc. #15, p.2, ¶2)

But just one paragraph later, the Court requires Plaintiff to disclose the same VA compensation to assess IFP eligibility:

"Plaintiff must either pay the filing fee... or file an amended Application to Proceed In forma Pauperis that lists all of Plaintiff's income (including VA disability benefits)..." (Doc. #15, p.9)

This contradiction exposes a misuse of judicial discretion. If VA benefits are not income and cannot be subject to legal or equitable process, then compelling their disclosure to condition access to the courts constitutes a constructive seizure—one squarely prohibited by 38 U.S.C. § 5301(a)(1) and the holdings in *Porter*, *Philpott*, and *Ridgway*.

Judicial estoppel prohibits courts from "playing both sides of the law." As the Supreme Court held in *New Hampshire v. Maine*, 532 U.S. 742 (2001), a party (including a court) may not assert inconsistent legal positions where doing so would damage the integrity of the judicial process. Here, the Court's oscillation between disclaiming classification and functionally classifying VA benefits jeopardizes that integrity.

Moreover, this procedural standoff—fueled by the Court's refusal to permit sealed submission, failure to resolve the IFP issue under clear federal law, and disregard for pro se status—has caused more than delay. It has emboldened state actors to violate Plaintiff's rights without due

process, knowing that federal protection remains procedurally out of reach. While Plaintiff seeks judicial resolution grounded in the Supremacy Clause, due process, and § 5301(a)(1), the federal court's ambiguity gives space for unlawful state overreach.

As recognized in *Boddie v. Connecticut*, 401 U.S. 371 (1971), even indirect or procedural barriers that obstruct access to court may violate due process. That is especially true where the Plaintiff is a disabled veteran proceeding pro se, asserting federal protections over a benefit Congress intended to be shielded from all legal process "whatsoever."

It is not Plaintiff's intent to accuse this Court of malice. Rather, he highlights that the Court's current position—insisting VA benefits are not being classified while simultaneously requiring their disclosure to determine poverty status—is not legally tenable and undermines confidence in a fair and impartial process. Such duality constitutes judicial estoppel, invites appellate reversal, and compels immediate reconsideration.

The Court must choose: either VA benefits are legally protected from compelled disclosure in IFP assessments, or they are not. It cannot be both.

The Constitution, the statutes of the United States, and the precedents of the Supreme Court demand clarity, consistency, and accountability. Plaintiff respectfully urges this Court to correct course before further injustice occurs.

VII. RELIEF REQUESTED

Plaintiff respectfully requests that this Honorable Court grant the following relief:

1. Reconsideration and Amendment of Prior Order: Vacate or amend the October 30, 2025 Order (Doc. #15) to remove the requirement that Plaintiff disclose the amount of his VA disability benefits to determine eligibility for IFP status, in light of the statutory protections under 38 U.S.C. § 5301(a)(1).
2. Clarification Regarding Classification and Use of VA Benefits: Clarify whether VA disability compensation is being classified as income for IFP determinations. If not, discontinue its use as a metric for assessing indigency.
3. Protective Order: Issue a protective order authorizing sealed or in-camera submission of Plaintiff's VA benefits amount solely for the limited purpose of evaluating IFP status, with no waiver of federal protections and no public disclosure.
4. Judicial Notice of Supremacy Clause Protections: Acknowledge the binding effect of 38 U.S.C. § 5301 and Supreme Court precedent (Porter, Philpott, Ridgway) as prohibiting the use of federal benefits as leverage or legal process against the recipient.
5. Opportunity to Cure Under Reasonable Instructions: Provide clear procedural guidance to Plaintiff, a pro se litigant, consistent with the Benchbook for U.S. District Court Judges and due process requirements, so that he may comply with court expectations without forfeiting federally protected rights.
6. ADA Accommodation Guidance: Issue direction on how Plaintiff may request and receive ADA Title II accommodations in future filings and hearings, including options

      for assistive technology, communication methods, or modified procedures due to his documented disabilities.

7. **Recusal and Reassignment (if reconsideration is denied):** Should the Court decline to correct the record or address the due process and Supremacy Clause concerns raised, Plaintiff respectfully renews his request for voluntary recusal under 28 U.S.C. § 455(a) to preserve public confidence in judicial impartiality.
8. **Preservation of Rights for Appeal:** Recognize all objections and constitutional claims presented as preserved for appellate review under Rule 10(e) and Rule 52(a), and permit Plaintiff to file supplemental documentation to complete the record.
9. **Protective Order for Plaintiff and Minor Children:** Issue a protective order extending to Plaintiff and his minor children, prohibiting disclosure, retaliation, or adverse action by state or local actors arising from this federal proceeding, and safeguarding their identities and protected records under federal privacy, disability, and child protection laws, including 5 U.S.C. § 552a, the Individuals with Disabilities Education Act (IDEA), HIPAA, and the Child Abuse Prevention and Treatment Act (CAPTA).

Plaintiff asserts that these requests are narrowly tailored, legally supported, and essential to prevent further violation of statutory protections, irreparable harm, and denial of access to justice. No prejudice would result to Defendants, and judicial economy would be served by resolving these issues clearly at this stage.

WHEREFORE, pursuant to Federal Rules of Civil Procedure 54(b), 52(a), 60(a)–(b), and Local Rule 5(b)(2)(B), Plaintiff respectfully requests that this Court take administrative and judicial notice of the related state proceedings, reconsider and clarify its prior rulings, and issue all relief necessary to protect Plaintiff's federally guaranteed rights. Plaintiff further invokes 28 U.S.C. § 1292(b) to preserve these constitutional and statutory claims for interlocutory appeal and requests that all objections raised herein be deemed preserved under Fed. R. App. P. 10(e) for appellate review. In the interest of justice, Plaintiff asks that the Court act promptly to prevent further irreparable harm, particularly in light of continued violations by state actors occurring while this Court remains inactive.

Respectfully submitted,

DATED: November 14, 2025

_____
Hon. Adam Duvall Davis, Sr.
U.S. Navy (Ret.) – Pro Se Plaintiff
870 Ellington Drive
Biloxi, Mississippi 39532
Phone: (337) 504-8179
Email: