

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

HON. ADAM DUVALL DAVIS, SR., U.S. NAVY VETERAN     PLAINTIFF

v.     Civil No. 1:25-cv-00039-LG-BWR

HON. WILLIAM TISDALE, *in his individual and official capacities;*
CITY OF BILOXI, MISSISSIPPI;
HON. CARTER BISE, *in his individual and official capacities;*
and OTHER UNNAMED DEFENDANTS     DEFENDANTS

### PLAINTIFF'S RULE 59(e) MOTION TO ALTER OR AMEND JUDGMENT

Plaintiff, Hon. Adam Duvall Davis, Sr., U.S. Navy Veteran, respectfully submits this Rule 59(e) Motion to Alter or Amend the Final Judgment entered November 19, 2025. This motion is timely under Fed. R. Civ. P. 59(e) and seeks correction of clear legal error, correction of material misstatements of the record, and prevention of manifest injustice.

Plaintiff incorporates all prior filings, objections, motions, and exhibits into this motion as if fully restated herein.

# I. STANDARD OF REVIEW UNDER RULE 59(e)

Relief under Rule 59(e) is warranted where the Court must correct (1) clear legal error, (2) factual findings contradicted by the record, (3) misapplication or misapprehension of controlling law, or (4) manifest injustice. Each category applies here and is supported by binding precedent and statutory authority.

## A. Clear Legal Error — Misapplication of Federal Statutes and Rules

Clear error exists when a judgment is based on a misunderstanding or incorrect application of controlling law. *See* Templet v. HydroChem Inc., 367 F.3d 473, 478–79 (5th Cir. 2004); Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez), 695 F.3d 360, 371–72 (5th Cir. 2012); Gates v. Strain, 885 F.3d 874, 879–80 (5th Cir. 2018). These authorities establish that

Rule 59(e) is a limited but mandatory remedy to correct manifest errors of law or fact or to prevent manifest injustice, not a vehicle for reargument. *See also* In re Transtexas Gas Corp., 303 F.3d 571, 581 (5th Cir. 2002).

Here, the Court committed clear legal error by:

1. Misapplying 38 U.S.C. § 5301, which categorically prohibits seizure or coercive use of VA disability benefits "under any legal or equitable process whatever." Conditioning IFP eligibility on a disclosure that would waive § 5301 protections constitutes an unconstitutional condition and a constructive seizure. *See* Porter v. Aetna, 370 U.S. 159 (1962); Ridgway v. Ridgway, 454 U.S. 46 (1981).
2. Treating VA disability compensation, a federally protected and statutorily exempt benefit, contrary to federal statute and Supreme Court doctrine.
   - *Porter*: VA benefits remain protected even after deposit.
   - *Ridgway*: State courts cannot reach protected federal benefits.
   - *Bennett v. Arkansas*, 485 U.S. 395 (1988): Supremacy Clause bars state interference with federally protected benefits.
   - VA Apportionment Determination: The Department of Veterans Affairs has already issued a formal apportionment decision under 38 U.S.C. § 5307 and its implementing regulations—38 C.F.R. §§ 3.400(e), 3.450, 3.451, 3.452, and 3.458—finding that *any diversion or payment from Plaintiff's VA disability compensation would create undue hardship*. These statutes and regulations vest exclusive authority in the VA to determine whether, and to what extent, a veteran's disability compensation may be apportioned. This binding federal determination underscores that Plaintiff's benefits are not only protected from attachment under § 5301, but have been affirmatively adjudicated by the VA as unavailable for compelled payment, rendering any contrary treatment by a court unlawful under the Supremacy Clause.
3. Using prisoner-only precedent (Hawes v. Stephens) to evaluate a civilian veteran's IFP eligibility, which is a categorical legal error under 28 U.S.C. § 1915(a).
4. Ignoring mandatory ADA provisions requiring effective access to judicial proceedings. *See* Tennessee v. Lane, 541 U.S. 509 (2004); 28 C.F.R. § 35.160.

## B. FINDINGS CONTRADICTED BY THE RECORD — FACTUAL ERROR SUPPORTING RULE 59(e)

Rule 59(e) authorizes relief where a judgment rests on factual findings that are plainly contradicted by the record. *See* Rosenzweig v. Azurix Corp., 332 F.3d 854, 863–64 (5th Cir. 2003) (holding that Rule 59(e) relief is warranted where a court's decision is based on clearly erroneous factual assumptions).

Here, the Court's dismissal rests on a demonstrably incorrect factual premise: that Plaintiff never offered to provide VA benefit information through sealed filing, in-camera review, or pursuant to

a protective order. The Court stated that it "has not located such an offer" in the record. That statement cannot be reconciled with the Court's own Order or with the filings the Court expressly cites.

The record affirmatively establishes that Plaintiff made the exact offer the Court later claimed it could not locate. In Motion [16], the Court itself quoted Plaintiff as requesting a protective order authorizing sealed or in-camera submission of his VA benefit amount, solely for the limited purpose of evaluating in forma pauperis status, and expressly without waiving statutory protections under 38 U.S.C. § 5301. That quotation appears verbatim in the Court's Order at Document 17, pages 1–2. A court cannot simultaneously quote a request from the record and later assert that no such request exists.

The Court further acknowledged that Plaintiff had previously asked for instructions on how to provide the amount of his IFP benefits without waiving his rights. *See* Doc. 17 at 3 n.2. This admission confirms that, even before filing Motion [16], Plaintiff was attempting in good faith to comply with the Court's directives while avoiding an unlawful waiver of federally protected VA disability compensation. That acknowledgment directly contradicts any suggestion that Plaintiff refused disclosure, obstructed the process, or acted non-cooperatively.

Taken together, the Court's own findings establish that Plaintiff sought guidance on lawful disclosure, expressly requested sealed or in-camera submission, and requested protective measures to avoid waiver of rights under § 5301—facts the Court itself recognized in its Order. The later assertion that the Court "has not located such an offer" is therefore internally inconsistent and factually irreconcilable. This is not a dispute over interpretation or emphasis; it is a material factual error.

That error was not harmless. The Court relied on this mistaken factual premise to characterize Plaintiff as noncompliant and to justify dismissal under Rule 41(b). Because the premise underlying the dismissal is contradicted by the record, the judgment rests on an erroneous factual foundation. Under Rosenzweig, such an error independently requires relief under Rule 59(e). A judgment predicated on facts the record disproves cannot stand.

Correction is necessary not only to prevent manifest injustice, but also to ensure an accurate and reliable record for appellate review. Where a court's own order contains internally inconsistent factual findings that directly support dismissal, Rule 59(e) exists precisely to permit correction. Accordingly, amendment of the judgment is required to correct the Court's factual misstatements and to remove a dismissal grounded in a demonstrably false premise.

# C. MISAPPREHENSION OF THE GOVERNING LEGAL STANDARDS

Relief under Rule 59(e) is warranted where the Court has misunderstood the governing legal standards, misapplied controlling law, or failed to consider binding authority. *See* Schiller v. Physicians Res. Grp., Inc., 342 F.3d 563, 567 (5th Cir. 2003) (Rule 59(e) relief appropriate where the court misunderstands the law or facts).

Here, the dismissal reflects a misapprehension of several controlling legal frameworks, each of which independently supports relief and collectively demonstrates manifest error.

First, the Court misapprehended the legal meaning and force of 38 U.S.C. § 5301. That statute does more than prohibit direct attachment or garnishment of VA disability compensation; it bars courts from using protected benefits as leverage or conditioning access to judicial processes on waiver of statutory protections. The Supreme Court has repeatedly enforced this protection under the Supremacy Clause. In *Porter v. Aetna Casualty & Surety Co.*, the Court held that VA disability compensation remains protected even after receipt and deposit. 370 U.S. 159, 161–62 (1962). In *Ridgway v. Ridgway*, the Court reaffirmed that state courts may not reach or redirect federally protected veterans' benefits, even indirectly. 454 U.S. 46, 55–56 (1981). And in *Bennett v. Arkansas*, the Court made explicit that the Supremacy Clause bars any state action—judicial or otherwise—that interferes with federal benefit protections. 485 U.S. 395, 397–98 (1988). By conditioning Plaintiff's access to in forma pauperis review on disclosure that would waive § 5301 protections, the Court effectively used a federally protected and statutorily exempt benefit as a tool of compulsion, accomplishing indirectly what federal law expressly forbids.

Second, the Court misapplied 28 U.S.C. § 1915 by collapsing the distinction between subsection (a), which governs civilian litigants, and subsection (b), which applies exclusively to prisoners. Section 1915(b) imposes mandatory disclosure, assessment, and payment requirements only on incarcerated persons as part of the Prison Litigation Reform Act. Treating a civilian disabled veteran as subject to prisoner-specific financial scrutiny contradicts the plain statutory structure and Fifth Circuit precedent holding that PLRA burdens may not be extended beyond their narrow scope. This misapplication infected the Court's analysis of Plaintiff's financial disclosures and improperly heightened the requirements imposed on him.

Third, the Court misapprehended the mandatory nature of de novo review under Rule 72(b)(3). When a party files timely objections to a magistrate judge's report and recommendation, the district court must conduct a de novo determination of the objected-to portions before entering dispositive judgment. Dismissal of the action while objections and related motions remained pending deprived Plaintiff of that mandatory review. Such action constitutes reversible procedural error, as it short-circuits the process Congress and the Rules require.

Fourth, the Court misapprehended its obligations under Title II of the Americans with Disabilities Act. Title II requires courts to ensure that individuals with disabilities have effective access to judicial proceedings, including reasonable accommodations necessary for meaningful participation. This obligation exists regardless of whether a formal hearing has occurred. Plaintiff repeatedly notified the Court of his hearing-related disabilities and requested accommodations. The absence of a hearing does not excuse the failure to provide auxiliary aids or alternative methods of communication necessary to ensure effective participation in written proceedings and compliance efforts.

Each of these misapprehensions reflects not a discretionary judgment call, but a misunderstanding of governing law. Under Schiller, such errors fall squarely within the scope of Rule 59(e) and require amendment of the judgment to correct the legal framework applied to Plaintiff's claims.

## D. MANIFEST INJUSTICE — DENIAL OF CONSTITUTIONAL AND STATUTORY RIGHTS

Manifest injustice exists where a court's ruling produces an outcome that is fundamentally unfair, undermines confidence in the judicial process, or results in the deprivation of constitutional or statutory rights. *See* In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002) (manifest injustice warrants Rule 59(e) relief where the judgment results in an inequitable or legally untenable outcome).

The Court's dismissal creates manifest injustice because it operates not as a neutral application of procedural rules, but as a substantive barrier to the vindication of federal rights—imposed on a disabled veteran whose sole means of support is federally protected by statute.

First, the dismissal denies Plaintiff meaningful access to federal adjudication of his 42 U.S.C. § 1983 claims. Those claims include allegations of procedural and substantive due process violations, denial of equal protection, failure to accommodate under ADA Title II, unconstitutional municipal policies under Monell, and violations of the Supremacy Clause arising from state interference with federally protected VA disability compensation. The effect of the dismissal is to foreclose judicial review of serious constitutional claims at the threshold, without adjudication on the merits.

Second, the dismissal imposes an unconstitutional condition by requiring Plaintiff to waive statutory protections afforded to VA disability compensation as the price of accessing the courts. Conditioning access to a government benefit—or here, access to judicial process—on the surrender of a constitutional or statutory right is prohibited. *See* Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 604–06 (2013) (government may not condition benefits or approvals on waiver of protected rights). By insisting on disclosure methods that would forfeit protections under 38 U.S.C. § 5301, the Court effectively required Plaintiff to choose between his federally protected benefits and his right to be heard.

Third, the dismissal conflicts with Supreme Court precedent holding that courts may not erect fee barriers that effectively block access to the only realistic forum for adjudicating fundamental interests. In Boddie v. Connecticut, the Supreme Court held that due process prohibits denying court access "solely because of inability to pay" where the State has effectively monopolized the lawful means of resolving the dispute and the interests at stake are of basic importance. *401 U.S. 371, 374–77 (1971).* That principle applies with special force here: Plaintiff cannot obtain adjudication of federal constitutional claims—including § 1983 claims for due process, equal

protection, ADA Title II access, and Supremacy Clause violations—outside the federal judicial process.

Likewise, in M.L.B. v. S.L.J., the Court held that financial barriers may not be used to block review where "the State's authority is invoked to extinguish" profound personal rights. *519 U.S. 102, 113–17 (1996)*. Together, *Boddie* and *M.L.B.* confirm that when judicial process is the necessary gateway to protect or vindicate fundamental rights, indigency cannot be converted into a jurisdictional bar. That conclusion is reinforced by the Supreme Court's access-to-justice line of cases beginning with Griffin v. Illinois, which held that a State may not condition meaningful judicial review on a litigant's ability to pay for the "instruments needed to vindicate" legal rights. *351 U.S. 12, 18–20 (1956)*. The Court applied the same principle to filing-fee barriers in Burns v. Ohio, holding that a State may not deny access to appellate review "solely because of inability to pay" a filing fee. *360 U.S. 252, 257–58 (1959)*. And in Smith v. Bennett, the Court held that requiring indigent litigants to pay filing fees before a habeas petition could be docketed violates equal protection, because financial status cannot determine access to judicial remedies. *365 U.S. 708, 709–13 (1961)*. These cases collectively confirm that courts may not convert poverty into a categorical bar to adjudication where the judicial process is the operative gateway for rights enforcement. The Fifth Circuit has likewise recognized that meaningful access to the courts is a fundamental constitutional requirement and that governmental action may not obstruct that access through procedural or financial barriers. *See* Ryland v. Shapiro, 708 F.2d 967, 972–73 (5th Cir. 1983) (recognizing a constitutional right of access to the courts and liability where state action obstructs that access). The dismissal here does exactly that.

Fourth, the dismissal violates basic principles of due process by conditioning judicial review on the prepayment of filing fees where Plaintiff's sole livelihood consists of VA disability compensation, a federally protected and statutorily exempt benefit. Federal law expressly shields such benefits from legal process, attachment, or coercive use. Requiring prepayment from protected benefits—or penalizing refusal to expose them to waiver—functions as an indirect seizure barred by statute and Supreme Court doctrine.

Taken together, these effects render the judgment fundamentally unfair. The dismissal does not merely enforce procedural compliance; it extinguishes constitutional claims through a mechanism that federal law forbids. Under In re Benjamin Moore & Co., this outcome constitutes manifest injustice and independently compels relief under Rule 59(e).

## II. THE COURT'S JUDGMENT RESTS ON CLEARLY ERRONEOUS FACTUAL FINDINGS

### A. The Court Incorrectly Stated That Plaintiff Did Not Offer In-Camera or Sealed Submission of VA-Protected Information

The Court's conclusion that it "has not located such an offer" for sealed, in-camera, or otherwise protected submission of Plaintiff's VA benefit information is flatly contradicted by the record.

From the outset of these proceedings, Plaintiff did not resist disclosure; rather, he consistently attempted to comply with the Court's directives while preserving the federally guaranteed protections afforded to VA disability compensation under 38 U.S.C. § 5301. The record reflects a sustained, good-faith effort to identify a lawful mechanism—sealed filing, in-camera review, or a narrowly tailored protective order—through which the information could be provided without waiver of statutory rights.

Those efforts predate Motion [16], were reiterated and formalized in Motion [16], and were expressly acknowledged by the Court itself in its Order (Document 17). Indeed, before Motion [16] was filed, Plaintiff affirmatively asked the Court for guidance on "how to provide the amount of his IFP benefits without waiving his rights." (Doc. 17 at 3). That acknowledgment alone forecloses any claim that Plaintiff refused disclosure or failed to offer protected means of submission. A litigant who seeks instruction on lawful compliance cannot simultaneously be characterized as obstructive or non-responsive.

Motion [16] removed any possible ambiguity. There, Plaintiff expressly requested a protective order authorizing sealed or in-camera submission of his VA benefit amount, solely for the limited purpose of evaluating IFP status and without any waiver of federal protections or public disclosure. The Court quoted this request verbatim in its Order. Having done so, the Court cannot coherently maintain that it was unable to "locate" such an offer in the record. Quoting a request and denying its existence are mutually exclusive propositions.

The Court further recognized that Plaintiff sought broader protective measures prohibiting disclosure, retaliation, or adverse action by state or local actors, and safeguarding records protected by federal privacy and disability law. Given that the only information at issue was Plaintiff's VA benefit amount, those protective measures necessarily encompassed the manner in which that information would be disclosed. Read as a whole, the record demonstrates repeated, consistent, and narrowly tailored offers of protected disclosure.

Against this backdrop, the Court's later assertion that no offer of sealed or in-camera submission exists is not a matter of interpretation or emphasis; it is a clear factual error. The Court's own quotations and acknowledgments establish that Plaintiff acted diligently, consistently, and in good faith to comply with the Court's requirements while avoiding an unlawful waiver of federally protected rights. The contrary finding misstates the record.

That misstatement was not inconsequential. By portraying Plaintiff as having made no protected-disclosure offer, the Court mischaracterized him as non-compliant and relied on that characterization to justify dismissal under Rule 41(b). Because the dismissal rests on factual assumptions the record disproves, it cannot stand. Rule 59(e) exists precisely to correct judgments premised on such demonstrable factual error.

## B. The Court's Factual Error Infected Its Legal Analysis and Discretionary Rulings

The Court's erroneous factual finding did not merely appear in passing; it shaped the entire analytical posture of the dismissal. By incorrectly concluding that Plaintiff never offered sealed or in-camera disclosure of his VA-protected information, the Court framed the case as one involving defiance and noncompliance, rather than a good-faith effort to comply with court directives while preserving federally protected rights. That misframing infected both the Court's legal reasoning and its exercise of discretion.

At the outset, the Court's Rule 41(b) analysis depended on the premise that Plaintiff failed to cooperate with the Court's orders. Once the record is accurately understood, that premise cannot stand. Plaintiff did not refuse disclosure. Instead, he repeatedly sought to comply through lawful mechanisms—sealed filing, in-camera review, and protective orders—expressly designed to avoid an unconstitutional waiver of protections afforded by 38 U.S.C. § 5301. Treating those efforts as obstruction converted compliance-seeking conduct into supposed misconduct.

This factual mischaracterization also distorted the Court's assessment of Plaintiff's credibility and good faith. A litigant who persistently asks for guidance, proposes narrowly tailored disclosure procedures, and offers in-camera review demonstrates diligence, not recalcitrance. By assuming the opposite, the Court skewed its evaluation of proportionality, the availability of lesser sanctions, and whether dismissal was justified at all. Such an evaluation cannot be sustained when its factual predicate is incorrect.

The error further bled into the Court's understanding of the governing law. Concluding that Plaintiff made no protected-disclosure offer allowed the Court to sidestep meaningful engagement with controlling federal statutes and Supreme Court precedent prohibiting courts from coercing waiver of VA-benefit protections. As a result, the legal analysis proceeded on an incomplete and inaccurate factual foundation, undermining its validity.

Discretionary rulings grounded in clearly erroneous factual assumptions constitute an abuse of discretion. Because the dismissal here flowed directly from such an error, it independently warrants relief under Rule 59(e).

C. Bridge — From Factual Error to Legal Misapprehension and Manifest Injustice

This factual error was not harmless. It formed the first link in a chain of compounding mistakes. By mischaracterizing Plaintiff's conduct, the Court misconceived the applicable legal standards, treated federally protected conduct as noncompliance, and ultimately imposed the most severe sanction available—dismissal—at the threshold of the case. That progression, from factual error to legal misapprehension to manifest injustice, is precisely what Rule 59(e) exists to correct. Rectifying the record is therefore necessary not only to address the factual mistake itself, but to restore the integrity of the Court's legal analysis and prevent an outcome that federal law does not permit.

# III. THE COURT'S JUDGMENT RESTS ON CLEAR ERRORS OF LAW

A. Misapplication of 38 U.S.C. § 5301 and Unconstitutional Conditioning of Court Access

Reversible-Error Hook. The judgment must be altered because the Court simultaneously disclaimed treating Plaintiff's VA disability compensation as income while imposing disclosure and compliance consequences that only apply if it is treated as income, thereby effecting an impermissible constructive seizure of federally protected benefits in direct conflict with 38 U.S.C. § 5301, the Supremacy Clause, and controlling Supreme Court precedent.

The Court's judgment rests on a fundamental misapprehension of 38 U.S.C. § 5301, which provides that VA disability compensation is exempt from attachment, levy, seizure, or any other legal process. Although the statute is often discussed in the context of garnishment or direct collection, its protection is broader: it prohibits courts from using VA disability compensation as leverage or conditioning access to judicial processes on surrender of its statutory immunity.

Here, the Court effectively conditioned Plaintiff's access to federal court on disclosure of his VA disability compensation without the procedural safeguards—such as sealed filing, in-camera review, or a protective order—necessary to preserve § 5301 protections. That requirement exposed Plaintiff's federally protected benefits to potential misuse by state actors and operated as a constructive seizure of exempt benefits through judicial process.

Internal Inconsistency Confirming Legal Error. Compounding this error, the Court alternated between asserting that it was not treating Plaintiff's VA disability compensation as "income," while simultaneously applying disclosure and compliance requirements that presuppose treatment of those benefits as ordinary income available for judicial accounting. That internal inconsistency matters. If VA disability compensation is not income, then there is no lawful basis to condition IFP eligibility on unrestricted disclosure or to impose adverse procedural consequences for protecting it. Conversely, if the Court's analysis functionally treats VA compensation as income, then it directly conflicts with 38 U.S.C. § 5301 and controlling Supreme Court precedent. Courts may not evade federal benefit protections by disclaiming a label while imposing the very legal consequences the statute forbids. See Bennett v. Arkansas, 485 U.S. 395, 397–98 (1988) (Supremacy Clause bars indirect encroachment on federally protected benefits); Ridgway v. Ridgway, 454 U.S. 46, 54–56 (1981). This vacillation reflects a misapprehension of governing law and independently supports Rule 59(e) relief.

Supreme Court precedent forecloses this approach. In Porter v. Aetna Casualty & Surety Co., 370 U.S. 159, 162–63 (1962), the Court held that VA benefits retain their protected character even after deposit and remain immune from legal process. In Ridgway v. Ridgway, 454 U.S. 46, 54–56 (1981), the Court reaffirmed that state courts may not circumvent federal benefit protections through indirect means. And in Bennett v. Arkansas, 485 U.S. 395, 397–98 (1988), the Court made clear that the Supremacy Clause bars states—and state courts—from reaching federally protected benefits under any theory not authorized by Congress.

Relatedly, the Supreme Court has long held that financial status cannot determine access to judicial remedies. In Smith v. Bennett, the Court ruled that requiring indigent litigants to pay filing fees before a habeas petition could be docketed violates equal protection, because access to the courts may not be conditioned on a litigant's ability to pay. 365 U.S. 708, 709–13 (1961). This constitutes clear legal error warranting relief under Rule 59(e).

### B. Improper Reliance on Prisoner-Specific Authority and PLRA Standards

The Court further erred by relying on Hawes v. Stephens, a case arising under the Prison Litigation Reform Act (PLRA), to evaluate Plaintiff's in forma pauperis application. Hawes governs incarcerated prisoners whose funds are held in prison trust accounts and whose filings are expressly subject to the PLRA's mandatory payment and accounting regime. Plaintiff is not incarcerated, and his VA disability compensation is not held in any prison-controlled account.

The Fifth Circuit has repeatedly and unequivocally held that PLRA provisions apply only to prisoners and may not be extended to civilian litigants. In Brown v. Taylor, 829 F.3d 365, 370 (5th Cir. 2016), the court explained that PLRA restrictions "apply solely to prisoners." In Nunley v. City of Waco, 440 F. App'x 275, 276 (5th Cir. 2011), the Fifth Circuit held that non-prisoners "are not subject to the PLRA's financial requirements." And in Alexander v. Texas Department of Criminal Justice, 951 F.3d 236, 241 (5th Cir. 2020), the court emphasized that PLRA standards apply only where Congress has expressly authorized them.

By importing Hawes into a civilian IFP determination, the Court collapsed the statutory distinction between § 1915(a), which governs civilian litigants, and § 1915(b), which governs prisoners. That move contradicts controlling Fifth Circuit precedent, creates an unauthorized PLRA-like barrier to court access, and constitutes clear legal error. No circuit has extended Hawes beyond the prisoner context, and doing so here was improper.

### C. Dismissal Without Mandatory De Novo Review Under Rule 72(b)(3)

The Court also erred by entering judgment while Plaintiff's timely objections under Rule 72(b)(2) remained pending. Where objections are filed, Rule 72(b)(3) imposes a mandatory obligation on the district judge to conduct de novo review of the contested portions of the report and recommendation.

Plaintiff's objections raised constitutional, statutory, and procedural challenges central to the disposition of the case. By dismissing the action without first resolving those objections, the Court bypassed the required de novo review and deprived Plaintiff of the procedural protections guaranteed by the Federal Rules. The docket reflects that judgment was entered before the Court addressed Plaintiff's pending objections, underscoring that the mandatory de novo review required by Rule 72(b)(3) did not occur prior to dismissal. A judgment entered without compliance with Rule 72(b)(3) cannot stand and constitutes reversible error.

## D. Legal Error in the Court's ADA Analysis

Finally, the Court erred in its treatment of Plaintiff's claims under Title II of the Americans with Disabilities Act. Plaintiff's hearing impairment is well documented, and he repeatedly advised the Court of the need for reasonable accommodations. The Court dismissed these concerns on the ground that "no hearings have occurred."

That reasoning misapprehends the scope of ADA Title II. The duty to provide reasonable accommodations applies to all stages of court participation, not merely in-person hearings. It encompasses written communications, electronic filings, comprehension of court orders, and effective access to procedural mechanisms. Federal regulations require public entities to ensure that communications with individuals with disabilities are "as effective as communications with others." See 28 C.F.R. § 35.160.

By limiting ADA obligations to formal hearings, the Court applied an unduly narrow and legally incorrect standard. That misapplication of governing law independently constitutes clear legal error supporting relief under Rule 59(e).

## E. Synthesis: Legal Errors Require Alteration or Amendment of the Judgment

Viewed together, the Court's errors reflect a cascading misapplication of governing law that independently and collectively requires relief under Rule 59(e). First, the Court misconstrued 38 U.S.C. § 5301 by conditioning access to federal adjudication on disclosure of VA disability compensation without safeguards, contrary to Porter v. Aetna Casualty & Surety Co., Ridgway v. Ridgway, and Bennett v. Arkansas, each of which confirms that federally protected veterans' benefits may not be reached—directly or indirectly—through judicial process in derogation of the Supremacy Clause.

Second, the Court improperly imported PLRA standards into a civilian case by relying on Hawes v. Stephens, despite binding Fifth Circuit precedent holding that PLRA provisions "apply solely to prisoners," Brown v. Taylor, that non-prisoners are not subject to PLRA financial requirements, Nunley v. City of Waco, and that PLRA standards apply only where Congress has expressly authorized them, Alexander v. Texas Department of Criminal Justice. This misstep collapsed the statutory distinction between 28 U.S.C. § 1915(a) and § 1915(b) and erected an unauthorized barrier to court access.

Third, the Court entered judgment without conducting the mandatory de novo review required by Rule 72(b)(3) while Plaintiff's objections under Rule 72(b)(2) were pending, a procedural defect that alone renders the judgment unsound. Finally, the Court misapprehended the scope of ADA Title II by limiting accommodation duties to in-person hearings, contrary to 28 C.F.R. § 35.160, which requires effective communication at all stages of court participation.

These legal errors are not harmless. They mischaracterized Plaintiff's compliance, foreclosed adjudication of substantial federal claims, and imposed unconstitutional conditions on court access. Under Templet v. HydroChem Inc., 367 F.3d 473, 478–79 (5th Cir. 2004), Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez), 695 F.3d 360, 371–72 (5th Cir. 2012), and Gates v. Strain, 885 F.3d 874, 879–80 (5th Cir. 2018), Rule 59(e) relief is warranted where a judgment rests on clear errors of law or results in manifest injustice. Because the Court's judgment does both, it must be altered or amended.

# IV. DISMISSAL UNDER RULE 41(b) RESULTED IN MANIFEST INJUSTICE

## A. Dismissal Foreclosed Adjudication of Substantial Federal Claims

The Court dismissed Plaintiff's § 1983 civil rights action in its entirety under Rule 41(b) without adjudicating the merits of any claim. The dismissed action includes, inter alia: procedural due process violations; substantive due process violations; equal protection violations; Supremacy Clause violations involving federally protected veterans' benefits; state-created danger allegations; Monell municipal liability claims; claims arising from judicial misconduct and the unlawful dissolution of a Domestic Abuse Protection Order (DAPO); and claims under Title II of the Americans with Disabilities Act. None of these claims received merits review.

Dismissal of a civil rights action at the threshold—particularly one asserting constitutional violations and federally protected interests—carries extraordinary consequences and must be exercised with restraint. The Fifth Circuit has recognized that dismissal with prejudice is a severe sanction, appropriate only where lesser measures are inadequate and where the plaintiff's conduct clearly warrants such an outcome. See In re Benjamin Moore & Co., 318 F.3d 626, 629 (5th Cir. 2002).

## B. Manifest Injustice Exists Where Court Access Is Denied on Erroneous Procedural Grounds

Manifest injustice exists where a court's ruling produces an outcome that is fundamentally unfair or that deprives a litigant of access to adjudication based on error rather than law. Here, dismissal rested on a chain of compounding defects: factual mischaracterizations contradicted by the record, misapplication of governing statutes, improper reliance on inapplicable PLRA authority, and failure to conduct mandatory de novo review under Rule 72(b)(3). Each defect independently undermines the legitimacy of the judgment; together, they render it unsustainable.

The Supreme Court has long held that access to the courts may not be denied on the basis of indigency where fundamental rights are at stake. In Boddie v. Connecticut, 401 U.S. 371, 374–77 (1971), the Court held that due process prohibits states from denying court access solely because a litigant cannot afford filing fees when judicial proceedings are the exclusive means to vindicate important rights. Similarly, in M.L.B. v. S.L.J., 519 U.S. 102, 113–24 (1996), the Court

reaffirmed that financial barriers may not foreclose appellate review where fundamental family and liberty interests are implicated.

## C. Unconstitutional Conditions and Coerced Waiver of Federal Rights

The dismissal also imposed an unconstitutional condition by effectively requiring Plaintiff to waive statutory protections over VA disability compensation as the price of court access. Conditioning access to judicial remedies on surrender of federally protected rights violates settled constitutional doctrine. See Koontz v. St. Johns River Water Management District, 570 U.S. 595, 604–06 (2013) (government may not condition access to benefits or processes on waiver of constitutional rights).

This principle applies with particular force where the benefit at issue is expressly protected by federal statute and the Supremacy Clause. As explained in Porter v. Aetna Casualty & Surety Co., 370 U.S. 159, 162–63 (1962), Ridgway v. Ridgway, 454 U.S. 46, 54–56 (1981), and Bennett v. Arkansas, 485 U.S. 395, 397–98 (1988), courts may not directly or indirectly reach federally protected veterans' benefits absent clear congressional authorization. Dismissal predicated on refusal to waive such protections therefore constitutes manifest injustice.

## D. Rule 41(b) Dismissal Was Disproportionate and Procedurally Unsound

Rule 41(b) dismissals are intended to address willful disobedience or persistent failure to prosecute—not good-faith efforts to comply with court directives while preserving statutory rights. The record reflects that Plaintiff repeatedly sought lawful means of compliance, including sealed filing, in-camera review, and protective orders. Characterizing those efforts as noncompliance, and dismissing the case on that basis, was disproportionate and erroneous.

Dismissal with prejudice is a "draconian remedy" that should be employed only where there is a clear record of delay or contumacious conduct and where lesser sanctions would be ineffective. Berry v. CIGNA/RSI-CIGNA, 975 F.2d 1188, 1191 (5th Cir. 1992). No such record exists here. Plaintiff did not engage in delay, obstruction, or defiance; instead, he sought clarification and lawful compliance. Under Berry, dismissal under these circumstances is reversible error.

Moreover, the Fifth Circuit has cautioned that courts must exercise particular care before dismissing civil rights actions on procedural grounds that prevent adjudication of constitutional claims. See Hernandez v. City of El Paso, 791 F.3d 468, 470–71 (5th Cir. 2015) (warning against procedural dismissals that foreclose adjudication of § 1983 claims).

The Fifth Circuit has also vacated dismissals entered without adherence to procedural safeguards, particularly where dismissal forecloses adjudication of constitutional claims. See Brown v. Taylor, 829 F.3d 365, 371–72 (5th Cir. 2016) (vacating sua sponte dismissal with prejudice entered without notice and opportunity to respond).

## E. Dismissal Improperly Terminated a Protected Cause of Action Without a Meaningful Opportunity To Be Heard

A cause of action is itself a protected property interest, and the State may not terminate it through procedural mechanisms that deny a litigant a meaningful opportunity to be heard. Logan v. Zimmerman Brush Co., 455 U.S. 422, 433–34 (1982). Where dismissal extinguishes a claim without adjudication and without fault attributable to the plaintiff, due process is violated.

Here, Plaintiff's § 1983 claims—asserting constitutional violations, Supremacy Clause injuries, and federally protected interests—were terminated not because they lacked merit, but because of procedural misapprehensions and legal error. Logan makes clear that such termination itself constitutes a constitutional injury.

### F. Dismissal Foreclosed Adjudication of Federally Mandated Protection-Order Enforcement

The dismissal also resulted in manifest injustice because it foreclosed merits adjudication of Plaintiff's claims arising from the unlawful dissolution and non-enforcement of a Domestic Abuse Protection Order ("DAPO"). Congress has elevated the interstate enforcement of qualifying protection orders beyond a purely local concern by requiring States and tribes to give full faith and credit to valid protection orders and to enforce them "as if" issued by the enforcing jurisdiction. 18 U.S.C. § 2265(a). A State may not refuse enforcement merely because it uses different procedures or terminology; the question is whether the order is valid and entitled to recognition under the federal standard. 18 U.S.C. § 2265(b)–(d).

Plaintiff's federal theory is not that every protection-order dispute is federal, but that the challenged conduct here—dissolving or nullifying a valid DAPO through process that Plaintiff alleges was ex parte, jurisdictionally unauthorized, and inconsistent with minimum notice-and-hearing requirements—implicates federal supremacy interests once Congress has required nationwide recognition and enforcement of such orders. Where federal law commands recognition and enforcement, a procedural dismissal that prevents adjudication of whether state actors unlawfully nullified the order can functionally deprive the protected party of the very federal safeguard Congress enacted.

That consequence matters in this Rule 59(e) posture because dismissal here was not the product of an adverse merits ruling after full process; it was the product of procedural error and disproportionate sanction. When the Court's procedural ruling extinguishes claims tied to personal safety and court-ordered protection—interests Congress has deemed important enough to mandate interstate enforcement—the risk of manifest injustice is at its highest.

### G. Relief Is Required to Prevent Manifest Injustice

Under Templet v. HydroChem Inc., 367 F.3d 473, 478–79 (5th Cir. 2004), Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez), 695 F.3d 360, 371–72 (5th Cir. 2012), and Gates v. Strain, 885 F.3d 874, 879–80 (5th Cir. 2018), Rule 59(e) relief is warranted where a judgment rests on clear legal error or results in manifest injustice. Because the dismissal here extinguished substantial federal claims—including constitutional rights, Supremacy Clause injuries involving federally protected veterans' benefits, and claims tied to federally mandated protection-order enforcement—based on erroneous premises and disproportionate sanctions,

alteration or amendment of the judgment is required to restore access to adjudication and preserve the integrity of the judicial process.

# V. RECORD CITATIONS DEMONSTRATING MATERIAL ERROR

To ensure the record is clear and accurate for appellate review, Plaintiff provides the following pinpoint citations demonstrating the Court's factual contradictions concerning Plaintiff's offers of sealed, in-camera, and otherwise protected submission of VA-protected information. These citations are material because the dismissal rests in part on a narrative of "noncompliance" that collapses once the Court's own quotations and acknowledgments are placed side-by-side.

### A. The Court's Admission of Plaintiff's Earlier Request for Clarification

In its order, the Court expressly acknowledged that Plaintiff previously sought guidance on how to comply with disclosure requirements without forfeiting federally protected rights. Specifically, the Court stated that:

"Plaintiff did ask the Court for instructions on how to provide the amount of his IFP benefits without waiving his rights." (Doc. 17 at 3 n.2).

That admission establishes that—*before* Motion [16]—Plaintiff was not refusing disclosure, but was attempting to disclose in a legally compliant manner consistent with 38 U.S.C. § 5301(a) and the Supremacy Clause.

### B. The Court's Acknowledgment of Plaintiff's Explicit Sealed / In-Camera Request in Motion [16]

The Court also quoted Motion [16] and thereby confirmed that Plaintiff made an explicit request for sealed or in-camera submission. The Court summarized Plaintiff's request as follows:

Plaintiff "seeks a protective order authorizing sealed or in-camera submission of Plaintiff's VA benefits amount solely for the limited purpose of evaluating IFP status, with no waiver of federal protections and no public disclosure." (Doc. 17 at 1–2).

This is the precise offer the Court later claimed it "could not locate."

### C. The Court's Recognition of Plaintiff's Additional Protective-Order Requests

The Court further acknowledged that Plaintiff sought protective measures to prevent disclosure and retaliation, summarizing Plaintiff's request for:

a protective order "prohibiting disclosure, retaliation, or adverse action … safeguarding protected records under federal privacy, disability, and child protection laws." (Doc. 17 at 1–2).

Those requested safeguards necessarily included protection of the VA-benefit information the Court required Plaintiff to provide.

### D. The Court's Contradictory Statement That It "Has Not Located Such an Offer"

Despite the Court's own acknowledgments described above, the order later states:

"Plaintiff claims he offered to provide the amount of his benefits under seal, for in camera review, or pursuant to a protective order, but the Court has not located such an offer in the record." (Doc. 17 at 3).

That statement is irreconcilable with:

1. The Court's quotation of the sealed/in-camera request from Motion [16] (Doc. 17 at 1–2);
2. The Court's admission that Plaintiff sought instructions on how to provide the amount "without waiving his rights" (Doc. 17 at 3 n.2).

These conflicting statements are not merely stylistic or collateral; they are material factual errors because they convert documented, good-faith compliance efforts into alleged noncompliance and then use that characterization to support dismissal.

### E. Supporting Declaration Verifying Plaintiff's Attempts to Comply

To further eliminate any ambiguity, Plaintiff will submit a sworn Declaration verifying the relevant timeline, including:

1. earlier clarification requests to the Court regarding lawful disclosure without waiver;
2. the explicit sealed/in-camera request contained in Motion [16];
3. the prejudice and harm caused by the Court's mischaracterization.

Plaintiff will incorporate the Declaration by reference as Exhibit A.

### F. Exhibit Appendix of Highlighted Excerpts

Plaintiff will also attach an exhibit appendix compiling the relevant excerpts from Document 17 with line-by-line highlights showing:

- where the Court acknowledges the sealed/in-camera request (Doc. 17 at 1–2);
- where it acknowledges the earlier clarification request (Doc. 17 at 3 n.2);
- where it contradicts itself by stating it "has not located such an offer" (Doc. 17 at 3).

This compilation will be attached as Exhibit B to ensure the appellate record is unequivocally clear.

Note on legal authorities: Section V is intentionally record-focused. Any legal conclusions drawn from these contradictions are addressed in Sections II–IV and are supported there with controlling authority (e.g., Rule 41(b) standards, due process access-to-courts precedent, and the federal statutory protections governing VA benefits).

# V. REQUESTED RELIEF

Plaintiff respectfully requests that the Court grant the following relief, each item being independently warranted and narrowly tailored to correct the errors identified:

1. ALTER or AMEND the Final Judgment pursuant to Federal Rule of Civil Procedure 59(e) to correct clear errors of law and fact reflected in the Court's November 19, 2025 Order;
2. VACATE the dismissal entered under Rule 41(b), as that dismissal was predicated on factual misstatements, misapplication of governing law, and failure to afford mandatory procedural protections;
3. REOPEN this action for adjudication on the merits, restoring Plaintiff's § 1983 claims to the posture required by federal law;
4. PERMIT Plaintiff to submit VA disability benefit information under seal, in camera, or pursuant to a protective order, solely for the limited purpose of in forma pauperis review, with no waiver—express or implied—of statutory protections guaranteed by 38 U.S.C. § 5301;
5. REQUIRE de novo review under Federal Rule of Civil Procedure 72(b)(3) of all portions of the Report and Recommendation to which Plaintiff timely objected, as de novo review is mandatory and non-discretionary;
6. ADDRESS Plaintiff's unresolved constitutional questions under Federal Rule of Civil Procedure 5.1, including challenges implicating the Supremacy Clause, Due Process Clause, Equal Protection Clause, and federal statutory preemption;
7. DIRECT appropriate reasonable accommodations under Title II of the Americans with Disabilities Act, ensuring Plaintiff's effective participation in all stages of this litigation;
8. CLARIFY that Plaintiff's VA disability compensation is not "income" for purposes of 28 U.S.C. § 1915(a), and that no adverse procedural consequence may be imposed based on Plaintiff's lawful invocation of protections under 38 U.S.C. § 5301;
9. ORDER that Plaintiff's objections, motions, and supporting exhibits be deemed fully preserved for appellate review, including all constitutional, statutory, and procedural challenges raised therein.

# VI. SUMMARY OF RELIEF REQUESTED

Plaintiff seeks limited, corrective relief under Rule 59(e)—not reargument, delay, or expansion of the issues—but judicial correction of a dismissal that rests on demonstrable factual error, misapprehension of controlling federal law, and denial of mandatory procedural safeguards.

The requested relief is compelled by the record. The Court's dismissal was entered without resolving pending objections, without conducting the required de novo review, and while mischaracterizing Plaintiff's documented compliance efforts as noncompliance. It further conditioned access to federal adjudication on disclosure of a federally protected and statutorily exempt benefit, contrary to 38 U.S.C. § 5301 and binding Supreme Court precedent.

Rule 59(e) exists precisely to address such circumstances. Absent correction, the judgment perpetuates manifest injustice by foreclosing adjudication of serious constitutional claims on an erroneous procedural basis. Granting the relief requested restores the case to its proper procedural posture and ensures that Plaintiff's claims are resolved according to law, not forfeited through error.

Correcting the judgment here does not expand the scope of the case; it restores the rule of law. Federal courts may not condition access to adjudication on the surrender of federally protected rights, misapply prisoner-specific statutes to civilian litigants, or dismiss constitutional claims without mandatory review. In this posture, Rule 59(e) relief is not discretionary—it is required to maintain fidelity to federal statutes, Supreme Court precedent, and the integrity of the judicial process.

## Conclusion and Preservation of Rights

Plaintiff submits this motion in good faith, having made repeated, documented efforts to comply with the Court's directives while preserving federally protected rights. These requests are not dilatory, expansive, or strategic in nature; they are corrective and protective, aimed solely at ensuring that adjudication proceeds on a lawful and constitutional footing.

Plaintiff respectfully emphasizes that the relief sought is narrowly tailored, supported by controlling authority, and necessary to prevent continued statutory violations, irreparable harm, and the effective denial of access to justice. Granting this relief would not prejudice Defendants and would promote judicial economy by resolving threshold legal errors now, rather than compounding them on appeal.

Accordingly, Plaintiff submits this motion with respect for the Court and in reliance on its obligation to enforce federal law, safeguard constitutional rights, and ensure that justice is administered without condition, coercion, or mischaracterization of the record.

Plaintiff further requests prompt corrective action to prevent continuing irreparable harm during pendency, and expressly preserves all objections and rights for appellate review.

Respectfully submitted,

DATED: December 17, 2025

_____
Hon. Adam Duvall Davis, Sr.
U.S. Navy (Vet.) – Pro Se Plaintiff
870 Ellington Drive
Biloxi, Mississippi 39532
Phone: (337) 504-8179
Email: